**SUM-100**

# SUMMONS
## *(CITACION JUDICIAL)*

**FOR COURT USE ONLY**
*(SOLO PARA USO DE LA CORTE)*

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*

HEARST MAGAZINE MEDIA, INC., a Delaware corporation;
CDS GLOBAL, INC., an Iowa corporation; and DOES 1-50, inclusive

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*

FENELLA ARNOLD and KELLY NAKAI, individually and on behalf
of all others similarly situated,

**ELECTRONICALLY FILED**
Superior Court of California,
County of San Diego
**09/10/2019** at 09:59:37 AM
Clerk of the Superior Court
By Jose Hernandez, Deputy Clerk

**NOTICE!** You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (*www.lawhelpcalifornia.org*), the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), or by contacting your local court or county bar association. **NOTE:** The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

| | |
|---|---|
| The name and address of the court is:<br>*(El nombre y dirección de la corte es:)*  San Diego Superior Court<br>330 West Broadway<br>San Diego, CA 92101 | CASE NUMBER:<br>*(Número del Caso):*<br>37-2019-00047733-CU-BT-CTL |

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
James T. Hannik (131747); Zach P. Dostart (255071); DOSTART HANNINK & COVENEY LLP
4180 La Jolla Village Dr., Ste. 530, La Jolla, CA 92037; Tel: (858) 623-4200

| DATE:<br>*(Fecha)*  09/11/2019 | Clerk, by<br>*(Secretario)* _____ J. Hernandez | , Deputy<br>*(Adjunto)* |
|---|---|---|

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010)).*

[SEAL]

**NOTICE TO THE PERSON SERVED:** You are served
1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*

3. ☐ on behalf of *(specify):*

   under: ☐ CCP 416.10 (corporation) ☐ CCP 416.60 (minor)
   ☐ CCP 416.20 (defunct corporation) ☐ CCP 416.70 (conservatee)
   ☐ CCP 416.40 (association or partnership) ☐ CCP 416.90 (authorized person)
   ☐ other *(specify):*
4. ☐ by personal delivery on *(date):*

**Page 1 of 1**

| | | |
|---|---|---|
| Form Adopted for Mandatory Use<br>Judicial Council of California<br>SUM-100  [Rev. July 1, 2009] | **SUMMONS** | Code of Civil Procedure §§ 412.20, 465<br>*www.courtinfo.ca.gov* |

JAMES T. HANNINK (131747)
jhannink@sdlaw.com
ZACH P. DOSTART (255071)
zdostart@sdlaw.com
DOSTART HANNINK & COVENEY LLP
4180 La Jolla Village Drive, Suite 530
La Jolla, California 92037-1474
Tel:  858-623-4200
Fax: 858-623-4299

Attorneys for Plaintiffs

**ELECTRONICALLY FILED**
Superior Court of California,
County of San Diego

**09/10/2019** at 09:59:37 AM
Clerk of the Superior Court
By Jose Hernandez, Deputy Clerk

SUPERIOR COURT OF THE STATE OF CALIFORNIA

COUNTY OF SAN DIEGO

FENELLA ARNOLD and
KELLY NAKAI,
individually and on behalf of all others
similarly situated,

                    Plaintiffs,

vs.

HEARST MAGAZINE MEDIA, INC., a
Delaware corporation;
CDS GLOBAL, INC., an Iowa corporation;
and DOES 1-50, inclusive,

                    Defendants.

CASE NO.  37-2019-00047733-CU-BT-CTL

<u>CLASS ACTION</u>

COMPLAINT FOR:

(1) FALSE ADVERTISING – VIOLATION
OF THE CALIFORNIA AUTOMATIC
RENEWAL LAW;

(2) VIOLATION OF CAL. CIV. CODE
§ 1716;

(3) VIOLATION OF THE CALIFORNIA
CONSUMER LEGAL REMEDIES ACT;

(4) VIOLATION OF THE CALIFORNIA
UNFAIR COMPETITION LAW; and

(5) UNJUST ENRICHMENT.

DEMAND FOR JURY TRIAL

CLASS ACTION COMPLAINT

## INTRODUCTION

1.      This class action complaint alleges that defendants Hearst Magazine Media, Inc. ("Hearst") and CDS Global, Inc. ("CDS") violate California law in connection with magazine marketing and subscription programs.  Among other things, Hearst and CDS work together to enroll consumers in automatic-renewal or continuous service subscriptions without providing the "clear and conspicuous" disclosures mandated by California law; post charges to consumers' credit or debit cards for purported automatic renewal or continuous service subscriptions without first obtaining the consumers' affirmative consent to an agreement containing the requisite clear and conspicuous disclosures; and solicit payment of money for goods that consumers did not order by sending "invoices" for amounts that are not actually owed.  This course of conduct violates the California Automatic Renewal Law (Bus. & Prof. Code, § 17600 et seq.) ("ARL"), California's statutory prohibition on soliciting payment for unordered goods or services by means of false invoices (Civ. Code, § 1716), the Consumers Legal Remedies Act (Civ. Code, § 1750 et seq.) ("CLRA"), and the Unfair Competition Law (Bus. & Prof. Code, § 17200 et seq.) ("UCL").

## THE PARTIES

2.      Plaintiff Fenella Arnold ("Arnold") is an individual residing in San Diego County, California.

3.      Plaintiff Kelly Nakai ("Nakai") is an individual residing in San Diego County, California.

4.      Arnold and Nakai are collectively referred to herein as "Plaintiffs."

5.      Plaintiffs are informed and believe and thereon allege that defendant Hearst Magazine Media, Inc. is a Delaware corporation that does business in San Diego County, including the marketing of magazine subscriptions.

6.      Plaintiffs are informed and believe and thereon allege that defendant CDS Global, Inc. is an Iowa corporation that does business in San Diego County, including the marketing and processing of magazine subscriptions.

7.      Plaintiffs do not know the names of the defendants sued as DOES 1 through 50 but will amend this complaint when that information becomes known.  Plaintiffs allege on information

CLASS ACTION COMPLAINT

**REMOVAL EXHIBIT A PAGE 003**

1   and belief that each of the DOE defendants is affiliated with one or more of the named defendants

2   in some respect and is in some manner responsible for the wrongdoing alleged herein, either as a

3   direct participant, or as the principal, agent, successor, alter ego, or co-conspirator of or with one or

4   more of the other defendants.  For ease of reference, Plaintiffs will refer to the named defendants

5   and the DOE defendants collectively as "Defendants."

6        8.    Venue is proper in this judicial district because the complained of conduct occurred

7   in this judicial district.

8                                 **BACKGROUND**

9        9.    Hearst is one of the largest magazine publishers in the world.  In the United States,

10   Hearst publishes approximately two dozen magazine titles, including *Food Network*, *Cosmopolitan*,

11   *Good Housekeeping*, *Woman's Day*, *Country Living*, *HGTV Magazine*, and *Car & Driver*.

12        10.   CDS is the largest magazine fulfillment house in the United States.  As a fulfillment

13   house, CDS works with magazine publishers to provide services that may include assisting with

14   subscriptions, billing, collection, and/or other account services.  Based in Des Moines, Iowa, CDS

15   is a wholly-owned subsidiary of Hearst, and provides fulfillment services for Hearst as well as for

16   other magazine publishers.

17        11.   Traditionally, magazine publishers sold subscriptions on the basis of a schedule that

18   reflects a fixed price for a definite term (such as one, two, or three years).  Under that arrangement,

19   the consumer selects the desired price/term combination and submits payment.  Later, when the end

20   of the term is approaching, the consumer is notified that the subscription will soon come to an end

21   and is provided with a renewal offer.  If the consumer wishes to renew, he or she selects the desired

22   price/term combination for the renewal period and submits the corresponding payment.

23   Alternatively, if the consumer does not renew, the subscription comes to an end.

24        12.   During the 1990s, some marketers came to view the traditional model as constraint

25   on sales and profits, and advocated instead adoption of a "negative option" model.  In a "negative

26   option," the seller "interpret[s] a customer's failure to take an affirmative action, either to reject an

27   offer or cancel an agreement, as assent to be charged for goods or services."  *See "Negative*

28   *Options,"*    Federal    Trade    Commission,    January    2009    (available    at

CLASS ACTION COMPLAINT

1    https://www.ftc.gov/sites/default/files/documents/reports/negative-options-federal-trade-

2    commission-workshop-analyzing-negative-option-marketing-report-

3    staff/p064202negativeoptionreport.pdf (last accessed September 9, 2019).   Defendants have

4    implemented a negative option model that does not comply with California law.

5        13.    One aspect of Defendants' negative option model is to solicit orders for magazine

6    subscriptions that purport to be for a fixed period of time (e.g., one year, or two years), whereas

7    upon receipt of an order, Defendants enroll the consumer in a program under which the magazine

8    subscription will be "automatically renewed" for subsequent periods, with corresponding charges

9    posted to the consumer's credit card, debit card, or other payment account.   Defendants enroll

10   consumers in such "automatic renewal" subscriptions without making the clear and conspicuous

11   disclosures required by California law.

12       14.    Another aspect of Defendants' negative option model is to offer consumers a

13   "FREE" magazine issue, which offer is usually made in conjunction with a promotion that

14   simultaneously entices consumers to enter a sweepstakes sponsored by Defendants.   When a

15   consumer enters a sweepstakes with a request for the (supposedly) "FREE" issue, Defendants

16   thereafter send the consumer an "invoice" stating that payment is due for a year-long subscription

17   to the magazine when, in fact, the recipient did not previously request a subscription and no money

18   is actually due.   California law prohibits such false invoices.

19                          **SUMMARY OF APPLICABLE LAW**

20   **The California Automatic Renewal Law**

21       15.    In 2009, the California Legislature passed Senate Bill 340, which took effect on

22   December 1, 2010 as Article 9 of Chapter 1 of the False Advertising Law.   (Bus. & Prof. Code,

23   § 17600 *et seq*. (the California Automatic Renewal Law or "ARL").)   SB 340 was introduced

24   because:

> It has become increasingly common for consumers to complain about unwanted
> charges on their credit cards for products or services that the consumer did not
> explicitly request or know they were agreeing to. Consumers report they believed
> they were making a one-time purchase of a product, only to receive continued
> shipments of the product and charges on their credit card. These unforeseen charges
> are often the result of agreements enumerated in the "fine print" on an order or
> advertisement that the consumer responded to.

25

26

27

28

4

CLASS ACTION COMPLAINT

**REMOVAL EXHIBIT A PAGE 005**

1    *See* Exhibit 1.

2        16.    The Assembly Committee on Judiciary provided the following background for the

3    legislation:

> 4 This non-controversial bill, which received a unanimous vote on the Senate floor, seeks to protect consumers from unwittingly consenting to "automatic renewals" of
> 5 subscription orders or other "continuous service" offers. According to the author and supporters, consumers are often charged for renewal purchases without their consent
> 6 or knowledge. For example, consumers sometimes find that a magazine subscription renewal appears on a credit card statement even though they never agreed to a
> 7 renewal.

8    *See* Exhibit 2.

9        17.    The ARL seeks to ensure that, before there can be a legally-binding automatic

10    renewal or continuous service arrangement, there must first be adequate disclosure of certain terms

11    and conditions and affirmative consent by the consumer. To that end, Bus. & Prof. Code § 17602(a)

12    makes it unlawful for any business making an automatic renewal offer or a continuous service offer

13    to a consumer in California to do any of the following:

14        (1) Fail to present the automatic renewal offer terms or continuous service offer terms

15    in a clear and conspicuous manner before the subscription or purchasing agreement is fulfilled and

16    in visual proximity, or in the case of an offer conveyed by voice, in temporal proximity, to the

17    request for consent to the offer. For this purpose, "clear and conspicuous" means "in larger type

18    than the surrounding text, or in contrasting type, font, or color to the surrounding text of the same

19    size, or set off from the surrounding text of the same size by symbols or other marks, in a manner

20    that clearly calls attention to the language." (Bus. & Prof. Code, § 17601(c).) In the case of an

21    audio disclosure, "clear and conspicuous" means in a volume and cadence sufficient to be readily

22    audible and understandable. (*Id*.)

23        (2) Charge the consumer's credit or debit card, or the consumer's account with a

24    third party, for an automatic renewal or continuous service without first obtaining the consumer's

25    affirmative consent to the agreement containing the automatic renewal offer terms or continuous

26    service offer terms, including the terms of an automatic renewal offer or continuous service offer

27    that is made at a promotional or discounted price for a limited period of time.

28

CLASS ACTION COMPLAINT

**REMOVAL EXHIBIT A PAGE 006**

1     (3) Fail to provide an acknowledgment that includes the automatic renewal or
2  continuous service offer terms, cancellation policy, and information regarding how to cancel in a
3  manner that is capable of being retained by the consumer.  If the offer includes a free trial, the
4  business shall also disclose in the acknowledgment how to cancel and allow the consumer to cancel
5  before the consumer pays for the goods or services.

6     18.     Bus. & Prof. Code § 17602(b) requires that the acknowledgment specified in
7  § 17602(a)(3) include "a toll-free telephone number, electronic mail address, a postal address if the
8  seller directly bills the consumer, or it shall provide another cost-effective, timely, and easy-to-use
9  mechanism for cancellation that shall be described in the acknowledgment."

10     19.     If a business sends any goods to a consumer under a purported automatic renewal or
11  continuous service arrangement without first obtaining the consumer's affirmative consent to an
12  agreement containing the "clear and conspicuous" disclosures as specified in the ARL, the goods
13  are deemed to be an unconditional gift to the consumer, who may use or dispose of them without
14  any obligation whatsoever.  (Bus. & Prof. Code, § 17603.)  In addition, violation of the ARL gives
15  rise to restitution and injunctive relief under the general remedies provision of the False Advertising
16  Law, Bus. & Prof. Code § 17535.  (Bus. & Prof. Code, § 17604, subd. (a.))

17  **Civil Code § 1716**

18     20.     Civil Code § 1716 sets forth California's statutory prohibition of false invoices.
19  Section 1716 prohibits the practice of soliciting payment of money by means of a written statement
20  or invoice for goods that were not ordered or services that were not performed.   Specifically,
21  § 1716(a) makes it unlawful to "solicit payment of money by another by means of a written
22  statement or invoice, or any writing that reasonably could be considered a bill, invoice, or statement
23  of account due, but is in fact a solicitation for an order, unless the solicitation conforms to
24  subdivisions (b) to (f), inclusive."

25     21.     Civil Code § 1716(b) requires that any written statement that is in fact a solicitation
26  for an order must bear a conspicuous notice or disclaimer, one permissible version of which is:
27  "THIS IS NOT A BILL.  THIS IS A SOLICITATION.  YOU ARE UNDER NO OBLIGATION
28  TO PAY THE AMOUNT STATED ABOVE UNLESS YOU ACCEPT THIS OFFER."

6

CLASS ACTION COMPLAINT

**REMOVAL EXHIBIT A PAGE 007**

22.     Any person damaged by noncompliance with § 1716 is entitled to damages in an amount equal to three times the sum solicited.  (Civ. Code, § 1716, subd. (g).)

### FACTS GIVING RISE TO THIS ACTION

**Fenella Arnold's Transaction With Defendants**

23.     In or about June 2017, in response to one of Defendants' advertisements, Arnold submitted an order for a two-year subscription to *HGTV Magazine*.  On July 3, 2017, Defendants charged $22.00 to Arnold's credit card for that two-year subscription.  Arnold does not have a copy of the specific advertisement to which she responded, and will seek production from Defendants through discovery.  When Arnold submitted the order for that two-year subscription, she was not aware that Defendants were going to enroll her in a program under which the subscription would automatically renew for subsequent periods, and she did not consent to be enrolled in such program.

24.     On June 28, 2019, without Arnold's authorization or consent, Defendants posted a charge of $34.97 to Arnold's credit card, purportedly for renewal of *HGTV Magazine*.

25.     If Arnold had known that Defendants were going to enroll her in an automatically renewing magazine subscription program, Arnold would not have submitted the order for *HGTV Magazine* and would not have paid any money to Defendants for that magazine.

**Kelly Nakai's Transaction With Defendants**

26.     On September 5, 2018, Nakai received an email from Defendants with a subject line of "Last Chance—You could win a trip to a Wine and Food Festival in NYC."  The email contains promotional material relating to a sweepstakes sponsored by Defendants, for which the prize winner will receive tickets for the New York City Wine & Food Festival, round-trip airfare, and lodging.  A true and correct copy of that email is attached hereto as Exhibit 3.  Recipients of the email can initiate entry into the sweepstakes by clicking the "ENTER NOW" button.

27.     Upon clicking the "ENTER NOW" button, Nakai was presented with a webpage containing additional promotional material for the sweepstakes.  A true and correct copy of a printout of that webpage is attached hereto as Exhibit 4.  A portion of that webpage contains fields in which a consumer can enter his or her name, address, and email information to enter the sweepstakes.  Above those fields is a narrative statement, set forth in bold text, that the consumer

7

REMOVAL EXHIBIT A PAGE 008

can "[f]ill in the fields below to get 1 FREE issue of Food Network Magazine and be automatically entered for your chance to win."  Farther down the page is a large "SUBMIT" button by which the consumer can submit the sweepstakes entry and the request for the "FREE" issue.  Nakai submitted a sweepstakes entry, which included a request for the "FREE" issue.

28.    Thereafter, Nakai did receive an issue of *Food Network Magazine*.  However, Nakai also received emails from Defendants purporting to be an "INVOICE" for a subscription to *Food Network Magazine*, stating that there is now a "Payment Due" of $12.00.  A true and correct copy of that invoice is depicted below:



29.    Nakai assumed she owed Defendants the money that was stated as the "Amount Due," and Nakai paid the "invoice" with her credit card, in the amount of $12.00.  In fact, Nakai had never ordered a subscription to *Food Network Magazine*, and no money was actually due.

30.    If Nakai had known that, upon receipt of her sweepstakes entry, Defendants were going to enroll her in, and charge her for, a one-year subscription for *Food Network Magazine*, she

CLASS ACTION COMPLAINT

1 | would not have submitted the sweepstakes entry.

2 |   31. If Nakai had known that Defendants had no basis to assert that she owed money, and

3 | that in fact she did not owe any money to Defendants, she would not have paid the purported invoice.

4 |   32. Nakai is informed and believes and thereon alleges that the *Food Network Magazine*

5 | subscription into which Defendants enrolled her is an automatic-renewal subscription.  If Nakai had

6 | known that Defendants were going to treat her submission of a sweepstakes entry as enrollment into

7 | an automatic-renewal subscription, she would not have entered the sweepstakes, would not have

8 | requested the magazine issue from Defendants, and would not have paid any money to Defendants

9 | for that magazine.

10 | **DEFENDANTS' DECEPTION OF OTHER CONSUMERS**

11 |   33. Plaintiffs are not the only consumers to be victimized by Defendants in connection

12 | with magazine subscriptions.  There are hundreds of consumer complaints about similar deceptive

13 | conduct posted on a variety of websites, including but not limited to the Better Business Bureau

14 | ("BBB"), Yelp, Complaints Board, and pissedconsumer.com.

15 |   34. Customer reviews of Hearst posted on the BBB website and other consumer websites

16 | illustrate that Defendants' scheme is effective and has affected many consumers.  Many complaints

17 | involve consumers receiving invoices from Defendants when no payment is due, and/or being

18 | automatically renewed for magazines without consent.

19 |   **Brousca (March 30, 2019).**  Less than 1 star for service.  I have a paid subscription

20 | to **** ****** Yet I keep receiving threatening notices to pay an overdue account to renew my subscription.  When I login into my acct, it says paid through November

21 | 2019.  I have sent a paper letter, responded to email and sent a message through online customer service and still I receive these threatening email messages

22 | regularly.

23 | A true and correct printout of that complaint is attached as Exhibit 5.

24 |   **Laura H (March 30, 2019).**  I subscribed to 1 year of Town and Country magazine. I did NOT renew it and keep receiving "invoices" stating my "account" is overdue

25 | for another year subscription.  They use bullying tactics to make people believe they owe this "manufactured" invoice.  Warning to the elderly or uninformed.  DO NOT

26 | PAY THESE INVOICES OR BE INTIMIDATED BY THEIR QUESTIONABLE TACTICS!

27 |

28 | A true and correct printout of that complaint is attached as Exhibit 6.

9

CLASS ACTION COMPLAINT

**REMOVAL EXHIBIT A PAGE 010**

**Cathy H (January 18, 2019).**  Scam!!!  Entered their sweepstakes and than [sic] received an E-mail with a subscription to *** Magazine and no way to unsubscribe. Now they are sending a bill to me via mail!!! I never ordered there [sic] magazine!!! sweepstakes is just a scam to get subscriptions and money from innocent people!

A true and correct printout of that complaint is attached as Exhibit 7.

**Advertising/Sales Issues (August 20, 2018).**  Hearstmags and Good Housekeeping and Oprah or O magazine, are all connected to the Hearst Corporation.  Unsuspecting people (like myself), enter a cloaked sweepstakes and the next thing you know you start getting be e-mail and postage mail invoices saying you owe them money for agreeing to buy one of these magazine subscriptions to Good Housekeeping and the Oprah O magazines.  Fraudulent entrapment advertising and it may be their way for you to un-enter their sweepstakes also.  Clever but unethical and fraudulent.

A true and correct printout of that complaint is attached as Exhibit 8.

**Billing/Collection Issues (January 8, 2018).**  I hope Woman's Day is reading this because I got a subscription that I don't want; probably got because I entered a sweepstakes and inadvertently said "yes" somewhere in the process! (Very sneaky). They don't have a phone # on the invoice, can't find it online.  When you go to their customer service page they want all kinds of information from you; you have to log in, etc. etc.  This takes way too much time to have to "undo" something which I didn't want in the first place.  Since I can't get in touch with a "human", I'm putting this on Facebook, and complaining to BBB.  Address on invoice: ** *** ****** ***** ** *********.

A true and correct printout of that complaint is attached as Exhibit 9.

**Advertising/Sales Issues (July 17, 2017).**  I received an email from Veranda stating that I have a chance to win outdoor furniture.  I clicked on the link and it took me to this page: ********************************  After reading the terms and conditions, I entered my information.  I then received an email stating that I subscribed to House Beautiful for $10 per month.  I did not agree to a subscription. No where in the terms or the above link mentioned a subscription.  I called the company and they noted my request to cancel but could not cancel it since the subscription had not come through yet.  This is a very unethical business practice.

A true and correct printout of that complaint is attached as Exhibit 10.

**Advertising/Sales Issues (May 8, 2017).**  I filled out an online form for a "Garage Make-Over" sweepstakes type of advertisement on Facebook.  The next day I received an email saying I owe Car & Driver $10!  First I tried finding a contact avenue for Car and Driver...there is none unless you are a subscriber.  I found a way to contact the editor online for Car and Driver I told them in so uncertain terms that I DO NOT want a subscription to Car and Driver I never wanted a subscription to Car and Driver and to stop contacting me about a subscription to Car and Driver. Now Car and driver is sending me mail demanding their $10 for a subscription that was gained by FALSE ADVERTISEMENT online.  Please let Hearst Communications know that I've communicated I DO NOT WANT A SUBSCRIPTION TO CAR AND DRIVER!!

A true and correct printout of that complaint is attached as Exhibit 11.

10

CLASS ACTION COMPLAINT

## CLASS ACTION ALLEGATIONS

35.    Plaintiffs bring this lawsuit as a class action under Code of Civil Procedure § 382 on behalf of two classes: (1) the "ARL Class" and (2) the "False Invoice Class."

36.    Plaintiffs Arnold and Nakai seek to represent the ARL Class, which is defined as follows: "All individuals in California who, within the applicable limitations period, were enrolled by Defendants in an automatic renewal program or a continuous service program and had a credit card, debit card, and/or a third-party payment account charged by Defendants as part of such program.  Excluded from the ARL Class are all employees of Defendants, all employees of Plaintiffs' counsel, and the judicial officers to whom this case is assigned."

37.    Plaintiff Nakai seeks to represent the False Invoice Class, which is defined as follows: "All individuals in California who, within the applicable limitations period, received an invoice, bill, or account statement from Defendants for magazines that Defendants' represented to be "free" and/or for magazine subscriptions that had not been ordered.  Excluded from the False Invoice Class are all employees of Defendants, all employees of Plaintiffs' counsel, and the judicial officers to whom this case is assigned."

38.    <u>Ascertainability</u>.  The members of each class may be ascertained by reviewing records in the possession of Defendants and/or third parties, including without limitation Defendants' marketing and promotion records, customer records, and billing records.

39.    <u>Common Questions of Fact or Law</u>.  There are questions of fact or law that are common to the members of each class, which predominate over individual issues.  Common questions regarding the ARL Class include, without limitation: (1) whether Defendants present all statutorily-mandated automatic renewal or continuous service offer terms, within the meaning of § 17601(b); (2) whether Defendants present automatic renewal or continuous service offer terms in a manner that is "clear and conspicuous," within the meaning of § 17601(c), and in "visual proximity" to a request for consent to the offer (or in the case of an offer conveyed by voice, in temporal proximity to a request for consent to the offer), as required by § 17602; (3) whether Defendants obtain consumers' affirmative consent to an agreement containing clear and conspicuous disclosure of automatic renewal or continuous service offer terms before charging a

11

1   credit card, debit card, or third-party payment account; (4) whether Defendants provide consumers

2   with an acknowledgment that includes clear and conspicuous disclosure of all statutorily-mandated

3   automatic renewal or continuous service offer terms, the cancellation policy, and information

4   regarding how to cancel in a manner that is capable of being retained by the consumer;

5   (5) Defendants' record-keeping practices; (6) the appropriate remedies for Defendants' conduct; and

6   (7) the appropriate terms of an injunction. Common questions regarding the False Invoice Class

7   include, without limitation: (1) whether Defendants provide the required statutory disclaimer or

8   alternative notice on any solicitation disclosing to the consumer that the document is a solicitation

9   for an order of goods or services, or both, and not a bill, invoice, or statement of account due, and

10   that the consumer is under no obligation to make any payments unless the consumer accepts the

11   offer; (2) whether Defendants display a notice or disclaimer in a manner that complies with the

12   requirements specified in Civ. Code § 1716; (3) Defendants' record-keeping practices; and (4) the

13   appropriate remedies for Defendants' conduct.

14       40.   <u>Numerosity</u>. Each class is so numerous that joinder of all class members would be

15   impracticable. Plaintiffs are informed and believe and thereon allege that each class consists of at

16   least 100 members.

17       41.   <u>Typicality and Adequacy</u>. Plaintiffs' claims are typical of the claims of the members

18   of each class. Plaintiffs allege on information and belief that Defendants enrolled ARL Class

19   members in automatic renewal or continuous service offer programs without presenting the

20   applicable terms in the manner required by law, charged ARL Class members' credit cards, debit

21   cards, or third-party accounts without first obtaining the ARL Class members' affirmative consent

22   to an agreement containing clear and conspicuous disclosure of all automatic renewal offer terms,

23   and failed to provide the requisite acknowledgment in a manner capable of being retained by ARL

24   Class members. Plaintiffs have no interests that are adverse to those of the other ARL Class,

25   members. Plaintiffs will fairly and adequately protect the interests of the ARL Class members.

26   Plaintiff Nakai alleges on information and belief that Defendants sent the False Invoice Class

27   members invoices or other written statements for goods not ordered or services not performed.

28   Plaintiff Nakai has no interests that are adverse to those of the other False Invoice Class members.

12

CLASS ACTION COMPLAINT

1    Plaintiff Nakai will fairly and adequately protect the interests of the False Invoice Class members.

2         42.    Superiority.   A class action is superior to other methods for resolving this

3    controversy.  Because the amount of restitution or damages to which each class member may be

4    entitled is low in comparison to the expense and burden of individual litigation, it would be

5    impracticable for class members to redress the wrongs done to them without a class action forum.

6    Furthermore, on information and belief, class members do not know that their legal rights have been

7    violated.  Class certification would also conserve judicial resources and avoid the possibility of

8    inconsistent judgments.

9         43.    Defendants Have Acted on Grounds Generally Applicable to the Class.  Defendants

10   have acted on grounds that are generally applicable to the members of each class, thereby making

11   appropriate final injunctive relief and/or declaratory relief with respect to each class as a whole.

12                              **FIRST CAUSE OF ACTION**

13                   False Advertising – Violation of the Automatic Renewal Law

14                        (By All Plaintiffs Against All Defendants)

15        44.    Plaintiffs incorporate the previous allegations as though set forth herein.

16        45.    Plaintiffs are informed and believe and thereon allege that, during the applicable

17   statute of limitations period, Defendants have enrolled consumers, including Plaintiffs and ARL

18   Class members, in automatic renewal programs and/or continuous service programs and have

19   (a) failed to present the automatic renewal or continuous service offer in a clear and conspicuous

20   manner before the subscription or purchasing agreeing is fulfilled and in visual proximity, or in the

21   case of an offer conveyed by voice, in temporal proximity, to the request for consent to the offer;

22   (b) charged the consumer's credit or debit card or the consumer's third-party payment account for

23   an automatic renewal or continuous service without first obtaining the consumer's affirmative

24   consent to the agreement containing the automatic renewal offer terms or continuous service offer

25   terms; and (c) failed to provide an acknowledgment that includes the automatic renewal or

26   continuous service offer terms, cancellation policy, and information regarding how to cancel in a

27   manner that is capable of being retained by the consumer.

28        46.    As a result of Defendants' conduct, pursuant to Bus. & Prof. Code §§ 17603 and

                                          13

CLASS ACTION COMPLAINT

17535, all good received by Plaintiffs and ARL Class members are deemed to be an unconditional gift, and Plaintiffs and ARL Class members are entitled to restitution of all amounts that Defendants charged to Plaintiffs' and ARL Class members' credit cards, debit cards, or third-party payment accounts during the four years preceding the filing of this Complaint and continuing until Defendants' statutory violations cease.

47.     Pursuant to Bus. & Prof. Code § 17535, Plaintiffs and the Class members are entitled to an injunction enjoining Defendants from making automatic renewal or continuous service offers to California consumers that do not comply with California law.

## SECOND CAUSE OF ACTION

Violation of Civ. Code, § 1716

(By Nakai and the False Invoice Class Against All Defendants)

48.     Plaintiff Nakai incorporates the allegations of paragraphs 1-43 as though set forth herein.

49.     Defendants sent to Nakai and members of the False Invoice Class documents purporting to be an "invoice" for a magazine subscription when, in fact, no subscription had been requested and no money was due.

50.     The "invoices" that Defendants sent to Nakai and members of the False Invoice Class did not bear a disclaimer or notice prescribed by Civil Code § 1716(b).

51.     Nakai and members of the False Invoice Class have been damaged as a result of Defendants' violation of Civil Code § 1716.

52.     Pursuant to Civil Code § 1716(g), Nakai and members of the False Invoice Class are entitled to damages in an amount equal to three times the sum solicited by Defendants.

## THIRD CAUSE OF ACTION

Violation of the Consumers Legal Remedies Act

(By All Plaintiffs Against All Defendants)

53.     Plaintiffs incorporate the previous allegations as though fully set forth herein.

14

CLASS ACTION COMPLAINT

**REMOVAL EXHIBIT A PAGE 015**

54.     Plaintiffs and the members of the ARL Class and the False Invoice Class are "consumers" within the meaning of Civil Code § 1761(d) in that Plaintiffs and the goods and/or services sought or acquired were for personal, family, or household purposes.

55.     Defendants' "FREE" magazine offers and/or other subscription offers pertain to "goods" and/or "services" within the meaning of Civil Code § 1761(a) and (b).

56.     The purchases and payments by Plaintiffs and class members are "transactions" within the meaning of Civil Code § 1761(e).

57.     Defendants have violated Civil Code § 1770, subdivisions (a)(5), (a)(9), (a)(13), (a)(14), and (a)(17), by representing that Defendants' goods and services have certain characteristics that they do not have; advertising goods and services with the intent not to sell them as advertised; making false and misleading statements of fact concerning the reasons for, existence of and amounts of price reductions; representing that a transaction confers or involves rights, remedies, or obligations that it does not have or involve, or that are prohibited by law; and by representing that the consumer will receive a rebate, discount, or other economic benefit, if the earning of the benefit is contingent on an event to occur subsequent to the consummation of the transaction.

58.     Plaintiffs, on behalf of themselves and all other class members, seek an injunction prohibiting Defendants from continuing their unlawful practices in violation of the Consumers Legal Remedies Act, as described above.

### FOURTH CAUSE OF ACTION

Violation of the California Unfair Competition Law

(By All Plaintiffs Against All Defendants)

59.     Plaintiffs incorporate the previous allegations as though fully set forth herein.

60.     The California Unfair Competition Law ("UCL"), Bus. & Prof. Code § 17200 *et seq.*, defines unfair competition as including "any unlawful, unfair or fraudulent business act or practice."

61.     In the course of conducting business within the applicable limitations period, Defendants committed "unlawful," "unfair," and/or "fraudulent" business practices by, *inter alia* and without limitation: (a) failing to present the terms of automatic renewal or continuous service offers in a clear and conspicuous manner before a magazine selection, subscription, or purchasing

15

**REMOVAL EXHIBIT A PAGE 016**

1   agreement is fulfilled and in visual proximity (or in the case of an offer conveyed by voice, in

2   temporal proximity), to a request for consent to the offer, in violation of Bus. & Prof. Code

3   § 17602(a)(l); (b) charging the consumer's credit card, debit card, or third-party payment account

4   for an automatic renewal or continuous service without first obtaining the consumer's affirmative

5   consent to an agreement containing clear and conspicuous disclosures of automatic renewal offer

6   terms or continuous service offer terms, in violation of Bus. & Prof. Code § 17602(a)(2); (c) failing

7   to provide an acknowledgment that includes clear and conspicuous disclosure of automatic renewal

8   or continuous service offer terms, cancellation policy, and information regarding how to cancel in a

9   manner that is capable of being retained by the consumer, in violation of Bus. & Prof. Code

10  § 17602(a)(3); (d) sending consumers invoices for goods not ordered, in violation of Civil Code

11  § 1716; (e) representing that Defendants' goods and services have certain characteristics that they

12  do not, in violation of Civil Code § 1770(a)(5); (f) advertising goods and services with the intent

13  not to sell them as advertised, in violation of Civil Code § 1770(a)(9); (g) making false and

14  misleading statements of fact concerning the reasons for, existence of and amounts of price

15  reductions, in violation of Civil Code § 1770(a)(13); (h) representing that a transaction confers or

16  involves rights, remedies, or obligations that it does not have or involve, or that are prohibited by

17  law, in violation of Civil Code § 1770 (a)(14); and (i) representing that the consumer will receive a

18  rebate, discount, or other economic benefit, if the earning of the benefit is contingent on an event to

19  occur subsequent to the consummation of the transaction, in violation of Civil Code § 1770(a)(17).

20  Plaintiffs reserve the right to allege other violations of law that constitute unlawful or unfair business

21  acts or practices.

22      62.    Defendants' acts and omissions as alleged herein violate obligations imposed by

23  statute, are substantially injurious to consumers, offend public policy, and are immoral, unethical,

24  oppressive, and unscrupulous as the gravity of the conduct outweighs any alleged benefits

25  attributable to such conduct.

26      63.    There were reasonably available alternatives to further Defendants' legitimate

27  business interests, other than the conduct described herein.

28      64.    Defendants' acts, omissions, nondisclosures, and misleading statements as alleged

CLASS ACTION COMPLAINT

REMOVAL EXHIBIT A PAGE 017

1  herein were and are false, misleading, and/or likely to deceive the consuming public.

2       65.     Plaintiffs have suffered injury in fact and lost money as a result of Defendants' acts

3  of unfair competition.

4       66.     Pursuant to Bus. & Prof. Code § 17203, Plaintiffs and the class members are entitled

5  to an order: (1) requiring Defendants to make restitution of all amounts received in connection with

6  the statutory violations alleged above; (2) enjoining Defendants from making automatic renewal or

7  continuous service offers in the State of California that do not comply with the ARL; and

8  (3) enjoining Defendants from sending invoices or other written statements for products not ordered,

9  without the disclaimer required by Civil Code § 1716.

10                                                   **FIFTH CAUSE OF ACTION**

11                                                  Unjust Enrichment

12       67.     Plaintiffs incorporate the previous allegations as though fully set forth herein.

13       68.     Defendants have received money from Plaintiffs and class members in connection

14  with Defendants' conduct in violation of California law.  Defendants would be unjustly enriched if

15  they were permitted to retain those funds, and Defendants should be ordered to restore said funds to

16  Plaintiffs and the class members.

17       69.     Plaintiffs allege this unjust enrichment claim in the alternative to relief provided

18  under any legal claim alleged herein.

19                                                   **PRAYER**

20  WHEREFORE, Plaintiffs pray for judgment against Defendants as follows:

21  On the First Cause of Action:

22      1.     For restitution;

23      2.     For an order that all goods sent to ARL Class members are unconditional gifts;

24      3.     For a public injunction for the benefit of the People of the State of California;

25  On the Second Cause of Action:

26      4.     For three times the sum solicited, pursuant to Civil Code § 1716(g);

27      5.     For a public injunction for the benefit of the People of the State of California.

28

CLASS ACTION COMPLAINT

**REMOVAL EXHIBIT A PAGE 018**

1      On the Third Cause of Action:

2      6.     For a public injunction for the benefit of the People of the State of California;

3      7.     For an award of attorneys' fees pursuant to Civil Code § 1780(d);

4      On the Fourth Cause of Action:

5      8.     For restitution;

6      9.     For a public injunction for the benefit of the People of the State of California;

7      On the Fifth Cause of Action:

8      10.    For restitution;

9      On All Causes of Action:

10     11.    For an award of attorneys' fees pursuant to Code Civ. Proc. § 1021.5;

11     12.    For costs of suit;

12     13.    For pre-judgment interest; and

13     14.    For such other relief that the Court deems just and proper.

14 DATED: September 10, 2019        DOSTART HANNINK& COVENEY LLP

15

16

17                      ZACH P. DOSTART

18                      Attorneys for Plaintiffs

19

20                **DEMAND FOR JURY TRIAL**

21 Plaintiffs hereby demand a trial by jury of all claims and causes of action so triable. Dated:

22      September 10, 2019        DOSTART HANNINK & COVENEY LLP

23

24

25                      ZACH P. DOSTART

                      Attorneys for Plaintiffs

26

27 894511.2

28

                            18

CLASS ACTION COMPLAINT