GREENBERG TRAURIG, LLP
ROBERT J. HERRINGTON (SBN 234417)
HerringtonR@gtlaw.com
1840 Century Park East, Suite 1900
Los Angeles, California 90067
Tel:  (310) 586-7700; Fax:  (310) 586-7800

THE HEARST CORPORATION
OFFICE OF GENERAL COUNSEL
JONATHAN R. DONNELLAN (*Pro hac vice* application forthcoming)
jdonnellan@hearst.com
STEPHEN H .YUHAN (Admitted *Pro hac vice*)
syuhan@hearst.com
MATTHEW GREENFIELD (Admitted *Pro hac vice*)
matthew.greenfield@hearst.com
300 West 57th St, 40th Floor
New York, New York 10019
Tel:  (212) 841-7000; Fax:  (212) 554-7000

*Attorneys for Defendants Hearst Magazine
Media, Inc. and CDS Global, Inc.*

## UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FENELLA ARNOLD and KELLY NAKAI, individually and on behalf of all others similarly-situated,<br><br>        Plaintiffs,<br><br>   v.<br><br>HEARST MAGAZINE MEDIA, INC., a Delaware corporation; CDS GLOBAL, INC., an Iowa corporation; and DOES 1-50, inclusive,<br><br>        Defendants. | CASE NO. 3:19-cv-01969-WQH-MDD<br><br>**DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' COMPLAINT**<br><br>Date:      December 23, 2019<br>Judge:   Hon. William Q. Hayes<br><br>**NO ORAL ARGUMENT UNLESS REQUESTED BY THE COURT** |

# <u>TABLE OF CONTENTS</u>

I.    INTRODUCTION ....................................................................................... 1

II.   SUMMARY OF ALLEGATIONS AND PROCEDURAL HISTORY.................... 2

     A.    Defendants' Magazine Subscription Processes............................. 2
     B.    Fenella Arnold's Subscription to HGTV Magazine ....................... 4
     C.    Kelly Nakai's Subscription to Food Network Magazine ................ 4
     D.    The Complaint ............................................................................ 7
     E.    Procedural History....................................................................... 8

III.  LEGAL STANDARD ................................................................................. 8

IV.  ARGUMENT.......................................................................................... 10

     A.    Arnold's Threadbare Claims Fail to Satisfy Any Pleading Standard. ........... 10
     B.    Nakai Fails to Plead Her Statutory Claims. .................................. 13

          1.    Nakai's Automatic-Renewal Claims Fail Because She Does Not Allege that She Was Subject to a "Recurring Charge"........................ 14
          2.    Nakai's Automatic-Renewal Claims Fail Because She Does Not Allege How or Why Her Order Form Failed to Comply with the ARL. ...................................................................................... 16
          3.    Nakai's "False Invoice" Claims Fail Because She Does Not Allege Facts Showing that the Invoice Was a Solicitation................. 18

     C.    Plaintiffs Fail to Plead Statutory Standing to Bring Their Statutory Claims........................................................................................ 20
     D.    Plaintiffs' Claims Fail in Their Entirety........................................ 21
     E.    Plaintiffs Are Not Entitled to Injunctive Relief. ........................... 23

V.   CONCLUSION....................................................................................... 24

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Federal Cases**

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)................................................................................ 8, 17

*Astaire v. Best Film & Video Corp.*,
   116 F.3d 1297 (9th Cir. 1997) .................................................................. 14

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007)................................................................................ 8, 11

*Beshwate v. BMW of North Am., LLC*,
   No. 1:17-cv-00417-SAB, 2017 WL 4410169 (E.D. Cal. Oct. 4, 2017)...................... 13

*Brown v. Bank of Am., N.A.*,
   457 F. Supp. 2d 82 (D. Mass. 2006)............................................................ 21

*Chase v. Hobby Lobby Stores, Inc.*,
   No. 17-cv-00881-GPC-BLM, 2017 WL 4358146 (S.D. Cal. Oct. 2, 2017) .................. 9

*City of L.A. v. Lyons*,
   461 U.S. 95 (1983)................................................................................ 23

*Davidson v. Kimberly-Clark Corp.*,
   889 F.3d 956 (9th Cir. 2018) .................................................................... 23

*Dvora v. General Mills, Inc.*,
   No. 11-cv-1074-GW-PLA, 2011 WL 1897349 (C.D. Cal. May 16, 2011) ................. 12

*Edwards v. Marin Park, Inc.*,
   356 F.3d 1058 (9th Cir. 2004) .................................................................. 17

*Elsharkawi v. United States*,
   No. 8:18-cv-01971-JLS-DFM, 2019 WL 3811518 (C.D. Cal. Aug. 8,
   2019) .............................................................................................. 24

*Gershman v. Bayer HealthCare LLC*,
   No. 14-CV-05332-HSG, 2015 WL 2170214 (N.D. Cal. May 8, 2015) .................... 8, 9

*Grimm v. APN Inc.*,
   No. 8:17-cv-00356-JVS-JCG, 2017 WL 6398148 (S.D. Cal. Aug. 31,
   2017) .............................................................................................. 9

*In re iPhone 4s Consumer Litig.*,
   637 F. App'x 414 (9th Cir. 2016) .............................................................. 17

ii

*Johnson v. Pluralsight, LLC,*
    728 F. App'x 674 (9th Cir. 2018) ................................................................. 13

*Kearns v. Ford Motor Co.,*
    567 F.3d 1120 (9th Cir. 2009) ............................................................... 9, 12

*Lopez v. Stages of Beauty, LLC,*
    307 F. Supp. 3d 1058 (S.D. Cal. 2018) ..................................................... 13

*Lopez v. YP Holdings, LLC,*
    No. CV 18-8791-MWF, 2019 WL 2895190 (C.D. Cal. Mar. 26, 2019).......... 13, 16, 22

*Luman v. Theismann,*
    647 F. App'x 804 (9th Cir. 2016) ............................................................. 23

*McKee v. Audible, Inc.,*
    No. CV 17-1941-GW(Ex), 2017 WL 7388530 (C.D. Cal. Oct. 26, 2017) ............. 11, 12

*Moran v. Am. General Finance,*
    No. 10CV1366, 2011 WL 768141 (S.D. Cal. Feb. 28, 2011) ....................................... 22

*Munning v. Gap. Inc.,*
    238 F. Supp. 3d 1195 (N.D. Cal. 2017) ......................................................... 23

*Padilla v. Nev. Dep't of Corr.,*
    510 F. App'x 629 (9th Cir. 2013) ................................................................. 24

*Quigley v. Am. Claims Servs., Inc.,*
    No. 2:13-cv-01766-KJM-EFB, 2015 WL 1258563 (E.D. Cal. Mar. 18, 2015) ............................................................................................... 24

*Samsung Int'l v. Allied Carriers Exchange,*
    No. 3:00-cv-01074-K-POR (S.D. Cal. filed June 12, 2001) ................................... 18, 19

*Shin v. Umeken USA, Inc.,*
    773 F. App'x 373 (9th Cir. 2019) ................................................................. 17

*Somers v. Apple, Inc.,*
    729 F.3d 953 (9th Cir. 2013) ......................................................................... 8

*Swartz v. KPMG LLP,*
    476 F.3d 756 (9th Cir. 2007) ....................................................................... 17

*Cafasso ex. rel. United States v. Gen. Dynamics C4 Sys., Inc.,*
    637 F.3d 1047 (9th Cir. 2011) ..................................................................... 17

*Vess v. Ciba-Geigy Corp. USA,*
    317 F.3d 1097 (9th Cir. 2003) ....................................................................... 9

*Viggiano v. Hansen Nat. Corp.,*
    944 F. Supp. 2d 877 (C.D. Cal. 2013) ........................................................... 9

*Williamson v. McAfee, Inc.*,
    No. 5:14-CV-00158-EJD, 2014 WL 4220824 (N.D. Cal. Aug. 22, 2014) ................... 10

**State Cases**

*Cel-Tech Comm., Inc. v. Los Angeles Cellular Tel. Co.*,
    20 Cal. 4th 163 (1999) ........................................................................... 22

*Comm. on Children's Television v. Gen. Foods Corp.*,
    35 Cal. 3d. 197 (1983) .......................................................................... 22

*Cortez v. McClatchy*,
    No. 34-2014-00169700-CU-BT-GDS (Cal. Super. Sacramento Cnty. filed
    Aug. 16, 2018) ............................................................................... 15, 16

*Dyna-Med, Inc. v. Fair Emp't & Hous. Comm'n*,
    743 P.2d 1323 (Cal. 1987) ....................................................................... 14

*Hill v. Roll Internat. Corp.*,
    195 Cal. App. 4th 1295 (2011) .................................................................. 23

*Kwikset Corp. v. Super. Ct.*,
    246 P.3d 877 (Cal. 2011) ......................................................................... 20

*Meyer v. Sprint Spectrum, L.P.*,
    200 P.3d 295 (Cal. 2009) ......................................................................... 20

*Schnall v. The Hertz Corporation*,
    78 Cal. App. 4th 1144 (2000) ................................................................... 22

*In re Tobacco II Cases*,
    207 P.3d 20 (Cal. 2009) .......................................................................... 20

*Woods v. Young*,
    807 P.2d 455 (Cal. 1991) ......................................................................... 15

**Federal Statutes**

28 U.S.C. § 1332(d) .................................................................................. 8

**State Statutes**

Cal. Bus. & Prof. Code § 17200 ................................................................. 7

Cal. Bus. & Prof. Code § 17535 ................................................................. 23

Cal. Bus. & Prof. Code § 17600 *et seq.* ..................................................... 7, 15

Cal. Bus. & Prof. Code § 17601(a) .............................................................. 14

Cal. Bus. & Prof. Code § 17601(b).................................................................. 17

Cal. Bus. & Prof. Code § 17601(b)(3) ............................................................ 15

Cal. Bus. & Prof. Code  § 17601(c) ................................................................ 17

Cal. Bus. & Prof. Code § 17602 ............................................................... 14, 15

Cal. Bus. & Prof. Code § 17602(a)(3) ............................................................ 15

Cal. Civ. Code § 1716 ....................................................... 1, 2, 7, 18, 20, 21, 22

Cal. Civ. Code § 1770 ................................................................................. 7, 22

Cal. Civ. Code § 1780(a) ................................................................................ 20

**Rules**

Fed. R. Civ. P. 9(b) .................................................................. 9, 10, 11, 12, 17, 24

Fed. R. Civ. P. 12(b)(1) .................................................................................. 24

Fed. R. Civ. P. 12(b)(6) .................................................................................. 24

**Other Authorities**

4 B.E. Witkin, *Summary of California Law* § 341 (11th ed. 2019).................................... 18

DEFENDANTS' MEMORANDUM OF POINTS & AUTHORITIES I/S/O MOTION TO DISMISS
CASE NO. 3:19-CV-01969

# I.   **INTRODUCTION**

In this putative class action, Plaintiffs Fenella Arnold and Kelly Nakai seek to impose liability on Hearst Magazine Media, Inc. ("HMM") and CDS Global, Inc. ("CDS"; together with HMM, "Defendants") for allegedly misleading HMM's magazine subscribers during the subscription process.  Although the Complaint purports to assert claims under a variety of California statutes, it fails to allege essential elements required to assert cognizable violations of law, and must therefore be dismissed.

***Arnold's ARL Claims.*** Arnold's claims are based on Defendants' supposed violation of California's Automatic Renewal Law ("ARL"), which requires certain disclosures in connection with offers subject to automatic renewal.  Arnold's claims fail at the most basic level, however, because the Complaint alleges no facts about the offer to which Arnold responded; in fact, the Complaint openly concedes that Arnold "does not have a copy of that advertisement," and expressly hopes to cure this glaring defect "through discovery." Under *Twombly* and *Iqbal*, Arnold's failure to plead the form and substance of Defendants' offer (including any disclosure of any automatic-renewal aspect) dooms her claims, and her desire to substantiate her claims through discovery cannot revive them.

***Nakai's ARL Claims.***  Nakai's attempt to plead an ARL violation fares no better. The ARL applies only to offers containing "automatic renewal offer terms," which is expressly defined in the statute to require, *inter alia*, "recurring" charges.  Nakai does not allege that she ever incurred an "automatic" or "recurring" charge as required under the ARL.  Further, Nakai does not plead ***how*** or ***why*** Defendants' offer to Nakai failed to comply with the ARL, factual allegations required to allege a plausible claim.  She fails to allege which, if any, required "automatic renewal offer terms" Defendants failed to disclose, and she also fails to allege how, if at all, Defendants' disclosures failed to meet the statutory definition of "clear and conspicuous."

***Nakai's "False Invoice" Claims***.  In addition to her ARL claims, Nakai purports to assert claims arising out of her allegation that Defendants supposedly sent her a "false" invoice requesting payment for a one-year magazine subscription, in violation of California

1

Civil Code § 1716.  But the Complaint's own allegations, including the order form Nakai alleges she used to submit her order, make clear that Defendants' invoice was not "in fact a solicitation for an order" as required to state a claim under Section 1716, but instead was a bona fide invoice that properly sought payment for an order that Nakai admits she placed. The order form makes clear that Nakai should have expected to receive a bill for a magazine subscription, and that she had the option of keeping one free issue of the magazine without paying the bill so long as she returned the bill marked "cancel."  In other words, Nakai cannot plausibly claim that the document she received was "in fact a solicitation for an order" under the statute, when she alleges that she placed an order and was billed for it.

***Lack of Statutory Standing***.  In addition to suffering from various pleading defects on the merits, Plaintiffs' statutory claims fail as a matter of law because the Complaint fails to allege injury caused by the alleged misconduct, as required to have statutory standing. Nakai fails to plead facts necessary to establish a causal connection between Defendants' allegedly improper conduct, on the one hand, and the $12.00 payment she made, on the other.  Specifically, Nakai fails to allege the specific circumstances of her payment, and what, if anything, Defendants disclosed to her.  Without a sufficient causal link, there is no cognizable injury, and without that, there is no standing.  Arnold fails to plead statutory standing because she does not even allege the conduct that supposedly caused her injury.

***Additional Claims***.  Plaintiffs' claims under the CLRA, under the UCL, and for unjust enrichment are derivative and fail for the same reasons as their ARL and false invoice claims.  Plaintiffs also fail to allege facts that could entitle them to injunctive relief.

Where, as here, the Complaint fails to allege elements required to establish violations of law, it cannot survive a motion to dismiss.  This motion should be granted in its entirety.

## II.  SUMMARY OF ALLEGATIONS AND PROCEDURAL HISTORY[1]

### A.  Defendants' Magazine Subscription Processes

According to the Complaint ("Compl."), Hearst Magazine Media, Inc. is one of the

---

[1]   The following allegations are taken from the Complaint, the exhibits Plaintiffs annexed to the Complaint, and documents central to or incorporated by reference into the

2

largest magazine publishers in the world.   In the United States, HMM publishes approximately two dozen magazine titles, including *Food Network Magazine*, *HGTV Magazine*, *Cosmopolitan*, *Good Housekeeping*, *Woman's Day*, *Country Living*, and *Car & Driver*.  (Compl. ¶ 9.)  CDS Global, Inc. provides magazine fulfillment services for HMM as well as other magazine publishers, and those fulfillment services "may include assisting with subscriptions, billing, collection, and/or other account services."  (Compl. ¶ 10.)

Subscribers to HMM's magazines may order a magazine subscription in a variety of paths, including, but not limited to, transmitting the order electronically by filling out an online order form.  (*See, e.g.*, Compl. Ex. 4.)  Depending on the order form used to place the order, the placement of the subscription order does not necessarily occur contemporaneously with payment.  In some online forms, the customer is given an option to provide payment information contemporaneously, or else to elect to receive a bill separately.  In other online forms, there is no option for the customer to submit payment simultaneously with the order, and the customer is billed afterwards.  (*See id*.)  If the subscription is a "bill me later" order, the customer is sent an invoice for the magazine subscription requesting payment.  (Compl. ¶ 28.)  If the customer responds to that invoice by providing her credit card, debit card, or third-party payment account information, only then is she charged for her subscription order.  In some instances, that invoice can take the form of an email containing a link to an online payment form.  (*Id*.)

Many HMM magazine subscriptions are enrolled in HMM's Continuous Service Program.  (Compl. ¶ 13.)  In those cases, Defendants inform the subscriber at the time she places her order that she "will receive uninterrupted service" unless the customer otherwise directs, and that the subscription will be "automatically renewed at the end of each subscription term, at the rate(s) then in effect."  (Compl. Ex. 4.)  Defendants' order form expressly provides that the subscriber "authorize[s] [Hearst] to fulfill [her] subscription and charge the credit/debit card if provided, or send [her] a bill if not."  (*Id*.)

---

Complaint.  The allegations of fact are taken as true solely for purposes of this Motion to Dismiss.

### B.  Fenella Arnold's Subscription to HGTV Magazine

Arnold alleges that "[i]n or about June 2017, in response to one of Defendants' advertisements, Arnold submitted an order for a two-year subscription to *HGTV Magazine*." (Compl. ¶ 23.)  The Complaint expressly concedes that Arnold "does not have a copy of the specific advertisement to which she responded" (¶ 23), and she alleges no facts as to that advertisement's form or contents, including, but not limited to, the language used to describe the terms of her subscription (including any automatic-renewal or continuous-service aspect), or the typeface, size, color, or placement of any such terms.  Arnold does not plead that she read or relied on the unidentified advertisement.

Arnold also alleges that "[o]n July 3, 2017, Defendants charged $22.00 to Arnold's credit card for that two-year subscription" (¶ 23), but the Complaint does not allege when or how she supplied her payment information to Defendants.  Among other things, Arnold does not allege whether she provided her payment information to Defendants by calling a customer service representative, by submitting an electronic form, by sending her information to Defendants in the mail, or through some other means.  She also does not allege the content or form of any disclosures included on any forms she may have completed (including any request for consent to make recurring charges), or otherwise communicated to her during any other customer service interactions she may have had, in connection with submitting payment.  Arnold alleges that "[o]n June 28, 2019 . . . Defendants posted a charge of $34.97 to Arnold's credit card, purportedly for renewal of *HGTV Magazine*."  (¶ 24.)

The Complaint is silent as to any other correspondence Arnold received from Defendants in connection with her subscription; among other things, the Complaint pleads no facts as to whether she was provided with an acknowledgement setting forth the terms of her subscription (including any automatic-renewal or continuous-service aspects).

### C.  Kelly Nakai's Subscription to Food Network Magazine

Nakai alleges that on September 5, 2018, she entered a sweepstakes for a chance to win tickets, airfare, and lodging to attend the New York City Wine & Food Festival.  (¶ 26.)  Nakai alleges that the sweepstakes promotion she responded to included an offer for a free

4

issue of Food Network Magazine.  (¶ 27 & Ex. 4.)  Nakai alleges she submitted that sweepstakes entry through an online order form (the "Nakai Order Form"), a copy of which was attached to the Complaint as Exhibit 4.  (A more legible copy of the identical document is submitted as Exhibit A to the accompanying Declaration of Robert J. Herrington.  *See* Decl. Ex. A.[2])

The Nakai Order Form makes clear to the user that through submission of the form, the user is entering an order for a one-year subscription to Food Network Magazine, and sets forth the terms of the subscription, including how the user can receive "1 FREE issue of Food Network Magazine" while cancelling the remainder of the subscription. Specifically, the form alerts the subscriber that she should expect to receive a bill for $12.00 for a one-year subscription to the magazine, and further states that if the subscriber does not want to go forward with the one-year subscription, the subscriber may "keep the first issue with no obligation" by simply "return[ing] the bill marked 'cancel'":



(Nakai Order Form (Decl. Ex. A), at 1.)  Elsewhere, the form states that the subscription includes automatic renewal and continuous service.  (*Id.*)  Directly above the "SUBMIT" button and set off by an asterisk and the boldface heading "Continuous Service Program,"

---

2    References to "Decl. Ex. ___" are to exhibits to the Declaration of Robert J. Herrington filed concurrently with this motion, which are also exhibits to Defendants' Request for Judicial Notice, also filed concurrently with this motion.

the form expressly states that the user's "subscription(s) will be automatically renewed at the end of each subscription term" and that by submitting the form, the subscriber is authorizing Defendants to "charge the credit/debit card if provided, or send me a bill if not":

**\*Continuous Service Program:** I understand that unless I tell you otherwise, I will receive uninterrupted service and access; my subscription(s) will be automatically renewed at the end of each subscription term, at the rate(s) then in effect. I authorize you to fulfill my subscription(s) and charge the credit/debit card if provided, or send me a bill if not. I won't be bothered with any renewal notices, instead, I will receive a clearly marked reminder notice with the then current rate(s) about 30 days prior to charging my credit/debit card or receiving a bill. I may opt out of the automatic renewal at any time by contacting customer service referenced below and receive a refund for all undelivered issues.

**SUBMIT**

(*Id.*)  Nakai does not allege that she read or relied on any of the statements contained in the Nakai Order Form.

The Complaint does not allege that Nakai incurred any credit card charges upon submission of the Nakai Order Form.  Instead, Nakai alleges she received emails "[t]hereafter" containing an electronic invoice, and that she "paid the 'invoice' with her credit card, in the amount of $12.00." (¶¶ 28-29.)  The Complaint includes what appears to be a partial screenshot of the invoice, which appears to include a clickable button with the words "PAY YOUR INVOICE" (¶ 28), but the Complaint does not allege with sufficient particularity how Nakai paid the invoice "with her credit card."  For example, Nakai does not allege whether she clicked on the button or provided her payment information to Defendants through some other means (*e.g.*, phone, mail, elsewhere online).  She also does not allege the content or form of any disclosures included on any forms she may have completed (including any request for consent to make recurring charges), or otherwise communicated to her during any other customer service interactions she may have had, in connection with submitting her payment.

Nakai alleges, on information and belief, that "the *Food Network Magazine* subscription into which Defendants enrolled her is an automatic-renewal subscription."  (¶

32.)  The Complaint does not allege that Nakai incurred any charges, automatic, recurring, or otherwise, in connection with any renewal.  The Complaint also provides no facts as to whether she was provided with an acknowledgement setting forth the terms of her subscription (including any automatic-renewal or continuous-service aspects).

### D.  **The Complaint**

Both Arnold and Nakai purport to represent a class of "[a]ll individuals in California who, within the applicable limitations period, were enrolled by Defendants in an automatic renewal program or continuous service program and had a credit card, debit card, and/or a third-party payment account charged by Defendants as part of such program."  (¶ 36.)  On behalf of this so-called "ARL Class," Plaintiffs purport to bring claims under the ARL, Cal. Bus. & Prof. Code § 17600 *et seq*., the Consumer Legal Remedies Act ("CLRA"), Cal. Civ. Code § 1770, and the Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200. (¶¶ 44-47, 53-66.)  The gravamen of these claims is set forth in Paragraph 13:

> One aspect of Defendants' negative option model is to solicit orders for magazine subscriptions that purport to be for a fixed period of time (e.g., one year, or two years), whereas upon receipt of an order, Defendants enroll the consumer in a program under which the magazine subscription will be "automatically renewed" for subsequent periods, with corresponding charges to the consumer's credit card, debit card, or other payment account.   Defendants enroll consumers in such 'automatic renewal' subscriptions without making the clear and conspicuous disclosures required by California law.

(¶ 13.)

In addition, Nakai purports to represent a class of "[a]ll individuals in California who, within the applicable limitations period, received an invoice, bill, or account statement from Defendants for magazines that Defendants' [sic] represented to be 'free' and/or for magazine subscriptions that had not been ordered."  (¶ 37.)  On behalf of this so-called "False Invoice Class," Nakai purports to bring claims under California Civil Code § 1716, the CLRA, and the UCL.  (¶¶ 44-66.)  These claims are based on the allegation that "[w]hen a consumer enters a sweepstakes with a request for the (supposedly) 'FREE' issue,

Defendants thereafter send the consumer an 'invoice' stating that payment is due for a year-long subscription to the magazine when, in fact, the recipient did not previously request a subscription and no money is actually due."  (¶ 14.)

Both Arnold and Nakai purport to bring claims for unjust enrichment in addition to their statutory claims.  (¶¶ 67-69.)  Both also seek injunctive relief in addition to restitution and damages.  (¶¶ 47, 58, 66.)

### E.  <u>Procedural History</u>

Plaintiffs filed this action in California Superior Court on September 10, 2019.  On October 10, 2019, Hearst timely removed this action to this Court pursuant to the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d).  (ECF Dkt. No. 1.)  On October 17, 2019, this Court entered an order extending Hearst's time to respond to the Complaint to November 18, 2019.  (ECF Dkt. No. 5.)

## III.   <u>LEGAL STANDARD</u>

"Dismissal under Rule 12(b)(6) is proper when the complaint either (1) lacks a cognizable legal theory or (2) fails to allege sufficient facts to support a cognizable legal theory." *Somers v. Apple, Inc*., 729 F.3d 953, 959 (9th Cir. 2013).

Rule 8(a)(2) of the Federal Rules of Civil Procedure requires that a complaint contain "'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  A complaint fails to meet the requirements of Rule 8(a)(2) and is subject to dismissal pursuant to Rule 12(b)(6) where the complaint fails to articulate "enough facts to state a claim to relief that is plausible on its face." *Id.*, at 570.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "A plaintiff must provide 'more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.'" *Gershman v. Bayer HealthCare LLC*, No. 14-CV-05332-HSG, 2015 WL 2170214, at *2 (N.D. Cal. May 8, 2015) (quoting *Twombly*, 550 U.S. at

555).  In addition, "[a] court need not accept as true allegations that contradict matters properly subject to judicial notice or by exhibit" or other materials central to or incorporated by reference into the complaint, including allegedly false advertising.  *Id.* (citation and quotation marks omitted); *Viggiano v. Hansen Nat. Corp.*, 944 F. Supp. 2d 877, 882-83 (C.D. Cal. 2013) (considering allegedly false labeling).

The heightened pleading standard of Rule 9(b) requires the complaint to "state with particularity the circumstances constituting fraud."  Fed. R. Civ. P. 9(b).  "Averments of fraud must be accompanied by the who, what, when, where, and how of the misconduct charged."  *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009) (quoting *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003)).  As the Ninth Circuit has recognized, Rule 9(b) applies to claims under the CLRA, UCL, and to claims brought under California's False Advertising Law ("FAL"), where such claims sound in fraud or are grounded in claims of allegedly misleading and false advertising.  *See Kearns*, 567 F.3d at 1126; *Vess*, 317 F.3d at 1102-05; *see also Chase v. Hobby Lobby Stores, Inc.*, No. 17-cv-00881-GPC-BLM, 2017 WL 4358146, at *7 (S.D. Cal. Oct. 2, 2017) ("The heightened pleading standard applies to claims under the CLRA, UCL, and FAL."); *Grimm v. APN Inc.*, No. 8:17-cv-00356-JVS-JCG, 2017 WL 6398148, at *5-6 (S.D. Cal. Aug. 31, 2017) ("When a plaintiff alleges a 'unified course of fraudulent conduct and rel[ies] entirely on that course of conduct as the basis of a claim, . . . [that] claim is said to be "grounded in fraud" or to "sound in fraud," and the pleading of the claim as a whole must satisfy the particularity requirements of Rule 9(b).'") (citation omitted).

Here, Plaintiffs' Complaint leaves no doubt that their claims sound in fraud and are grounded in claims of Hearst's allegedly misleading and false advertising.  (*See, e.g.*, Compl. ¶¶ 33 ("Plaintiffs are not the only consumers to be victimized by Defendants in connection with magazine subscriptions.  There are hundreds of consumer complaints about similar deceptive conduct . . . ."), 34 (referring to "Defendants' scheme").)  The crux of Plaintiffs' automatic-renewal claims is that Defendants "solicit orders for magazine subscriptions ***that purport to be*** for a fixed period of time (e.g., one year, or two years),

whereas upon receipt of an order, Defendants enroll the consumer in a program under which the magazine subscription will be 'automatically renewed' for subsequent periods . . . ." (Compl. ¶ 13; *see also* ¶ 24 ("Defendants posted a charge of $34.97 to Arnold's credit card, ***purportedly*** for renewal of *HGTV Magazine*.") (emphases added).)

Similarly, the crux of Nakai's "false invoice" claims is the allegation that "[w]hen a consumer enters a sweepstakes with a request for the (***supposedly***) 'FREE' issue, Defendants thereafter send the consumer an 'invoice' stating that payment is due for a year-long subscription to the magazine when, ***in fact***, the recipient did not previously request a subscription and no money is actually due." (Compl. ¶ 14; *see also* ¶¶ 28 ("Nakai also received emails from Defendants ***purporting to be*** an 'INVOICE' for a subscription to *Food Network Magazine* . . . ."), 29 ("***In fact***, Nakai had never ordered a subscription to *Food Network Magazine*, and no money was actually due.") (emphases added).)

Both the automatic-renewal and the "false invoice" theories are thus based on allegedly misleading or false solicitations or conduct. In the case of the automatic-renewal claims, Plaintiffs allege that Defendants failed to inform consumers that they would be subject to automatic renewal, while supposedly representing that their magazine subscriptions would terminate at the conclusion of the apparent term; for the "false invoice" claims, the Complaint alleges that Defendants supposedly misled consumers to submit sweepstakes entries. The allegedly misleading nature of these practices is at the core of Plaintiffs' Complaint. (*See, e.g.*, Compl. ¶¶ 45, 49, 57, 61, 68.) Accordingly, Plaintiffs must plead their claims with particularity under Rule 9(b). *See, e.g.*, *Williamson v. McAfee, Inc.*, No. 5:14-CV-00158-EJD, 2014 WL 4220824, at *6 (N.D. Cal. Aug. 22, 2014) ("Rule 9(b)'s heightened pleading standard applies to all UCL and FAL claims that are grounded in fraud.").

## IV.   ARGUMENT

### A.   Arnold's Threadbare Claims Fail to Satisfy Any Pleading Standard.

All of Arnold's claims are based on a purported violation of the ARL, but the Complaint is devoid of facts that state a claim for a violation of the ARL. She does not

10

allege what Defendants disclosed to her when she placed her subscription order or when she paid, and she does not even attempt to allege facts setting forth how she believes Defendants' disclosures were misleading or otherwise fell short of the ARL's requirements in form or substance in any way.  Arnold concedes that she "does not have a copy" of the relevant disclosures, and does not claim to know what they stated.  (Compl. ¶ 23.)  The Complaint merely speculates that Arnold may be able to state a claim after she "seek[s] production" of the disclosures "through discovery."  (*Id*.)  These allegations do not satisfy even notice pleading standards, and they certainly do not rise to the level of specificity and plausibility required under Rule 8, much less the particularity required under Rule 9(b).

In *Twombly*, the Supreme Court rejected the argument that a lack of specific and plausible allegations can be offset by the hope for information in discovery.  *See* 550 U.S. at 556-57.  The Court rejected a lower pleading standard that would allow for fishing expeditions, where a plaintiff's "optimism would be enough" to impose "the potentially enormous expense of discovery."  *Id*. at 559.  Under *Twombly*, to assert a claim grounded on a violation of the ARL based on inadequate disclosures, the complaint must "sufficiently detail the content of disclosures."  *McKee v. Audible, Inc*., No. 2:17-cv-01941-GW(Ex), 2017 WL 7388530, at *21 (C.D. Cal. Oct. 26, 2017).  In *McKee*, plaintiff brought a variety of claims against Audible, including a claim "brought under the theory that Defendant violated the [ARL], and thus UCL, by utilizing unlawful automatic renewal payment policies and providing incomplete disclosures of the policies."  *Id*.  The court held that the complaint did not even satisfy *Twombly*, because "McKee does not sufficiently detail the content of disclosures he alleges Audible includes during the sign-up process . . . ."  *Id*.

Arnold's allegations are even more threadbare than those found insufficient in *McKee*.  In his complaint, McKee alleged,

> Audible requires ***all consumers*** who sign up to designate a specific credit card for Audible to charge automatically each month or year, depending on the particular recurring payment plan.  Audible fails, however, to properly disclose to consumers all of the required recurring payment and cancellation policies at the point of sale (i.e., at the "Start

> Now" or similar button).  The limited disclosures Audible does provide are not clear and conspicuous, are not placed in close visual proximity to the button consumers are asked to click, . . . and do not include the relevant cancellation terms.

(Decl. Ex. B (First Amended Complaint in *McKee v. Audible, Inc*. ("*McKee* FAC"), No. CV 17-1941-GW(Ex) (S.D. Cal. filed Aug. 11, 2017) (Dkt. No. 40)) ¶ 5 (emphasis added); *see also id*. ¶ 39.)  Here, the Complaint **concedes** that Arnold does not have the relevant disclsoures and thus has omitted ***all information*** about the relevant disclosures, and the Complaint rests solely on Arnold's optimism that discovery will bear out a violation of the ARL.  (Compl. ¶ 23.)  Arnold does not attempt to allege what was misleading about, or missing from, any advertisement, order form, invoice, acknowledgement, or any other communication.

   This pleading defect is exacerbated in the context of this case, because other parts of the Complaint demonstrate that the Defendants do include disclosures regarding the terms of automatic renewals.  (*See* Nakai Order Form (Decl. Ex. A).)  Furthermore, McKee's complaint alleged that "***every consumer is required to designate one credit card*** that Audible will automatically charge monthly or annually in perpetuity until the consumer affirmatively cancels the recurring payments." (*McKee* FAC (Decl. Ex. B) ¶ 36.) (emphasis added).  Here, by contrast, the Complaint does not allege that Hearst's disclosures to ***all*** consumers were deficient in the same way, and the Complaint's allegations as to Nakai make plain that some subscribers do not submit payment information simultaneously with their subscription order, which raises the question of what information Hearst discloses to these "bill me later" subscribers through the payment process before the subscriber incurs any charges.  *See Dvora v. General Mills, Inc*., No. 11-cv-1074-GW-PLA, 2011 WL 1897349, at *8 (C.D. Cal. May 16, 2011) (rejecting plaintiff's attempt to rely on allegedly misleading statements from website where "Plaintiff concedes in his opposition that he never read or relied upon such statements in making his purchase").

   Given that these pleading defects are fatal under Rule 8 and *Twombly*, they also cannot meet the heightened requirements of Rule 9(b).  *See, e.g.*, *Kearns*, 567 F.3d at 1127

(affirming dismissal of nondisclosure claims because they were "couched in general pleadings" which "do not satisfy the heightened pleading requirements of Rule 9(b)"); *Beshwate v. BMW of North Am., LLC*, No. 1:17-cv-00417-SAB, 2017 WL 4410169, at *13 (E.D. Cal. Oct. 4, 2017) ("Plaintiffs failure to identify the specific advertisements does not provide Defendant CarMax with adequate notice of the alleged violations of the CLRA. The Court finds that first amended complaint fails to meet the pleading requirements of Rule 9.") (internal citation omitted).

Arnold cannot salvage her claims with the allegation that "she was not aware that Defendants were going to enroll her" in a continuous service program (Compl. ¶ 23), because Arnold's supposed ignorance does not support an inference that Defendants' disclosures (whatever they may have been in form and substance) were misleading or deficient in any way, particularly where, as here, Arnold does not allege that she read or relied on any statements made by Defendants.  Assuming Arnold was—as alleged— unaware of the terms of the offer, her allegations provide no basis to attribute her unawareness to an unclear, inconspicuous, or misleading disclosure.

All of Arnold's claims are based on a predicate violation of the ARL or on a premise that, given the alleged lack of a clear and conspicuous disclosure, she did not consent to Defendants' offer.  In view of Arnold's failure to include any allegations about the form or content of Defendants' disclosures, or how the unidentified disclosures were deficient or misleading, each of Arnold's causes of action should be dismissed.

Finally, Arnold's attempt to bring a claim directly under the ARL (Compl. ¶ 46) is defective for the additional reason that there is no private right of action under the ARL.[3]

### B. <u>Nakai Fails to Plead Her Statutory Claims.</u>

Nakai pleads two sets of claims.  First, like Arnold, she purports to bring claims based

---

[3]  *See, e.g.*, *Johnson v. Pluralsight, LLC*, 728 F. App'x 674, 676 (9th Cir. 2018) (Mem. Op.); *Lopez v. YP Holdings, LLC*, No. 18-cv-8791-MWF, 2019 WL 2895190, at *3 (C.D. Cal. Mar. 26, 2019); *Lopez v. Stages of Beauty, LLC*, 307 F. Supp. 3d 1058, 1068 (S.D. Cal. 2018) (collecting cases).  Nakai's direct ARL claim also should be dismissed for this reason.

on a supposedly improper automatic renewal.  Second, she purports to bring claims based on Defendants' allegedly "false" invoices.  Each set of claims must be dismissed.

### 1. Nakai's Automatic-Renewal Claims Fail Because She Does Not Allege that She Was Subject to a "Recurring Charge."

Nakai alleges, on information and belief, that her subscription to Food Network Magazine "is an automatic-renewal subscription."  (Compl. ¶ 32.)  But the Complaint carefully avoids making any allegation that Nakai has ever incurred any automatic, recurring charges in connection with her magazine subscription.  This fundamental defect is fatal to her claims.

The ARL does not apply to Nakai's order because the Complaint does not allege that Defendants made any automatic, recurring charge to her cards or payment accounts.  As the statute's plain language makes clear, the ARL applies (and thus can be violated) only where a business makes automatic, recurring charges to a consumer's card or payment account.

By its terms, the ARL's substantive requirements apply only where a business "makes an automatic renewal offer or continuous service offer."  *Id*. § 17602(a).  The term "automatic renewal" is defined to mean "a plan or arrangement in which a paid subscription or purchasing agreement is automatically renewed at the end of a definite term for a subsequent term."  *Id*. § 17601(a).  Though that definition does not explicitly refer to automatic, recurring charges to payment cards or accounts, when read in context with the rest of the ARL, there can be no doubt that the statute applies only to transactions with automatic, recurring charges.  *See, e.g.*, *Astaire v. Best Film & Video Corp*., 116 F.3d 1297, 1300 (9th Cir. 1997) ("The words of the statute must be construed in context, keeping in mind the statutory purpose, and statutes or statutory sections relating to the same subject must be harmonized, both internally and with each other, to the extent possible.") (quoting *Dyna-Med, Inc. v. Fair Emp't & Hous. Comm'n*, 43 Cal.3d 1379, 1387 (1987).

Each of the ARL's three substantive requirements, located in subsections to Section 17602(a), is centered around the concept of "automatic renewal offer terms":

- Subsection (a)(1) makes it unlawful to "[f]ail to present the ***automatic***

14

        ***renewal offer terms*** or continuous service offer terms in a clear and conspicuous manner";

- Subsection (a)(2) prohibits charging the consumer for an automatic renewal or continuous service "without first obtaining the consumer's affirmative consent to the agreement containing the ***automatic renewal offer terms*** or continuous service offer terms"; and
- Subsection (a)(3) requires "an acknowledgment that includes the ***automatic renewal*** offer terms or continuous service ***offer terms***."[4]

The ARL specifically defines the term "automatic renewal offer terms" to mean several items, including the "***recurring charges*** that will be charged to the consumer's credit or debit card or payment account with a third party." *Id.* § 17601(b)(3) (emphasis added). These three subsections thus require disclosure of, inter alia, "recurring charges that will be charged." Section 17600, which expresses the legislative intent behind the ARL, similarly refers to "***ongoing charging*** of consumer credit or debit cards or third-party payment accounts without the consumers' explicit consent." *Id.* § 17600 (emphasis added).

In other words, the text and structure of the ARL make plain that a transaction is covered under Section 17602(a) if and only if the transaction involves "recurring charges" to a payment account. (*See* Minute Order Granting Summary Judgment in *Cortez v. McClatchy* ("*McClatchy* Order"), No. 34-2014-00169700-CU-BT-GDS (Cal. Super. Sacramento Cnty. filed Aug. 16, 2018) (Dkt. No. 241), at 9, 10. (Decl. Ex. C).) Absent recurring charges, the ARL does not apply and cannot be violated. A contrary interpretation—requiring a business to ***disclose*** "recurring charges" where no such charges are even made—is nonsensical and would be contrary to long-accepted principles of statutory interpretation. *See, e.g.*, *Woods v. Young*, 53 Cal.3d 315, 323 (1991) ("Interpretations that lead to absurd results or render words surplusage are to be avoided.").

State and federal courts have found, as a matter of law, that the ARL is not violated where there is no automatic, recurring charge to a card or payment account. In *Cortez v. McClatchy*, the court granted summary-judgment dismissal of certain plaintiffs' UCL

---

[4] The Complaint alleges no facts relating to the "acknowledgement" required by Section 17602(a)(3).

claims because the court found, as a matter of law, that "[t]he ARL . . . does not apply here, where the Plaintiffs were not charged to a credit or debit card or consumer account with a third party." (*McClatchy* Order (Decl. Ex. C), at 9.) Noting that the definition of "automatic renewal offer terms" necessarily contemplated "recurring charges," the court specifically rejected plaintiffs' argument that "payment by debit or credit card is not a requirement of the ARL." (*Id.* at 9.) And in *Lopez* v. *YP Holdings, LLC*, No. CV 18-8791-MWF, 2019 WL 2895190 (C.D. Cal. Mar. 26, 2019), the court stressed that no ***automatic charge*** had been alleged. 2019 WL 2895190, at *4 ("Plaintiff has also failed to allege that she was ***automatically charged*** a fee to any of her accounts and instead noted that on February 16, 2018, she 'mailed a check payable to Defendants for $100.00 as a result of Defendants automatically renewing the contract.'") (emphasis added).

Here, the Complaint not only fails to allege that Nakai was ever subject to an automatic, recurring charge, but it makes apparent that no such automatic, recurring charge took place. The Nakai Order Form does not provide a mechanism for her to supply her payment information, and specifically discloses that, absent such information, the customer will be sent a bill, both in connection with the initial order, and in any subsequent renewal. Indeed, she alleges she received an invoice after the order and paid it. (Compl. ¶¶ 28-30.)

Where, as here, there is only a single charge alleged, and that charge was not made automatically by Defendants, but instead was, according to the Complaint, initiated by Nakai in response to an invoice, there is no claim for a violation of the ARL. *See Lopez*, 2019 WL 2895190, at *4; *McClatchy* Order (Decl. Ex. C), at 9, 10.

## 2. Nakai's Automatic-Renewal Claims Fail Because She Does Not Allege How or Why Her Order Form Failed to Comply with the ARL.

Even if this Court held that the ARL applied to a subscription order where the plaintiff has not alleged an automatic, recurring charge, Nakai's automatic-renewal claims should still be dismissed, because the Complaint fails to allege how or why Defendants violated the ARL.

The Complaint makes the conclusory allegation that Defendants enroll subscribers in

16

"'automatic renewal' subscriptions without making the clear and conspicuous disclosures required by California law" (Compl. ¶ 13), but does not allege that Defendants failed to make "clear and conspicuous" disclosures of "automatic renewal offer terms" ***to Nakai***. The Complaint alleges that she ordered her magazine subscription by completing the Nakai Order Form, but does not allege how or why the Nakai Order Form failed to comply with the ARL.  Specifically, the Complaint does not allege ***which***, if any, of the required items set forth in the statutory definition of "automatic renewal offer terms" are missing.  Cal. Bus. & Prof. Code § 17601(b).  Nor does the Complaint allege ***how***, if at all, the Nakai Order Form's disclosures failed to meet the statutory definition of "clear and conspicuous." *Id.* § 17601(c).  On its face, the Nakai Order Form contains disclosures regarding HMM's Continuous Service Program.  Under *Twombly* and *Iqbal*, this Court should not credit Plaintiffs' conclusory characterization that these disclosures fail to comply with the ARL. *See Iqbal*, 556 U.S. at 678 ("[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.").

Moreover, "[t]o avoid dismissal . . . under Rule 9(b), [the] complaint would need to 'state the time, place, and specific content of the false representations . . . .'" *Edwards v. Marin Park, Inc.*, 356 F.3d 1058, 1066 (9th Cir. 2004) (citation omitted); *Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007).  "To meet this standard a plaintiff must allege the 'who, what, where, when, and how' of the misconduct and explain what is false or misleading about the statement made and why it is false." *In re iPhone 4s Consumer Litig.*, 637 F. App'x 414, 415 (9th Cir. 2016) (citing *Cafasso ex. rel. United States v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1055 (9th Cir. 2011)).  Nakai's automatic-renewal claims fail to satisfy Rule 9(b). *See, e.g.*, *Shin v. Umeken USA, Inc.*, 773 F. App'x 373, 376 (9th Cir. 2019) ("Shin alleges that she was harmed by defective disclaimers accompanying Umeken's advertising claims . . . because their 'inconspicuous' nature rendered the underlying advertising claims false or misleading. But Shin fails to describe with the requisite particularity how any defect in Umeken's disclaimers makes its other advertising claims misleading.") (internal citation omitted).

### 3.   Nakai's "False Invoice" Claims Fail Because She Does Not Allege Facts Showing that the Invoice Was a Solicitation.

Nakai's "false invoice" claims are based on a misreading of California Civil Code § 1716 and should be dismissed.  That statute, a species of mail fraud, was enacted to address "[a] common fraudulent practice consist[ing] of sending mailed solicitations for the sale of goods or services in such form that the recipient mistakes them for an invoice for obligations already incurred and unthinkingly makes payment of the stated sum."  *See* Decl. Ex. D (Order Granting Defendant's Motion for Partial Summary Judgment ("*Samsung* Order"), *Samsung Int'l v. Allied Carriers Exchange*, No. 3:00-cv-01074-K-POR (S.D. Cal. filed June 12, 2001) (ECF Dkt. No. 83), at 4 (analogizing § 1716 to criminal mail fraud)); *see also* 4 B.E. Witkin, *Summary of California Law* § 341 (11th ed. 2019).  Section 1716 states, "[i]t is unlawful for a person to solicit payment of money by another by means of a written statement or invoice, or any writing that reasonably could be considered a bill, invoice, or statement of account due, ***but is in fact a solicitation for an order***" unless the solicitation contains a specified warning.  Cal. Civ. Code § 1716(a) (emphasis added).

Here, the Complaint's own allegations make clear that the invoice at issue was a properly issued bill seeking payment for an order placed by Nakai, not "in fact a solicitation for an order," and accordingly, Cal. Civ. Code § 1716 does not apply.

As alleged in the Complaint, Nakai's "false invoice" claim relates to emails she received as a result of entering a sweepstakes.  Nakai alleges she entered a sweepstakes by completing and submitting the Nakai Order Form online.  (Compl. ¶ 27 & Ex. 4.)  As alleged in the Complaint, Defendants understood her sweepstakes entry to be an order for a magazine subscription.  (*See* Compl. ¶¶ 30 ("If Nakai had known that, upon receipt of her sweepstakes entry, Defendants were going to enroll her in, and charge her for, a one-year subscription for *Food Network Magazine* . . . ."), 32 ("If Nakai had known that Defendants were going to treat her submission of a sweepstakes entry as enrollment into an automatic-renewal subscription . . . .").)  Defendants sent her emails consistent with its understanding that she had ordered a magazine subscription; the emails "thank[ed] [Nakai] for subscribing

18

to *Food Network Magazine* and entering the sweepstakes" and requested payment for the subscription.  (¶ 28.)  Far from being "in fact a solicitation for an order," the Complaint itself alleges that Defendants understood the invoice to be an entirely proper bill seeking payment for a magazine that Nakai ordered.[5]

The Nakai Order Form, attached to the Complaint, demonstrates the basis for Defendants' understanding that Nakai had in fact ordered a magazine subscription.  It makes clear that in filling out the form and clicking "SUBMIT," Nakai was ordering a magazine subscription, but was free to cancel at any time, without payment, if she decided she did not want to continue receiving the magazines.  (Nakai Order Form (Decl. Ex. A), at 1.)  The order form states,  "If you like what you see, you'll get 1 year (for a total of 11 issues) for just $12.00 – that's 78% less than others pay on the newsstand.  ***If not, return the bill marked 'cancel' and keep the first issue with no obligation.***  You'll still be eligible to win the sweepstakes."  (*Id*. at 1 (emphasis added).)  Just above the "SUBMIT" button, the order form includes disclosures relating to HMM's Continuous Service Program, which further serves to remind the user that she is about to order a subscription to a magazine:  "I understand that ***unless I tell you otherwise, I will receive uninterrupted service*** and access; ***my subscription(s) will be automatically renewed*** at the end of each subscription term, at the rate(s) then in effect.  ***I authorize you to fulfill my subscription(s) and . . . send me a bill*** . . . .  I may opt out of the automatic renewal at any time by contacting customer service referenced below and receive a refund for all undelivered issues."  (*Id*. (emphasis added).)

In *Samsung International, Inc. v. Allied Carriers Exchange*, No. 3:00-cv-01074-K-POR (S.D. Cal.), the Court dismissed a "false invoice" claim where there was no dispute that the plaintiff received "at least some over the road trucking services," but disputed the amount of the charges.  The court, in dismissing the claim, held that "the plain meaning of the phrase 'but is in fact a solicitation for an order' is that they *limit* the actual documents that fall under the statute to those that are 'in fact a solicitation.'"  (*Samsung* Order (Decl.

---

[5]   Further, the Complaint alleges no facts that would support any inference that Defendants did not fulfill the terms of Nakai's subscription order.

Case 3:19-cv-01969-WQH-MDD   Document 11-1   Filed 11/18/19   PageID.136   Page 26 of 30

Ex. D), at 5.)  Observing that "the dispute concerns how much is actually owed to Allied and how much Allied overcharged Samsung," the *Samsung* court held, "This is an error in billing, or perhaps a claim for fraud, not an attempt to solicit an order." (*Id*. at 6.)

Here, unlike in *Samsung*, the allegations in the Complaint do not support an inference of fraud or even a bona fide billing dispute; to the contrary, the Complaint's own allegations and exhibits leave no room for doubt that Nakai placed an order for a magazine subscription on September 5, 2018, that Defendants understood her to have done just that, and that Defendants acted accordingly.  As set forth in the Nakai Order Form, under the terms of Nakai's subscription order, Nakai was given the option to cancel her subscription without making any payment while keeping her "FREE" issue of Food Network Magazine.  She may now regret that she did not do so and instead chose to pay the invoice for the subscription, but her second thoughts do not state a claim under Section 1716, or any claim based on a purported violation of that provision.

## C. <u>Plaintiffs Fail to Plead Statutory Standing to Bring Their Statutory Claims.</u>

To have statutory standing to sue under the FAL, CRLA, UCL, or Cal. Civ. Code § 1716, a plaintiff must allege an injury in fact and reliance on the allegedly misleading conduct.  *See Kwikset Corp. v. Super. Ct*., 51 Cal.4th 310, 326-27 ( 2011); *In re Tobacco II Cases*, 46 Cal.4th 298, 326 (2009); Cal. Civ. Code § 1780(a); *Meyer v. Sprint Spectrum, L.P.*, 45 Cal.4th 634, 641 (2009); Cal. Civ. Code § 1716(g).  Here, both plaintiffs fail to plead facts showing statutory standing.

As set forth *supra*, Nakai does not allege that she was ever subject to an "automatic" or "recurring" charge.  Instead, the only conceivable basis for any claim of injury is her payment of $12.00 relating to the initial order of *Food Network Magazine*.  But Nakai does not allege that she made that payment when she completed and submitted the Nakai Order Form.  Instead, the Complaint alleges that she made that payment in response to an invoice she received in the form of an email.  (Compl. ¶ 28.)  The Complaint is conspicuously silent as to how Nakai effectuated that payment; the Complaint does not plead whether Nakai clicked on the payment link contained in the invoice, and it pleads no facts as to what, if

any, representations were contained on whatever form she actually used to submit her payment information and authorize Defendants to charge her card.  Where, as here, the Complaint itself establishes that at least one more event must have occurred between any allegedly misleading conduct and any alleged injury, a plaintiff cannot establish statutory standing without pleading that missing step.  Nakai has not done so here, and absent any such allegations, Nakai has not adequately alleged the requisite causal link between Defendants' allegedly misleading conduct and any injury she suffered.  *See Brown v. Bank of Am., N.A.*, 457 F. Supp. 2d 82, 89 (D. Mass. 2006) (granting summary-judgment dismissal of Cal. UCL claim predicated on allegedly defective disclosures affixed to ATM machines, where record established that ATMs required customers to click through a disclosure screen notifying customers of the fees, thus "break[ing] the causal connection between the defective notice and the payment of the fee").

As for Arnold, any argument that she has alleged statutory standing is foreclosed by her failure to allege what Defendants disclosed to her, or how those disclosures were misleading or deficient.  Having failed to plead the underlying violation, she cannot plead causation.

## D.  <u>Plaintiffs' Claims Fail in Their Entirety.</u>

As already shown, Plaintiffs' ARL claims fail entirely.  Arnold does not allege any facts about the offer to which she responded.  Nakai fails to adequately allege that her subscription to Food Network Magazine was an "automatic renewal offer" or a "continuous service offer," as required for the ARL to apply.  Nakai also fails to plead a viable claim for a violation of California Civil Code section 1716 because she cannot plausibly claim that the document she received was "in fact a solicitation for an order," when she alleges that she placed an order and was charged for it.

Plaintiffs' remaining claims should be dismissed as well:

***CLRA Claims***.  Plaintiffs' CRLA claims are entirely conclusory and unsupported by any factual allegations.  Plaintiffs' theory, among other things, is that Hearst falsely represented that certain (unspecified) goods and services had certain (unspecified)

characteristics that they did not actually have.  These are not factual allegations, but mere conclusory statements parroted from the statute.  (*Compare* Compl. ¶ 57 *with* Cal. Civil Code § 1770.)  Plaintiffs make no attempt to allege or explain what, exactly, Hearst falsely represented to them.  *See, e.g.*, *Moran v. Am. Gen. Fin.*, No. 10-cv-1366-LAB, 2011 WL 768141, at *2-3 (S.D. Cal. Feb. 28, 2011) (dismissing complaint where allegations were "copied from some other source" and emphasizing that "[c]utting and pasting text wholesale with an uncritical eye and with no regard for whether the allegations are supported by facts or law is a violation of Rule 11").

**UCL Claims**.  Plaintiffs' UCL claims are entirely derivative of their other failed claims.  Paragraph 61 of the Complaint purports to lay out the allegations for the UCL claims, but each subsection in that paragraph does no more than to purportedly allege violations of other laws.  (*See* Compl. ¶ 61 subds. (a)-(c) (ARL), (d) (Cal. Civ. Code § 1716), (e)-(i) (CLRA).)  *See Lopez*, 2019 WL 2895190, at *4 (finding plaintiff's "UCL claim fail[ed] to the extent it [was] predicated on her claim for violation of the ARL" because "Plaintiff fail[ed] to allege sufficient facts to establish that she [was] a 'consumer' within the meaning of the ARL").

Plaintiffs' UCL claims fail for other reasons, too.  Plaintiffs' claim that Hearst engages in unfair business practices relies on conclusory statements parroted from the UCL legal standard.  (*Compare* Compl. ¶¶ 62-63 *with Cel-Tech Comm., Inc. v. Los Angeles Cellular Tel. Co.,* 20 Cal. 4th 163, 184 (1999) (acknowledging definition of "unfair business practice" as one that "offends an established public policy or when the practice is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers.") *and Schnall v. The Hertz Corporation*, 78 Cal. App. 4th 1144, 1161 (2000) (explaining application of the "reasonably available alternatives" standard in UCL action).)  Similarly, Plaintiffs' allegation that Hearst made false or misleading statements to deceive the "consuming public" not only parrots from the UCL standard, but is devoid of any specificity as to how Hearst engaged in fraudulent behavior.  (*Compare* Compl. ¶ 64 *with Comm. on Children's Television v. Gen. Foods Corp.*, 35 Cal. 3d. 197, 211 (1983), *abrogated on other grounds*

*by Branick v. Downey Sav. & Loan Ass'n*, 39 Cal. 4th 235, 242 (2006) (explaining that a business practice is "fraudulent" within the meaning of § 17200 if "members of the public are likely to be deceived").)

**Unjust Enrichment**.  Finally, Plaintiffs' claims for unjust enrichment fail as well. Under California law, unjust enrichment is not a cause of action, just a restitution claim. *Hill v. Roll Int'l Corp.*, 195 Cal. App. 4th 1295, 1307 (2011).[6]

### E.  Plaintiffs Are Not Entitled to Injunctive Relief.

Plaintiffs cite the section of the FAL that allows plaintiffs to file "[a]ctions for injunction," Cal. Bus. & Prof. Code § 17535, and they therefore allege that "[p]ursuant to Bus. & Prof. Code § 17535, Plaintiffs and Class members are entitled to an injunction enjoining Defendants" from continuing their alleged violations of the ARL.  (Compl. ¶ 47.) Plaintiffs seeking injunctive relief must allege a "sufficient likelihood that [they] will again be wronged in a similar way . . . ."  *City of L.A. v. Lyons*, 461 U.S. 95, 111 (1983).  Here, each Plaintiff alleges that "if [she] had known that Defendants were going to enroll her in an automatically renewing magazine subscription program, [she] would not have submitted the order . . . ."  (Compl. ¶ 25; *see also* ¶ 32.)  Accordingly, Plaintiffs have not plausibly alleged that they would be injured again.  *See, e.g.*, *Luman v. Theismann*, 647 F. App'x 804, 807 (9th Cir. 2016).[7]  Because Plaintiffs do not allege any ongoing conduct or ongoing harm, injunctive relief would not provide any redress to Plaintiffs and their claim for

---

[6]   Nor are Plaintiffs entitled to restitution "pursuant to Bus. & Prof. Code §§ 17603 and 17535 . . . ."  (Compl. ¶ 46.)  Courts have routinely dismissed claims for equitable relief under California's consumer protection statutes "where plaintiffs have alleged other claims presenting an adequate remedy at law."  *Munning v. Gap. Inc.*, 238 F. Supp. 3d 1195, 1203 (N.D. Cal. 2017) (collecting cases).  Here, Plaintiffs have alleged a range of other claims for damages (and even treble damages) foreclosing any argument that an equitable relief is necessary.  The Complaint therefore does not state a claim for restitution.

[7]   In *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 971 (9th Cir. 2018), the Ninth Circuit held that a plaintiff faced an imminent or actual threat of future harm where the plaintiff "alleged that she 'continues to desire to purchase'" the defendant's product in the future.  Here, Plaintiffs do not allege or even suggest they want to purchase magazine subscriptions or other products from Defendants in the future.

23

injunctive relief is moot.[8]   Where, as here, "Plaintiff does not plead facts . . . that [Defendants] are engaged in an ongoing [violation] that could be redressed by an injunction from this Court," the claim for an injunction must be "dismissed as moot." *Elsharkawi v. United States*, No. 8:18-cv-01971-JLS, 2019 WL 3811518, at *4-5 (C.D. Cal. Aug. 8, 2019).

## V.   **CONCLUSION**

For the foregoing reasons, Hearst respectfully requests that this Court enter an order dismissing the Complaint in its entirety pursuant to Rules 12(b)(1), 12(b)(6), and 9(b) of the Federal Rules of Civil Procedure, and granting such other relief as the Court deems just and proper.

Dated:  November 18, 2019

GREENBERG TRAURIG, LLP

By:_____/s/ Robert J. Herrington_____

Robert J. Herrington (SBN 234417)
HerringtonR@gtlaw.com
1840 Century Park East, Suite 1900
Los Angeles, California 90067
Tel:  (310) 586-7700
Fax:  (310) 586-7800

Respectfully submitted,

THE HEARST CORPORATION
OFFICE OF GENERAL COUNSEL

*/s/ Jonathan R. Donnellan*_____

Jonathan R. Donnellan*
jdonnellan@hearst.com
Stephen H. Yuhan
syuhan@hearst.com
Matthew Greenfield
matthew.greenfield@hearst.com
300 West 57th St, 40th Floor
New York, New York 10019
Tel:  (212) 841-7000
Fax:  (212) 554-7000

* *Pro hac vice* application forthcoming

*Attorneys for Defendants Hearst Magazine Media, Inc. and CDS Global, Inc.*

---

[8]   *See Padilla v. Nev. Dep't of Corr.*, 510 F. App'x 629, 630 (9th Cir. 2013) (Mem. Op.); *Quigley v. Am. Claims Servs., Inc.*, No. 2:13-cv-01766-KJM-EFB, 2015 WL 1258563, at *6 (E.D. Cal. Mar. 18, 2015).