JAMES T. HANNINK (131747)
jhannink@sdlaw.com
ZACH P. DOSTART (255071)
zdostart@sdlaw.com
DOSTART HANNINK & COVENEY LLP
4180 La Jolla Village Drive, Suite 530
La Jolla, California 92037-1474
Tel:  858-623-4200
Fax: 858-623-4299

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FENELLA ARNOLD, KELLY NAKAI, and MICHELE RUPPERT, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>HEARST MAGAZINE MEDIA, INC., a Delaware corporation; CDS GLOBAL, INC., an Iowa corporation; and DOES 1-50, inclusive,<br><br>Defendants. | CASE NO. 3:19-cv-01969-WQH-MDD<br><br>CLASS ACTION<br><br>FIRST AMENDED COMPLAINT FOR:<br><br>(1) FALSE ADVERTISING [Bus. & Prof. Code § 17600 et seq. and § 17535]<br><br>(2) VIOLATION OF CIV. CODE § 1716<br><br>(3) VIOLATION OF THE CONSUMERS LEGAL REMEDIES ACT [Civ. Code § 1750 et seq.]<br><br>(4) VIOLATION OF THE UNFAIR COMPETITION LAW [Bus. & Prof. Code § 17200 et seq.]<br><br>(5) UNJUST ENRICHMENT<br><br>DEMAND FOR JURY TRIAL |

## **INTRODUCTION**

1.     This class action complaint alleges that defendants Hearst Magazine Media, Inc. ("Hearst") and CDS Global, Inc. ("CDS") violate California law in connection with magazine marketing and subscription programs.   Among other things, Hearst and CDS work together to enroll consumers in automatic renewal subscriptions without providing the "clear and conspicuous" disclosures mandated by California law; post charges to consumers' credit or debit cards for purported automatic renewal subscriptions without first obtaining the consumers' affirmative consent to an agreement containing the requisite clear and conspicuous disclosures; and solicit payment of money for goods that consumers did not order by sending "invoices" for amounts that are not actually owed.  Defendants' conduct constitutes false advertising based on violation of the California Automatic Renewal Law (Bus. & Prof. Code § 17600 et seq.); violates California's statutory prohibition on soliciting payment for unordered goods by means of false invoices (Civ. Code § 1716); violates the Consumers Legal Remedies Act (Civ. Code § 1750 et seq.) ("CLRA"); and violates the Unfair Competition Law (Bus. & Prof. Code § 17200 et seq.) ("UCL").

## **THE PARTIES**

2.     Plaintiff Fenella Arnold ("Arnold") is an individual residing in San Diego County, California.

3.     Plaintiff Kelly Nakai ("Nakai") is an individual residing in San Diego County, California.

4.     Plaintiff Michele Ruppert ("Ruppert") is an individual residing in San Diego County, California.

5.     Arnold, Nakai, and Ruppert are collectively referred to herein as "Plaintiffs."

6.     Plaintiffs are informed and believe and thereon allege that defendant Hearst Magazine Media, Inc. is a Delaware corporation that does business in San Diego County, including the marketing of magazine subscriptions.

7. Plaintiffs are informed and believe and thereon allege that defendant CDS Global, Inc. is an Iowa corporation that does business in San Diego County, including the marketing and processing of magazine subscriptions.

8. Plaintiffs do not know the names of the defendants sued as DOES 1 through 50 but will amend this complaint when that information becomes known. Plaintiffs allege on information and belief that each of the DOE defendants is affiliated with one or more of the named defendants in some respect and is in some manner responsible for the wrongdoing alleged herein, either as a direct participant, or as the principal, agent, successor, alter ego, or co-conspirator of or with one or more of the other defendants. For ease of reference, Plaintiffs will refer to the named defendants and the DOE defendants collectively as "Defendants."

## JURISDICTION AND VENUE

9. Defendants Hearst and CDS Global removed the action to this Court from the San Diego County Superior Court on October 10, 2019. *See* Dkt. No. 1.

10. Venue is proper in this judicial district because the complained of conduct occurred in San Diego County and the liability arose in San Diego County.

## BACKGROUND

11. Hearst is one of the largest magazine publishers in the world. In the United States, Hearst publishes approximately two dozen magazine titles, including *Food Network*, *Cosmopolitan*, *Good Housekeeping*, *Woman's Day*, *Country Living*, *HGTV Magazine*, and *Car & Driver*.

12. CDS is the largest magazine fulfillment house in the United States. As a fulfillment house, CDS works with magazine publishers to provide services that may include assisting with subscriptions, billing, collection, and/or other account services. Based in Des Moines, Iowa, CDS is a wholly-owned subsidiary of Hearst, and provides fulfillment services for Hearst as well as for other magazine publishers.

13. Traditionally, magazine publishers sold subscriptions on the basis of a schedule that reflects a fixed price for a definite term (such as one, two, or three years).

Under that arrangement, the consumer selects the desired price/term combination and submits payment.  Later, when the end of the term is approaching, the consumer is notified that the subscription will soon come to an end and is provided with a renewal offer.  If the consumer wishes to renew, he or she selects the desired price/term combination for the renewal period and submits the corresponding payment. Alternatively, if the consumer does not renew, the subscription comes to an end.

14.     During the 1990s, some marketers came to view the traditional model as constraint on sales and profits, and advocated instead adoption of a "negative option" model.  In a "negative option," the seller "interpret[s] a customer's failure to take an affirmative action, either to reject an offer or cancel an agreement, as assent to be charged for goods or services."  *See "Negative Options,"* Federal Trade Commission, January 2009 (available at https://www.ftc.gov/sites/default/files/documents/-reports/negative-options-federal-trade-commission-workshop-analyzing-negative-option-marketing-report-staff/p064202negativeoptionreport.pdf (last accessed November 27, 2019).  Defendants have implemented a negative option model that does not comply with California law.

15.     One aspect of Defendants' negative option model is to solicit orders for magazine subscriptions that purport to be for a fixed period of time (e.g., one year, or two years), whereas upon receipt of an order, Defendants enroll the consumer in a program under which the magazine subscription will be "automatically renewed" for subsequent periods, with corresponding charges posted to the consumer's credit card, debit card, or other payment account.  Defendants enroll consumers in such "automatic renewal" subscriptions without making the clear and conspicuous disclosures required by California law.

16.     Another aspect of Defendants' negative option model is to send consumers an "invoice" stating that payment is due for a subscription when, in fact, the recipient did not request a subscription and no money is actually due.  California law prohibits such false invoices.

4

# SUMMARY OF APPLICABLE LAW

## The California Automatic Renewal Law

17.     In 2009, the California Legislature passed Senate Bill 340, which took effect on December 1, 2010 as Article 9 of Chapter 1 of the False Advertising Law. (Bus. & Prof. Code § 17600 *et seq.* (the California Automatic Renewal Law or "ARL").)  SB 340 was introduced because:

> It has become increasingly common for consumers to complain about unwanted charges on their credit cards for products or services that the consumer did not explicitly request or know they were agreeing to. Consumers report they believed they were making a one-time purchase of a product, only to receive continued shipments of the product and charges on their credit card. These unforeseen charges are often the result of agreements enumerated in the "fine print" on an order or advertisement that the consumer responded to.

*See* Exhibit 1.

18.     The Assembly Committee on Judiciary provided the following background for the legislation:

> This non-controversial bill, which received a unanimous vote on the Senate floor, seeks to protect consumers from unwittingly consenting to "automatic renewals" of subscription orders or other "continuous service" offers.  According to the author and supporters, consumers are often charged for renewal purchases without their consent or knowledge. For example, consumers sometimes find that a magazine subscription renewal appears on a credit card statement even though they never agreed to a renewal.

*See* Exhibit 2.

19.     The ARL seeks to ensure that, before there can be a legally-binding automatic renewal or continuous service arrangement, there must first be adequate disclosure of certain terms and conditions and affirmative consent by the consumer. To that end, Bus. & Prof. Code § 17602(a) makes it unlawful for any business making an automatic renewal offer or a continuous service offer to a consumer in California to do any of the following:

(1) Fail to present the automatic renewal offer terms or continuous service offer terms in a clear and conspicuous manner before the subscription or purchasing agreement is fulfilled and in visual proximity, or in the case of an offer

5

conveyed by voice, in temporal proximity, to the request for consent to the offer.  If the offer also includes a free gift or trial, the offer must include a clear and conspicuous explanation of the price that will be charged after the trial ends or the manner in which the subscription or purchasing agreement pricing will change upon conclusion of the trial.  (Bus. & Prof. Code § 17602(a)(1).)  For these purposes, "clear and conspicuous" means "in larger type than the surrounding text, or in contrasting type, font, or color to the surrounding text of the same size, or set off from the surrounding text of the same size by symbols or other marks, in a manner that clearly calls attention to the language."  (Bus. & Prof. Code § 17601(c).)  In the case of an audio disclosure, "clear and conspicuous" means in a volume and cadence sufficient to be readily audible and understandable.  (*Id*.)  The statute defines "automatic renewal offer terms" to mean the "clear and conspicuous" disclosure of the following: (a) that the subscription or purchasing agreement will continue until the consumer cancels; (b) the description of the cancellation policy that applies to the offer; (c) the recurring charges that will be charged to the consumer's credit or debit card or payment account with a third party as part of the automatic renewal plan or arrangement, and that the amount of the charge may change, if that is the case, and the amount to which the charge will change, if known; (d) the length of the automatic renewal term or that the service is continuous, unless the length of the term is chosen by the consumer; and (e) the minimum purchase obligation, if any.  (Bus. & Prof. Code § 17601(b).)

(2) Charge the consumer's credit or debit card, or the consumer's account with a third party, for an automatic renewal or continuous service without first obtaining the consumer's affirmative consent to the agreement containing the automatic renewal offer terms or continuous service offer terms, including the terms of an automatic renewal offer or continuous service offer that is made at a promotional or discounted price for a limited period of time.  (Bus. & Prof. Code § 17602(a)(2).)

6

(3) Fail to provide an acknowledgment that includes the automatic renewal or continuous service offer terms, cancellation policy, and information regarding how to cancel in a manner that is capable of being retained by the consumer. If the offer includes a free trial, the business must also disclose in the acknowledgment how to cancel and allow the consumer to cancel before the consumer pays for the goods or services.  (Bus. & Prof. Code § 17602(a)(3).)

20.   Bus. & Prof. Code § 17602(b) requires that the acknowledgment specified in § 17602(a)(3) include "a toll-free telephone number, electronic mail address, a postal address if the seller directly bills the consumer, or it shall provide another cost-effective, timely, and easy-to-use mechanism for cancellation that shall be described in the acknowledgment."

21.   If a business sends any goods to a consumer under a purported automatic renewal or continuous service arrangement without first obtaining the consumer's affirmative consent to an agreement containing the "clear and conspicuous" disclosures as specified in the ARL, the goods are deemed to be an unconditional gift to the consumer, who may use or dispose of them without any obligation whatsoever. (Bus. & Prof. Code § 17603.)  Violation of the ARL gives rise to restitution and injunctive relief under the general remedies provision of the False Advertising Law, Bus. & Prof. Code § 17535.  (Bus. & Prof. Code § 17604(a).)  As well, violation of the ARL gives rise to restitution and injunctive relief under the UCL.

**Civil Code § 1716**

22.   Civil Code § 1716 sets forth California's statutory prohibition of false invoices.  Section 1716 prohibits the practice of soliciting payment of money by means of a written statement or invoice for goods that were not ordered or services that were not performed.  Specifically, § 1716(a) makes it unlawful to "solicit payment of money by another by means of a written statement or invoice, or any writing that reasonably could be considered a bill, invoice, or statement of account

due, but is in fact a solicitation for an order, unless the solicitation conforms to subdivisions (b) to (f), inclusive."

23.   Civil Code § 1716(b) requires that any written statement that is in fact a solicitation for an order must bear a conspicuous notice or disclaimer, one permissible version of which is: "THIS IS NOT A BILL.  THIS IS A SOLICITATION.  YOU ARE UNDER NO OBLIGATION TO PAY THE AMOUNT STATED ABOVE UNLESS YOU ACCEPT THIS OFFER."

24.   Any person damaged by noncompliance with § 1716 is entitled to damages in an amount equal to three times the sum solicited.  (Civ. Code § 1716(g).)

## FACTS GIVING RISE TO THIS ACTION

### Fenella Arnold's Transactions

#### *HGTV Magazine*

25.   In or about June 2017, in response to one of Defendants' paper advertisements that included an order form to be filled out by the consumer, Arnold completed the form for a two-year subscription to *HGTV Magazine* and returned it to Defendants.  Arnold did not make a copy of the order form before it was returned to Defendants, and therefore Arnold does not have a copy of it.  Because the order form was returned to Defendants, Arnold is informed and believes and thereon alleges that Defendants have the advertisement/order form in their possession, custody, or control.  Therefore, Arnold will seek production of that advertisement/order form from Defendants through discovery.

26.   On June 30, 2017, Arnold received via email an invoice for the two-year subscription to *HGTV Magazine* in the amount of $22.00.  A true and correct copy of that invoice is attached hereto as Exhibit 3.  Arnold believes she paid the invoice by entering her credit card information through Defendants' website.  Arnold did not make a screenshot or print the webpage through which the credit card information was submitted to Defendants, and therefore Arnold does not have a copy of that webpage.  Arnold is informed and believes and thereon alleges that the webpage

through which the credit card payment was submitted is in Defendants' possession, custody, or control. Therefore, Arnold will seek production of that webpage from Defendants through discovery.

27. On July 3, 2017, Defendants charged $22.00 to Arnold's credit card for that two-year subscription to *HGTV Magazine*.

28. When Arnold submitted the order form and when she made the $22.00 credit card payment for the two-year subscription to *HGTV Magazine*, she was not aware that Defendants were going to enroll her in a program under which the subscription would automatically renew for subsequent periods, and she did not consent to be enrolled in such program. On that basis, Arnold is informed and believes and thereon alleges that the advertisement/order form to which she responded and the webpage through which the credit card payment was submitted for *HGTV Magazine* did not contain clear and conspicuous disclosure of automatic renewal offer terms as required by Bus. & Prof. Code § 17601(b) and (c) and § 17602(a)(1) and (a)(2). Arnold believes this allegation will likely have documentary support after a reasonable opportunity for discovery.

29. If Arnold had known that Defendants were going to enroll her in an automatically renewing magazine subscription program, Arnold would not have submitted the order for *HGTV Magazine* and would not have paid any money to Defendants for that magazine.

30. On June 28, 2019, without Arnold's authorization or consent, Defendants posted a charge of $34.97 to Arnold's credit card, purportedly for renewal of *HGTV Magazine*.

### *Good Housekeeping* and *Woman's Day*

31. In or about November 2018, in response to one of Defendants' paper advertisements that included an order form to be filled out by the consumer, Arnold completed the form and submitted an order for a one-year subscription to both *Good Housekeeping* and *Woman's Day*. This was a gift subscription for Arnold's mother,

Dorothy.  Arnold did not make a copy of the order form before it was returned to Defendants, and therefore Arnold does not have a copy of it.  Because the order form was returned to Defendants, Arnold is informed and believes and thereon alleges that Defendants have the advertisement/order form in their possession, custody, or control.  Therefore, Arnold will seek production of that advertisement/order form from Defendants through discovery.

32.    Although Arnold did not retain a copy of the specific advertisement/order form that she returned to Defendants with respect to *Good Housekeeping* and *Woman's Day*, Arnold believes the form was similar to the advertisement/order form depicted in Exhibit 4, which offers a double subscription to *Good Housekeeping* and *Woman's Day* for one year for a total of $10.

33.    When Arnold submitted the order for the one-year subscriptions to *Good Housekeeping* and *Woman's Day*, she was not aware that Defendants were going to enroll her in a program under which the subscriptions would automatically renew for subsequent periods, and she did not consent to be enrolled in such program.  On that basis, Arnold is informed and believes and thereon alleges that the advertisement/order form to which she responded for *Good Housekeeping* and *Woman's Day* did not contain clear and conspicuous disclosure of automatic renewal offer terms as required by Bus. & Prof. Code § 17601(b) and (c) and § 17602(a)(1).  Arnold believes this allegation will likely have documentary support after a reasonable opportunity for discovery.

34.    On November 11, 2018, Arnold received "Order Confirmation" emails from Defendants for the one-year subscriptions to *Good Housekeeping* and *Woman's Day*.  True and correct copies of those emails are attached hereto as Exhibits 5 and 6.  Those emails do not contain clear and conspicuous disclosure of automatic renewal offer terms as required by Bus. & Prof. Code § 17601(b) and (c) and § 17602(a)(3).

FIRST AMENDED COMPLAINT                                        Case No. 3:19-cv-01969-WQH-MDD

35.     On November 12, 2018, Defendants posted two separate charges of $5.00 each to Arnold's credit card for the one-year subscriptions to *Good Housekeeping* and *Woman's Day*.

36.     If Arnold had known that Defendants were going to enroll her in an automatically renewing magazine subscription program, Arnold would not have submitted the orders for *Good Housekeeping* and/or *Woman's Day,* and would not have paid any money to Defendants for those magazines.  On that basis, Arnold is informed and believes and thereon alleges that the advertisement/order form to which she responded did not contain clear and conspicuous disclosure of automatic renewal offer terms as required by Bus. & Prof. Code § 17601(b) and (c) and § 17602(a)(1), and that Defendants charged her credit card without first obtaining her affirmative consent to an agreement containing clear and conspicuous disclosure of automatic renewal offer terms as required by Bus. & Prof. Code § 17602(a)(2).  Arnold believes this allegation will likely have documentary support after a reasonable opportunity for discovery.

37.     On September 20, 2019, without Arnold's authorization or consent, Defendants posted charges of $19.97 and $14.97 to Arnold's credit card, purportedly for renewal of *Good Housekeeping* and *Woman's Day*, respectively.

### *Oprah Magazine*

38.     In or about November 2018, in response to one of Defendants' advertisements, Arnold completed an order form and submitted an order for a one-year subscription to *Oprah Magazine*.  Arnold did not retain a copy of the order form before it was submitted to Defendants, and therefore Arnold does not have a copy of it.  Because the order form was submitted to Defendants, Arnold is informed and believes and thereon alleges that Defendants have a copy of the advertisement/order form in their possession, custody, or control.  Therefore, Arnold will seek production of that advertisement/order form from Defendants through discovery.

39.     When Arnold submitted the order for that one-year subscription to *Oprah Magazine*, she was not aware that Defendants were going to enroll her in a program under which the subscription would automatically renew for subsequent periods, and she did not consent to be enrolled in such program.  On that basis, Arnold is informed and believes and thereon alleges that the advertisement/order form to which she responded did not contain clear and conspicuous disclosure of automatic renewal offer terms as required by Bus. & Prof. Code § 17601(b) and (c) and § 17602(a)(1).  Arnold believes this allegation will likely have documentary support after a reasonable opportunity for discovery.

40.     On November 11, 2018, Arnold received an "Order Confirmation" email from Defendants for the one-year, $5.00 subscription to *Oprah Magazine*.  A true and correct copy of that email is attached hereto as Exhibit 7.  That email does not contain clear and conspicuous disclosure of automatic renewal offer terms as required by Bus. & Prof. Code § 17601(b) and (c) and § 17602(a)(3).

41.     On November 12, 2018, Defendants charged $5.00 to Arnold's credit card for the one-year subscription to *Oprah Magazine*.

42.     If Arnold had known that Defendants were going to enroll her in an automatically renewing magazine subscription program, Arnold would not have submitted the order for *Oprah Magazine* and would not have paid any money to Defendants for that magazine.  On that basis, Arnold is informed and believes and thereon alleges that the advertisement/order form to which she responded did not contain clear and conspicuous disclosure of automatic renewal offer terms as required by Bus. & Prof. Code § 17601(b) and (c) and § 17602(a)(1), and that Defendants charged her credit card without first obtaining her affirmative consent to an agreement containing clear and conspicuous disclosure of automatic renewal offer terms as required by Bus. & Prof. Code § 17602(a)(2).  Arnold believes this allegation will likely have documentary support after a reasonable opportunity for discovery.

43.     On October 11, 2019, without Arnold's authorization or consent, Defendants posted a charge of $34.97 to Arnold's credit card, purportedly for renewal of *Oprah Magazine*.

**Kelly Nakai's Transaction**

44.     On September 5, 2018, Nakai received an email from Defendants with a subject line of "Last Chance—You could win a trip to a Wine and Food Festival in NYC."  The email contains promotional material relating to a sweepstakes sponsored by Defendants, for which the prize winner will receive tickets for the New York City Wine & Food Festival, round-trip airfare, and lodging.  A true and correct copy of that email is attached hereto as Exhibit 8.  Recipients of the email can initiate entry into the sweepstakes by clicking the "ENTER NOW" button.

45.     Upon clicking the "ENTER NOW" button, Nakai was presented with a webpage containing additional promotional material for the sweepstakes.  A true and correct copy of a printout of that webpage is attached hereto as Exhibit 9.  A portion of that webpage contains fields in which a consumer can enter his or her name, address, and email information to enter the sweepstakes.  Above those fields is a narrative statement, set forth in bold text, that the consumer can "**[f]ill in the fields below to get 1 FREE issue of Food Network Magazine and be automatically entered for your chance to win**."  Farther down the page is a large "SUBMIT" button by which the consumer can submit the sweepstakes entry and the request for the "FREE" issue.  Nakai submitted a sweepstakes entry, which included a request for the "FREE" issue.

46.     Thereafter, Nakai did receive an issue of *Food Network Magazine*.  However, on September 8, 2018, Nakai also received an email from Defendants purporting to be an "INVOICE" for an 11-issue term subscription to *Food Network Magazine*, stating that there is now a "Payment Due" of $12.00, which invoice is depicted below:

Payment Due                                                                View Web

# food network magazine

# INVOICE
PAY NOW

## Summary of Account:

FOOD NETWORK MAGAZINE

| Term: | 11 Issues |
|---|---|
| **Total Amount Due:** | **$12.00** |

**Thank you for subscribing to *Food Network Magazine* and entering the sweepstakes. You will be notified if you are selected as the winner. Please pay for your subscription now.**

PAY YOUR INVOICE

47.     The "invoice" does not contain the notice or disclaimer required by Civil Code § 1716(b).  Nakai assumed she owed Defendants the money that was stated as the "Amount Due," and Nakai paid the "invoice" with her credit card, in the amount of $12.00.  In fact, Nakai had not ordered a subscription to *Food Network Magazine*, and no money was actually due.  If Nakai had known that Defendants had no basis to assert that she owed money, and that in fact she did not owe any money to Defendants, she would not have paid the purported invoice.

48.     If Nakai had known that, upon receipt of her sweepstakes entry, Defendants were going to enroll her in, and charge her for, a subscription for *Food Network Magazine*, she would not have submitted the sweepstakes entry.

49.     Nakai is informed and believes and thereon alleges that the *Food Network Magazine* subscription into which Defendants enrolled her is an automatic renewal subscription.  If Nakai had known that Defendants were going to treat her

14

submission of a sweepstakes entry as enrollment into an automatic renewal subscription, she would not have entered the sweepstakes, would not have requested the magazine issue from Defendants, and would not have paid any money to Defendants for that magazine.  Neither the initial promotional email (Exhibit 8) nor the sweepstakes entry form (Exhibit 9) contains clear and conspicuous disclosure of automatic renewal offer terms as required by Bus. & Prof. Code § 17601(b) and (c) and § 17602(a)(1).

50.     Nakai believes she paid the invoiced amount by entering her credit card information through Defendants' website.  Nakai did not make a screenshot or print the webpage through which the credit card information was submitted to Defendants, and therefore Nakai does not have a copy of that webpage.  Nakai is informed and believes and thereon alleges that the webpage through which the credit card payment was submitted is in Defendants' possession, custody, or control.  Therefore, Nakai will seek production of that webpage from Defendants through discovery.  Nakai is informed and believes and thereon alleges that Defendants charged her credit card without first obtaining her affirmative consent to an agreement containing clear and conspicuous disclosure of automatic renewal offer terms as required by Bus. & Prof. Code § 17602(a)(2).  Nakai believes this allegation will likely have documentary support after a reasonable opportunity for discovery.

**Michele Ruppert's Transaction**

51.     In or about July 2018, Ruppert received in the mail a notice from Defendants that Ruppert was entitled to a "credit adjustment" in the amount of $39.91, which qualified her to receive a one-year subscription to *Food Network Magazine* for $9.99 as well as the opportunity to add a one-year subscription to *HGTV Magazine* for "just $2!"  The "credit adjustment" offer was provided to Ruppert as a single piece of paper, double-sided.  A true and correct copy of that offer is attached hereto as Exhibit 10 (the second page of which is the reverse side of the paper).  The offer does not contain clear and conspicuous disclosure of automatic renewal offer terms as

15

1   required by Bus. & Prof. Code § 17601(b) and (c) and § 17602(a)(1).

2      52.   Ruppert believes that, on July 25, 2018, she submitted an order for the

3   one-year subscriptions to *Food Network Magazine* and *HGTV Magazine* by entering

4   her order and credit card information through a website operated by Defendants.

5   Ruppert did not make a screenshot or print the webpage through which the order and

6   credit card information were submitted to Defendants, and therefore Ruppert does not

7   have a copy of that webpage.  Ruppert is informed and believes and thereon alleges

8   that the webpage through which the order and credit card payment was submitted is

9   in Defendants' possession, custody, or control.   Therefore, Ruppert will seek

10  production of that webpage from Defendants through discovery.

11     53.   When Ruppert submitted the order and made the payment for the one-

12  year subscriptions to *Food Network Magazine* and *HGTV Magazine*, she was not

13  aware that Defendants were going to enroll her in a program under which the

14  subscriptions would automatically renew for subsequent periods, and she did not

15  consent to be enrolled in such program.  On that basis, Ruppert is informed and

16  believes and thereon alleges that Defendants did not provide clear and conspicuous

17  disclosure of automatic renewal offer terms as required by Bus. & Prof. Code

18  § 17601(b) and (c) and § 17602(a)(1), and charged her credit card without first

19  obtaining her affirmative consent to an agreement containing clear and conspicuous

20  disclosure of automatic renewal offer terms as required by Bus. & Prof. Code

21  § 17602(a)(2).   Ruppert believes these allegations will likely have documentary

22  support after a reasonable opportunity for discovery.

23     54.   On July 25, 2018, Ruppert received "Order Confirmation" emails from

24  Defendants for the one-year, $9.99 subscription to *Food Network Magazine* and the

25  one-year, $2.00 subscription to *HGTV Magazine*.  True and correct copies of those

26  emails are attached hereto as Exhibits 11 and 12, respectively.  Those emails do not

27  contain clear and conspicuous disclosure of automatic renewal offer terms as required

28  by Bus. & Prof. Code § 17601(b) and (c) and § 17602(a)(3).

16

55.   If Ruppert had known that Defendants were going to enroll her in an automatically renewing magazine subscription program, Ruppert would not have submitted the orders for *Food Network Magazine* or *HGTV Magazine* and would not have paid any money to Defendants for either magazine.

56.   On April 5, 2019, without Ruppert's authorization or consent, Defendants posted a charge of $34.97 to Ruppert's credit card, purportedly for renewal of *HGTV Magazine*.

57.   On May 17, 2019, without Ruppert's authorization or consent, Defendants posted a charge of $29.97 to Ruppert's credit card, purportedly for renewal of *Food Network Magazine*.

## **DEFENDANTS' DECEPTION OF OTHER CONSUMERS**

58.   Plaintiffs are not the only consumers to be victimized by Defendants in connection with magazine subscriptions.  There are hundreds of consumer complaints about similar deceptive conduct posted on a variety of websites, including but not limited to the Better Business Bureau ("BBB"), Yelp, Complaints Board, and pissedconsumer.com.

59.   Customer reviews of Hearst posted on the BBB website and other consumer websites illustrate that Defendants' scheme is effective and has affected many consumers.  Many complaints involve consumers receiving invoices from Defendants when no payment is due, and/or being automatically renewed for magazines without consent.  Illustrative complaints are quoted below:

> **Brousca (March 30, 2019).**  Less than 1 star for service.  I have a paid subscription to **** ****** Yet I keep receiving threatening notices to pay an overdue account to renew my subscription.  When I login into my acct, it says paid through November 2019.  I have sent a paper letter, responded to email and sent a message through online customer service and still I receive these threatening email messages regularly.

A true and correct printout of that complaint is attached as Exhibit 13.

FIRST AMENDED COMPLAINT                                      Case No. 3:19-cv-01969-WQH-MDD

**Laura H (March 30, 2019).** I subscribed to 1 year of Town and Country magazine. I did NOT renew it and keep receiving "invoices" stating my "account" is overdue for another year subscription. They use bullying tactics to make people believe they owe this "manufactured" invoice. Warning to the elderly or uninformed.   DO NOT PAY THESE INVOICES OR BE INTIMIDATED BY THEIR QUESTIONABLE TACTICS!

A true and correct printout of that complaint is attached as Exhibit 14.

**Cathy H (January 18, 2019).** Scam!!!  Entered their sweepstakes and than [sic] received an E-mail with a subscription to *** Magazine and no way to unsubscribe.  Now they are sending a bill to me via mail!!! I never ordered there [sic] magazine!!! sweepstakes is just a scam to get subscriptions and money from innocent people!

A true and correct printout of that complaint is attached as Exhibit 15.

**Advertising/Sales Issues (August 20, 2018).**  Hearstmags and Good Housekeeping and Oprah or O magazine, are all connected to the Hearst Corporation.   Unsuspecting people (like myself), enter a cloaked sweepstakes and the next thing you know you start getting be e-mail and postage mail invoices saying you owe them money for agreeing to buy one of these magazine subscriptions to Good Housekeeping and the Oprah O magazines.  Fraudulent entrapment advertising and it may be their way for you to un-enter their sweepstakes also.  Clever but unethical and fraudulent.

A true and correct printout of that complaint is attached as Exhibit 16.

**Billing/Collection Issues (January 8, 2018).**  I hope Woman's Day is reading this because I got a subscription that I don't want; probably got because I entered a sweepstakes and inadvertently said "yes" somewhere in the process! (Very sneaky). They don't have a phone # on the invoice, can't find it online.  When you go to their customer service page they want all kinds of information from you; you have to log in, etc. etc.  This takes way too much time to have to "undo" something which I didn't want in the first place.  Since I can't get in touch with a "human", I'm putting this on Facebook, and complaining to BBB.  Address on invoice: ** *** ****** ***** ** **********.

A true and correct printout of that complaint is attached as Exhibit 17.

**Advertising/Sales Issues (July 17, 2017).**  I received an email from Veranda stating that I have a chance to win outdoor furniture.  I clicked on the link and it took me to this page: *******************************  After reading the terms and conditions, I entered my information.  I then received an email stating that I subscribed to House Beautiful for $10 per month.  I did not agree to a subscription.  No where in the terms or the above link mentioned a subscription.  I called the company and they noted my request to cancel but could not cancel it since the subscription had not come through yet.  This is a very unethical business practice.

A true and correct printout of that complaint is attached as Exhibit 18.

**Advertising/Sales Issues (May 8, 2017).** I filled out an online form for a "Garage Make-Over" sweepstakes type of advertisement on Facebook. The next day I received an email saying I owe Car & Driver $10! First I tried finding a contact avenue for Car and Driver...there is none unless you are a subscriber. I found a way to contact the editor online for Car and Driver I told them in so uncertain terms that I DO NOT want a subscription to Car and Driver I never wanted a subscription to Car and Driver and to stop contacting me about a subscription to Car and Driver. Now Car and driver is sending me mail demanding their $10 for a subscription that was gained by FALSE ADVERTISEMENT online. Please let Hearst Communications know that I've communicated I DO NOT WANT A SUBSCRIPTION TO CAR AND DRIVER!!

A true and correct printout of that complaint is attached as Exhibit 19.

## CLASS ACTION ALLEGATIONS

60.   Plaintiffs bring this lawsuit as a class action under Rule 23 of the Federal Rules of Civil Procedure on behalf of two classes: (1) the "ARL Class" and (2) the "False Invoice Class."

61.   Plaintiffs Arnold, Nakai, and Ruppert seek to represent the ARL Class, which is defined as follows: "All individuals in California who, within the applicable limitations period, were enrolled by Defendants in an automatic renewal program or a continuous service program and had a credit card, debit card, and/or a third-party payment account charged by Defendants as part of such program. Excluded from the ARL Class are all employees of Defendants, all employees of Plaintiffs' counsel, and the judicial officers to whom this case is assigned."

62.   Plaintiff Nakai seeks to represent the False Invoice Class, which is defined as follows: "All individuals in California who, within the applicable limitations period, received an invoice, bill, or account statement from Defendants for a magazine subscription that had not been ordered. Excluded from the False Invoice Class are all employees of Defendants, all employees of Plaintiffs' counsel, and the judicial officers to whom this case is assigned."

63.   <u>Ascertainability</u>. The members of each class may be ascertained by reviewing records in the possession of Defendants and/or third parties, including without limitation Defendants' marketing and promotion records, customer records,

and billing records.

64. <u>Common Questions of Fact or Law</u>.  There are questions of fact or law that are common to the members of each class, which predominate over individual issues.  Common questions regarding the ARL Class include, without limitation: (1) whether Defendants present all automatic renewal offer terms, within the meaning of Bus. & Prof. Code § 17601(b); (2) whether Defendants present automatic renewal offer terms in a manner that is "clear and conspicuous," within the meaning of § 17601(c), and in visual proximity to a request for consent to the offer (or in the case of an offer conveyed by voice, in temporal proximity to a request for consent to the offer), as required by § 17602(a)(1); (3) whether, before charging a credit card, debit card, or third-party payment account, Defendants obtain consumers' affirmative consent to an agreement containing clear and conspicuous disclosure of all automatic renewal offer terms, as required by § 17602(a)(2); (4) whether Defendants provide consumers with an acknowledgment that includes clear and conspicuous disclosure of all statutorily-mandated automatic renewal or continuous service offer terms, the cancellation policy, and information regarding how to cancel, as required by § 17602(a)(3); (5) Defendants' record-keeping practices; (6) the appropriate remedies for Defendants' conduct; and (7) the appropriate terms of an injunction.  Common questions regarding the False Invoice Class include, without limitation: (1) whether Defendants provide the required statutory disclaimer or alternative notice on any solicitation, disclosing to the consumer that the document is a solicitation for an order of goods or services, or both, and not a bill, invoice, or statement of account due, and that the consumer is under no obligation to make any payment unless the consumer accepts the offer; (2) Defendants' record-keeping practices; and (3) the appropriate remedies for Defendants' conduct.

65. <u>Numerosity</u>.  Each class is so numerous that joinder of all class members would be impracticable.  Plaintiffs are informed and believe and thereon allege that each class consists of at least 100 members.

66.   <u>Typicality and Adequacy</u>.  Plaintiffs' claims are typical of the claims of the members of the class that each Plaintiff seeks to represent.  Plaintiffs allege on information and belief that Defendants enrolled ARL Class members in automatic renewal or continuous service offer programs without presenting the applicable terms in the manner required by law, charged ARL Class members' credit cards, debit cards, or third-party accounts without first obtaining the ARL Class members' affirmative consent to an agreement containing clear and conspicuous disclosure of all automatic renewal offer terms, and failed to provide the requisite acknowledgment to ARL Class members.  Plaintiffs have no interests that are adverse to those of the other ARL Class members.  Plaintiffs will fairly and adequately protect the interests of the ARL Class members.  Plaintiff Nakai alleges on information and belief that Defendants sent the False Invoice Class members invoices or other written statements for goods not ordered.  Plaintiff Nakai has no interests that are adverse to those of the other False Invoice Class members.  Plaintiff Nakai will fairly and adequately protect the interests of the False Invoice Class members.

67.   <u>Superiority</u>.  A class action is superior to other methods for resolving this controversy.   Because the amount of restitution or damages to which each class member may be entitled is low in comparison to the expense and burden of individual litigation, it would be impracticable for class members to redress the wrongs done to them without a class action forum.   Furthermore, on information and belief, class members do not know that their legal rights have been violated.  Class certification would also conserve judicial resources and avoid the possibility of inconsistent judgments.

68.   <u>Defendants Have Acted on Grounds Generally Applicable to the Class</u>. Defendants have acted on grounds that are generally applicable to the members of each class, thereby making appropriate final injunctive relief and/or declaratory relief with respect to each class as a whole.

# FIRST CLAIM FOR RELIEF

## False Advertising

### (By All Plaintiffs and the ARL Class Against All Defendants)

69.    Plaintiffs incorporate the previous allegations as though set forth herein.

70.    Plaintiffs are informed and believe and thereon allege that, during the applicable statute of limitations period, Defendants have enrolled consumers, including Plaintiffs and ARL Class members, in automatic renewal programs and/or continuous service programs and have (a) failed to present the automatic renewal or continuous service offer in a clear and conspicuous manner before the subscription or purchasing agreement is fulfilled and in visual proximity, or in the case of an offer conveyed by voice, in temporal proximity, to the request for consent to the offer; (b) charged the consumer's credit or debit card or the consumer's third-party payment account for an automatic renewal or continuous service without first obtaining the consumer's affirmative consent to an agreement containing clear and conspicuous disclosure of the automatic renewal offer terms or continuous service offer terms; and (c) failed to provide an acknowledgment that includes the required clear and conspicuous disclosure of automatic renewal or continuous service offer terms, cancellation policy, and information regarding how to cancel.

71.    Pursuant to Bus. & Prof. Code § 17603, all goods received by Plaintiffs and ARL Class members are deemed to be an unconditional gift.

72.    Pursuant to Bus. & Prof. Code § 17535, Plaintiffs and ARL Class members are entitled to restitution of all amounts that Defendants charged to Plaintiffs' and ARL Class members' credit cards, debit cards, or third-party payment accounts during the four years preceding the filing of the initial Complaint in this action and continuing until Defendants' statutory violations cease.

**SECOND CLAIM FOR RELIEF**

Violation of Civ. Code § 1716

(By Nakai and the False Invoice Class Against All Defendants)

73.     Plaintiff Nakai incorporates the allegations of paragraphs 1-24, 44-50. and 58-68 as though set forth herein.

74.     Defendants sent to Nakai and members of the False Invoice Class documents purporting to be an invoice for a magazine subscription when, in fact, no subscription had been requested and no money was due.

75.     The "invoices" that Defendants sent to Nakai and members of the False Invoice Class did not bear a disclaimer or notice prescribed by Civil Code § 1716(b).

76.     Nakai and members of the False Invoice Class have been damaged as a result of Defendants' violation of Civil Code § 1716.

77.     Pursuant to Civil Code § 1716(g), Nakai and members of the False Invoice Class are entitled to damages in an amount equal to three times the sum solicited by Defendants.

**THIRD CLAIM FOR RELIEF**

Violation of the Consumers Legal Remedies Act

(By All Plaintiffs and the ARL Class Against All Defendants)

78.     Plaintiffs incorporate the previous allegations as though fully set forth herein.

79.     Plaintiffs and the members of the ARL Class are "consumers" within the meaning of Civil Code § 1761(d) in that the goods and/or services sought or acquired were for personal, family, or household purposes.

80.     Defendants' magazine and/or subscription offers pertain to "goods" and/or "services" within the meaning of Civil Code § 1761(a) and (b).

81.     The requests, orders, and/or payments by Plaintiffs and the ARL Class members are "transactions" within the meaning of Civil Code § 1761(e).

FIRST AMENDED COMPLAINT                                    Case No. 3:19-cv-01969-WQH-MDD

82.     Defendants have violated Civil Code § 1770, subdivisions (a)(5), (a)(9), (a)(13), (a)(14), and (a)(17), by representing that Defendants' goods and services have certain characteristics that they do not have; advertising goods and services with the intent not to sell them as advertised; making false and misleading statements of fact concerning the reasons for, existence of and amounts of price reductions; representing that a transaction confers or involves rights, remedies, or obligations that it does not have or involve, or that are prohibited by law; and by representing that the consumer will receive a rebate, discount, or other economic benefit, if the earning of the benefit is contingent on an event to occur subsequent to the consummation of the transaction.

83.     Defendants' conduct alleged herein was undertaken knowingly, willfully, and with oppression, fraud, and/or malice, within the meaning of Civil Code § 3294(c).

84.     On September 12, 2019, Plaintiffs' counsel sent to Hearst and to CDS written notice of the alleged violations of Civil Code § 1770 and requested that Hearst and CDS rectify the violations.  The written notices were sent by certified mail, return receipt requested, and were delivered to Hearst's agent for service of process (The Corporation Trust Company) on September 17, 2019, and to CDS's agent for service of process (CT Corporation) on September 16, 2019.   Neither Hearst nor CDS responded to the written notice.   Accordingly, pursuant to Civil Code § 1782, Plaintiffs have fulfilled the statutory prerequisite to seek monetary damages for violations of the CLRA.

85.     Plaintiffs, on behalf of themselves and the ARL Class members, seek an injunction prohibiting Defendants from continuing their unlawful practices in violation of the Consumers Legal Remedies Act, as described above.

/ / /

/ / /

/ / /

/ / /

## **FOURTH CLAIM FOR RELIEF**

Unfair Competition

(By All Plaintiffs Against All Defendants)

86. Plaintiffs incorporate the previous allegations as though fully set forth herein.

87. The California Unfair Competition Law ("UCL"), Bus. & Prof. Code § 17200 *et seq.*, defines unfair competition as including "any unlawful, unfair or fraudulent business act or practice."

88. In the course of conducting business within the applicable limitations period, Defendants committed "unlawful," "unfair," and/or "fraudulent" business practices by, *inter alia* and without limitation: (a) failing to present the terms of automatic renewal or continuous service offers in a clear and conspicuous manner before a subscription or purchasing agreement is fulfilled and in visual proximity (or in the case of an offer conveyed by voice, in temporal proximity), to a request for consent to the offer, in violation of Bus. & Prof. Code § 17602(a)(l); (b) charging the consumer's credit or debit card or the consumer's third-party payment account for an automatic renewal or continuous service without first obtaining the consumer's affirmative consent to the agreement containing the automatic renewal offer terms or continuous service offer terms, in violation of Bus. & Prof. Code § 17602(a)(2); (c) failing to provide an acknowledgment that includes the required clear and conspicuous disclosure of automatic renewal or continuous service offer terms, cancellation policy, and information regarding how to cancel, in violation of Bus. & Prof. Code § 17602(a)(3); (d) sending consumers invoices for goods not ordered, in violation of Civil Code § 1716; (e) representing that Defendants' goods and services have certain characteristics that they do not have, in violation of Civil Code § 1770(a)(5); (f) advertising goods and services with the intent not to sell them as advertised, in violation of Civil Code § 1770(a)(9); (g) making false and misleading statements of fact concerning the reasons for, existence of and amounts of price

reductions, in violation of Civil Code § 1770(a)(13); (h) representing that a transaction confers or involves rights, remedies, or obligations that it does not have or involve, or that are prohibited by law, in violation of Civil Code § 1770(a)(14); and (i) representing that the consumer will receive a discount or other economic benefit, if the earning of the benefit is contingent on an event to occur subsequent to the consummation of the transaction, in violation of Civil Code § 1770(a)(17).  Plaintiffs reserve the right to allege other violations of law that constitute unlawful or unfair business acts or practices.

89.    Defendants' acts and omissions as alleged herein violate obligations imposed by statute, are substantially injurious to consumers, offend public policy, and are immoral, unethical, oppressive, and unscrupulous as the gravity of the conduct outweighs any alleged benefits attributable to such conduct.

90.    There were reasonably available alternatives to further Defendants' legitimate business interests, other than the conduct described herein.

91.    Defendants' acts, omissions, nondisclosures, and misleading statements as alleged herein were and are false, misleading, and/or likely to deceive the consuming public.

92.    Plaintiffs have suffered injury in fact and lost money as a result of Defendants' acts of unfair competition.

93.    Pursuant to Bus. & Prof. Code § 17203, Plaintiffs and the class members are entitled to an order: (1) requiring Defendants to make restitution of all amounts received in connection with the unlawful, unfair, and/or fraudulent business practices alleged above; (2) enjoining Defendants from making offers in the State of California that do not comply with California law; and (3) enjoining Defendants from sending invoices or other written statements for products not ordered, without the disclaimer required by Civil Code § 1716.

## **FIFTH CLAIM FOR RELIEF**

Unjust Enrichment

94.     Plaintiffs incorporate the previous allegations as though fully set forth herein.

95.     Defendants have received money from Plaintiffs and class members in connection with Defendants' conduct in violation of California law.   Defendants would be unjustly enriched if they were permitted to retain those funds, and Defendants should be ordered to restore said funds to Plaintiffs and the class members.

96.     Plaintiffs allege this unjust enrichment claim in the alternative to relief provided under any legal claim alleged herein.

## **PRAYER**

WHEREFORE, Plaintiffs pray for judgment against Defendants as follows:

On the First Claim for Relief:

1.     For restitution;

2.     For an order that all goods sent to ARL Class members are unconditional gifts;

3.     For injunctive relief, including a public injunction for the benefit of the People of the State of California;

On the Second Claim for Relief:

4.     For three times the sum solicited, pursuant to Civil Code § 1716(g);

5.     For injunctive relief, including a public injunction for the benefit of the People of the State of California.

On the Third Claim for Relief:

6.     For an award of actual damages, pursuant to Civil Code § 1780(a)(1);

7.     For injunctive relief, including a public injunction for the benefit of the People of the State of California;

8.     For restitution, pursuant to Civil Code § 1780(a)(3);

27

9.      For punitive damages, pursuant to Civil Code § 1780(a)(4);

10.     For an award of attorneys' fees and costs pursuant to Civil Code § 1780(e);

On the Fourth Claim for Relief:

11.     For restitution;

12.     For injunctive relief, including a public injunction for the benefit of the People of the State of California;

On the Fifth Claim for Relief:

13.     For restitution;

On All Claims for Relief:

14.     For an award of attorneys' fees pursuant to Code Civ. Proc. § 1021.5;

15.     For costs of suit;

16.     For pre-judgment interest; and

17.     For such other relief that the Court deems just and proper.

DATED:  December 9, 2019          DOSTART HANNINK& COVENEY LLP



s/Zach P. Dostart
ZACH P. DOSTART
Attorneys for Plaintiffs
Email: zdostart@sdlaw.com

FIRST AMENDED COMPLAINT                          Case No. 3:19-cv-01969-WQH-MDD

## **<u>DEMAND FOR JURY TRIAL</u>**

Plaintiffs hereby demand a trial by jury of all claims and causes of action so triable.

Dated: December 9, 2019          DOSTART HANNINK & COVENEY LLP


                                 s/Zach P. Dostart
                                 _____
                                 ZACH P. DOSTART
                                 Attorneys for Plaintiffs
                                 Email: zdostart@sdlaw.com

903126.1

FIRST AMENDED COMPLAINT                          Case No. 3:19-cv-01969-WQH-MDD