Exhibit 2

Date of Hearing:  June 30, 2009

ASSEMBLY COMMITTEE ON JUDICIARY
Mike Feuer, Chair
SB 340 (Yee) – As Amended: June 24, 2009

PROPOSED CONSENT (As Proposed to be Amended)

<u>SENATE VOTE</u>:  37-0

<u>SUBJECT</u>:  AUTOMATIC RENEWAL AND CONTINUOUS SERVICE OFFERS

<u>KEY ISSUE</u>:  SHOULD A BUSINESS THAT MARKETS A PRODUCT WITH AN
"AUTOMATIC RENEWAL OFFER" BE REQUIRED TO CLEARLY AND
CONSPICUOUSLY DISCLOSE RENEWAL TERMS AND CANCELLATION POLICIES,
AND TO OBTAIN THE CUSTOMER'S AFFIRMATIVE CONSENT TO AN AUTOMATIC
RENEWAL?

<u>FISCAL EFFECT</u>:  As currently in print this bill is keyed non-fiscal.

### SYNOPSIS

*This non-controversial bill, which received a unanimous vote on the Senate floor, seeks to
protect consumers from unwittingly consenting to "automatic renewals" of subscription orders
or other "continuous service" offers.  According to the author and supporters, consumers are
often charged for renewal purchases without their consent or knowledge.  For example,
consumers sometimes find that a magazine subscription renewal appears on a credit card
statement even though they never agreed to a renewal.  Indeed, this problem led 23 state
attorneys general to launch an investigation of Time, Inc., in response to claims that the
company used deceptive practices in signing up customers for automatic subscription renewals.
As part of a settlement of this dispute, Time agreed to institute new practices so that customers
are fully aware of and affirmatively consent to automatic renewals.  This bill, following the lead
of the Times' settlement, would require that renewal terms and cancellation policies be clearly
and conspicuously presented to the consumer, whether the offer is made on printed material or
through a telephone solicitation.  In addition, the bill would require that the consumer make
some affirmative acknowledgement before an order with an automatic renewal can be
completed.  Finally, the bill specifies that violation of the bill's provisions do not constitute a
crime.  The author has worked closely with affected business interests and has made several
amendments that appear to address all stakeholders' concerns.  There is no registered
opposition to the bill.*

<u>SUMMARY</u>:  Requires any business making an "automatic renewal" or "continuous service"
offer to clearly and conspicuously, as defined, disclose terms of the offer and obtain the
consumer's affirmative consent to the offer.  Specifically, <u>this bill</u>:

1)  Makes it unlawful for any business making an automatic renewal offer or a continuous
     service offer to a consumer to do any of the following:



(800) 666-1917

LEGISLATIVE INTENT SERVICE

Exhibit 2
Page 8

a)  Fail to present the offer terms in a clear and conspicuous manner, as defined, before the subscription or purchasing agreement is fulfilled and in visual proximity, or in the case of an offer conveyed by voice, in temporal proximity, to the request for consent to the offer.

b)  Charge the consumer's credit or debit card or the consumer's account with a third party for an automatic renewal or continuous service offer without first obtaining the consumer's affirmative consent.

c)  Fail to provide automatic renewal or continuous service offer terms, cancellation policy, and information regarding how to cancel in a manner that is capable of being retained by the consumer.  If the offer includes a free trial, the business shall disclose how to cancel and allow the consumer to cancel before the consumer pays for the goods or services.

2)  Requires a business making automatic renewal or continuous service offers to provide a toll-free telephone number, electronic mail address, a postal address if the seller directly bills the customer, or another cost-effective, timely, and easy-to-use mechanism for cancellation that shall be described in the written acknowledgment.

3)  Specifies that in the case of a material change in the terms of an automatic renewal or continuous service offer that has been accepted by the consumer, the business shall provide the consumer with a clear and conspicuous notice of the material change and provide information regarding how to cancel in a manner that is capable of being retained by the consumer.

4)  Specifies that the requirements of this bill shall only apply to the completion of the initial order for the automatic renewal or continuous service, except as provided.

5)  Provides that in any case in which a business sends any goods, wares, merchandise, or products to a consumer, under a continuous service or automatic renewal, without first obtaining the consumer's affirmative consent, in the manner required by this bill, then the goods, wares, merchandise, or products shall be deemed an unconditional gift to the consumer, and the business shall bear any shipping or other related costs.

6)  Provides that violation of the provisions of this bill shall not be a crime, but that all civil remedies that apply to a violation may be employed.  Specifies, however, that if a business complies with the provisions of this bill in good faith, it shall not be subject to civil remedies.

7)  Exempts from the provisions of this bill any service provided by certain businesses or entities, including those regulated by the California Public Utilities Commission, the Federal Communication Commission, or the Federal Energy Regulatory Commission.

EXISTING LAW:

1)  Provides, under the Unfair Competition Law (UCL), that unfair competition includes any unlawful, unfair, or fraudulent business act or practice, including any unfair, deceptive, or untrue advertising, or any act prohibited by the False Advertising Act (FAA).  (Business & Professions Code Section 17200 *et seq*.)

2)  Prohibits any person with the intent, directly or indirectly, to sell any goods or services by making or disseminating statements that the person knows, or should know, to be untrue or misleading, and prohibits any person from making or disseminating any untrue or misleading

Exhibit 2
Page 9

statement as part of a plan or scheme to sell goods or services at other than the stated or advertised price.  (Business & Professions Code section 17500.)

3) Provides that any violation of the FAA is a misdemeanor.  (Business & Professions Code sections 17500, 17534.)

4) Provides that any person who violates any provision of the FAA is liable for a civil penalty not to exceed $2,500 for each violation that must be assessed and recovered in a civil action by the Attorney General or by any district attorney, county counsel, or city attorney. (Business & Professions Code section 17536.)

5) Provides that a person who has suffered injury in fact and has lost money or property as a result of unfair competition may bring a civil action for relief.  (Business & Professions Code section 17204.)

6) Provides for injunctive relief, restitution, disgorgement, and civil penalties for FAA violations.  (Business & Professions Code sections 17203, 17206.)

<u>COMMENTS</u>:  This non-controversial bill is a response to reported consumer complaints that certain businesses, especially those offering magazine subscriptions or other potentially continuous services, lure customers into signing up for "automatic renewals" without the consumer's full knowledge or consent.  This bill seeks to address this problem by requiring clear disclosures and affirmative acts of customer consent.  The author states:

> It has become increasingly common for consumers to complain about unwanted charges on their credit cards for products or services that the consumer did not explicitly request or know they were agreeing to.  Consumers report they believed they were making a one-time purchase of a product, only to receive continued shipments of the product and charges on their credit card.  These unforeseen charges are often the result of agreements enumerated in the 'fine print' on an order or advertisement that the consumer responded to.  The onus falls on the consumer to end these product shipments and stop the unwanted charges to their credit card.

As noted in the author's background material, this bill was prompted in part by an investigation brought by the attorneys general of 23 states, including California, against Time, Inc.  The investigations found that subscribers to several magazines published by Time, Inc. were discovering that their subscriptions were automatically renewed even though the customers claimed that they had never knowingly consented to the renewals.  In 2006, the investigation resulted in a settlement agreement between the Attorneys General and Time that requires Time to more clearly disclose renewal terms and ensure that the consumer take some affirmative step to acknowledge consent or rejection of the automatic renewal offer.  According to the author, the specific disclosure and consent requirements in this measure are modeled after, though not identical to, those set forth in the Time settlement.

<u>ARGUMENTS IN SUPPORT</u>:  According to the California Public Interest Research Group (CALPIRG), "this bill will help ensure that consumers only get into an ongoing subscription if they want to."  According to the Consumer Federation of California, this measure will curb deceptive marketing practices that are used to sell everything from magazine subscriptions to "free trial" offers that lock consumers into an ongoing purchase agreement.  Supporters generally

(800) 666-1917

LEGISLATIVE INTENT SERVICE

Exhibit 2
Page 10

contend that this is a straightforward measure reflecting the basic premise that consumers deserve to know the terms and conditions to which they are agreeing.

Author's Technical Amendments:  The author wishes to take the following technical and clarifying amendments:

- On page 4 after line 9 insert:

*(e) "Consumer" means any individual who seeks or acquires, by purchase or lease, any goods, services, money, or credit for personal, family, or household purposes.*

- On page 4 line 32 and on page line 16 change "customer" to "consumer"

PRIOR LEGISLATION:  AB 88 (Chapter 77, Stats. of 2003) provides that a contract for a good or service that is made in connection with a telephone solicitation is unlawful if the telemarketer is in violation of a recent Federal Trade Commission (FTC) rule requiring that the seller obtain specified information and express consent directly from the consumer and, under certain circumstances, maintain a recording of the call.  (This present bill would similarly require that automatic renewal offers made over the telephone comply with federal telephonic marketing regulations.)

REGISTERED SUPPORT/OPPOSITION:

Support:

California Alliance for Consumer Protection
California Public Interest Research Group (CALPIRG)
Consumer Federation of California

Opposition:

None on file

Analysis Prepared by:  Thomas Clark / JUD. / (916) 319-2334

LEGISLATIVE INTENT SERVICE          (800) 666-1917

Exhibit 2
Page 11