UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FENELLA ARNOLD, KELLY NAKAI, and MICHELE RUPPERT, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>HEARST MAGAZINE MEDIA, INC., a Delaware corporation; CDS GLOBAL, INC., an Iowa corporation; and DOES 1-50, inclusive,<br><br>Defendants. | Case No.: 19-cv-1969-WQH-MDD<br><br>**ORDER** |

HAYES, Judge:

The matter before the Court is the Motion to Dismiss Plaintiffs' First Amended Complaint filed by Defendants Hearst Magazine Media, Inc., and CDS Global, Inc. (ECF No. 17).

**I.   BACKGROUND**

On September 10, 2019, Plaintiffs Fenella Arnold and Kelly Nakai filed a Class Action Complaint in the Superior Court for the State of California, County of San Diego,

against Defendants Hearst Magazine Media, Inc. ("Hearst"), CDS Global, Inc. ("CDS"), and Does 1 through 50, inclusive. (ECF No. 1-2). On October 10, 2019, Defendants removed the action to this Court pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d), and 28 U.S.C. § 1441(a). (ECF No. 1). On December 9, 2019, Plaintiffs Fenella Arnold, Kelly Nakai, and Michele Ruppert filed the First Amended Complaint ("FAC"). (ECF No. 14).

In the FAC, Plaintiffs allege that Defendant Hearst is "one of the largest magazine publishers in the world." (*Id.* ¶ 11). Plaintiffs allege that Hearst publishes approximately two dozen magazines in the United States, including *Food Network Magazine*, *Cosmopolitan*, *Good Housekeeping*, *Woman's Day*, *Country Living*, *HGTV Magazine*, and *Car & Driver*. Plaintiffs allege that Defendant CDS is "the largest magazine fulfillment house in the United States." (*Id.* ¶ 12). Plaintiffs allege that CDS is a wholly-owned subsidiary of Hearst that provides services to Hearst, including "assisting with subscriptions, billing, collection, and/or other account services." (*Id.*).

Plaintiffs allege that Defendants have "implemented a negative option model" for renewal of Defendants' magazine subscriptions. (*Id.* ¶ 14). Plaintiffs allege that one aspect of the negative option model is that Defendants "solicit orders for magazine subscriptions that purport to be fixed for a period of time (e.g., one year, or two years)," and then "enroll the consumer in a program under which the magazine subscription will be 'automatically renewed' for subsequent periods, with corresponding charges posted to the consumer's credit card, debit card, or other payment account." (*Id.* ¶ 15). Plaintiffs allege that another aspect of the negative option model is that Defendants "send consumers an 'invoice' stating that payment is due for a subscription when, in fact, the recipient did not request a subscription and no money is actually due." (*Id.* ¶ 16).

Plaintiff Arnold alleges that in June 2017, she completed and returned a paper order form for a two-year subscription to *HGTV Magazine*. Arnold alleges that she received a $22.00 email invoice for the *HGTV Magazine* subscription and paid the invoice "by entering her credit card information through Defendants' website." (*Id.* ¶ 26). Arnold

alleges that she subsequently submitted order forms for one-year subscriptions to *Good Housekeeping*, *Woman's Day*, and *Oprah Magazine*. Arnold alleges that Defendants sent her "Order Confirmation" emails and charged her credit card $5.00 for each one-year subscription. (*Id.* ¶¶ 34, 40). Arnold alleges that on June 28, 2019, "Defendants posted a charge of $34.97 to Arnold's credit card, purportedly for renewal of *HGTV Magazine*." (*Id.* ¶ 30). Arnold alleges that on September 20, 2019, "Defendants posted charges of $19.97 and $14.97 to Arnold's credit card, purportedly for renewal of *Good Housekeeping* and *Woman's Day*, respectively." (*Id.* ¶ 37). Arnold alleges that on October 11, 2019, "Defendants posted a charge of $34.97 to Arnold's credit card, purportedly for renewal of *Oprah Magazine*." (*Id.* ¶ 43).

Arnold alleges that she did not authorize or consent to renewal of the magazine subscriptions. Arnold alleges that when she submitted the order forms and made credit card payments for the subscriptions to *HGTV Magazine*, *Good Housekeeping*, *Woman's Day*, and *Oprah Magazine*, Arnold "was not aware that Defendants were going to enroll her in a program under which the subscription[s] would automatically renew for subsequent periods . . . ." (*Id.* ¶¶ 28, 33, 39). Arnold alleges that Defendants' advertisements, order forms, email invoices, payment webpages, and order confirmation emails for *HGTV Magazine*, *Good Housekeeping*, *Woman's Day*, and *Oprah Magazine* "did not contain clear and conspicuous disclosure of automatic renewal offer terms . . . ." (*Id.*). Arnold alleges that if she knew that Defendants were going to enroll her in an automatic subscription program, she would not have submitted orders to Defendants or paid Defendants any money.

Plaintiff Ruppert alleges that in July 2018, she received a paper advertisement from Defendants for a one-year subscription to *Food Network Magazine* for $9.99 and a one-year subscription to *HGTV Magazine* for $2.00. Ruppert alleges that on July 25, 2018, she submitted an order for the one-year subscriptions to *Food Network Magazine* and *HGTV Magazine* "by entering her order and credit card information through a website operated by Defendants." (*Id.* ¶ 52). Ruppert alleges that she received "Order Confirmation" emails

for each one-year subscription. (*Id.* ¶ 54). Ruppert alleges that on April 5, 2019, "Defendants posted a charge of $34.97 to Ruppert's credit card, purportedly for renewal of *HGTV Magazine*." (*Id.* ¶ 57). Ruppert alleges that on May 17, 2019, "Defendants posted a charge of $29.97 to Ruppert's credit card, purportedly for renewal of *Food Network Magazine*." (*Id.*).

Ruppert alleges that she did not authorize or consent to renewal of the magazine subscriptions. Ruppert alleges that "[w]hen Ruppert submitted the order and made the payment for the one-year subscriptions to *Food Network Magazine* and *HGTV Magazine*, she was not aware that Defendants were going to enroll her in a program under which the subscriptions would automatically renew for subsequent periods . . . ." (*Id.* ¶ 53). Ruppert alleges that Defendants' advertisement, webpage, and order confirmation emails for *Food Network Magazine* and *HGTV Magazine* "did not provide clear and conspicuous disclosure of automatic renewal offer terms . . . ." (*Id.* ¶¶ 51, 53, 54). Ruppert alleges that if she knew that Defendants were going to enroll her in an automatic subscription program, she would not have submitted orders to Defendants or paid Defendants any money.

Plaintiff Nakai alleges that on September 5, 2018, she received an email from Defendants promoting a sweepstakes to win a trip to the New York City Wine and Food Festival. Nakai alleges that a link in the email took Nakai to Defendants' webpage, which directed Nakai to "[f]ill in the fields below to get 1 FREE issue of Food Network Magazine and be automatically entered for your chance to win." (*Id.* ¶ 45 (emphasis omitted)). Nakai alleges that she submitted the sweepstakes entry and received an issue of *Food Network Magazine*. Nakai alleges that on September 8, 2018, she "received an email from Defendants purporting to be an 'INVOICE' for an 11-issue term subscription to *Food Network Magazine*, stating that there is now a 'Payment Due' of $12.00." (*Id.* ¶ 46). Nakai alleges that the purported invoice did "not contain the notice or disclaimer required by Civil Code § 1716(b)" that no money was actually due. (*Id.* ¶ 47). Nakai alleges that she "assumed she owed Defendants the money . . . and [ ] paid the 'invoice' with her credit card," even though "Nakai had not ordered a subscription to *Food Network Magazine*, and

no money was actually due." (*Id.*). Nakai alleges that "[i]f [she] had known that, upon receipt of her sweepstakes entry, Defendants were going to enroll her in, and charge her for, a subscription for *Food Network Magazine*, she would not have submitted the sweepstakes entry." (*Id.* ¶ 48).

Nakai further alleges that the eleven-month subscription to *Food Network Magazine* that Nakai paid for is an automatic renewal subscription. Nakai alleges that Defendants' promotional email, sweepstakes entry form, and credit card authorization did not contain "clear and conspicuous disclosure of automatic renewal offer terms . . . ." (*Id.* ¶¶ 49-50). Nakai alleges that if she "had known that Defendants were going to treat her submission of a sweepstakes entry as enrollment into an automatic renewal subscription, she would not have entered the sweepstakes, would not have requested the magazine issue from Defendants, and would not have paid any money to Defendants for that magazine." (*Id.* ¶ 49).

Plaintiffs allege that other consumers have been victimized by Defendants' negative option model. Plaintiffs seek to represent a class of "[a]ll individuals in California who, within the applicable limitations period, were enrolled by Defendants in an automatic renewal program or a continuous service program and had a credit card, debit card, and/or a third-party payment account charged by Defendants as part of such program . . ." (the "ARL Class"). (*Id.* ¶ 61). Plaintiff Nakai further seeks to represent a class of "[a]ll individuals in California who, within the applicable limitations period, received an invoice, bill, or account statement from Defendants for a magazine subscription that had not been ordered . . ." (the "False Invoice Class"). (*Id.* ¶ 62).

Plaintiffs allege that Defendants' failure to present the automatic renewal offer terms in a clear and conspicuous manner violates California's Automatic Purchase Renewals Statute, Cal. Bus. & Prof. Code §§ 17600, *et seq.* ("Automatic Renewal Law" or "ARL"). Based on Defendants' alleged violation of the Automatic Renewal Law, Plaintiffs and the proposed ARL Class bring claims against Defendants under California's False Advertising Law, Cal. Bus. & Prof. Code § 17500, *et. seq.*; California's Unfair Competition Law, Cal.

Bus. & Prof. Code § 17200, *et seq.*; California's Consumer Legal Remedies Act, Cal. Civ. Code § 1770; and for unjust enrichment. Plaintiff Nakai and the proposed False Invoice Class further bring a claim against Defendants for violating section 1716 of the California Civil Code. Plaintiffs seek damages, restitution, injunctive relief, attorneys' fees, and costs.

On January 22, 2020, Defendants filed a Motion to Dismiss Plaintiffs' FAC. (ECF No. 17). Defendants move to dismiss the FAC pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure on the grounds that Plaintiffs fail to state a claim upon which relief can be granted. On February 12, 2020, Plaintiffs filed an Opposition to Defendants' Motion to Dismiss. (ECF No. 18). On February 6, 2020, Defendants filed a Reply. (ECF No. 19).

## II. LEGAL STANDARD

Rule 12(b)(6) of the Federal Rules of Civil Procedure permits dismissal for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In order to state a claim for relief, a pleading "must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Dismissal under Rule 12(b)(6) "is proper only where there is no cognizable legal theory or an absence of sufficient facts alleged to support a cognizable legal theory." *Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010) (quotation omitted).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citation omitted). However, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (alteration in original) (quoting Fed. R. Civ. P. 8(a)). A court is not "required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or

unreasonable inferences." *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001). "In sum, for a complaint to survive a motion to dismiss, the non-conclusory factual content, and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009) (quotation omitted).

## III.   JUDICIAL NOTICE AND INCORPORATION BY REFERENCE

Defendants request that the Court take judicial notice of 1) the webpage on which Plaintiff Nakai alleges that she submitted a sweepstakes entry; 2) the first amended complaint filed in *McKee v. Audible, Inc.*, No. CV 17-19741-GW(Ex) (ECF No. 40) (S.D. Cal. Aug. 11, 2017); 3) the unpublished minute order of the Superior Court for State of California, County of Sacramento, in *Cortez v. McClatchy*, No. 34-2014-00169700- CU-BT-GDS (ECF No. 241) (Cal. Super. Ct. Aug. 16, 2018); and 4) the unpublished order of the United States District Court for the Southern District of California in *Samsung Int'l, Inc. v. Allied Carriers Exch.*, No. 00-cv-01074-K-POR (ECF No. 83) (S.D. Cal. June 12, 2001). (ECF No. 17-3).

"[A] court may consider 'material which is properly submitted as part of the complaint' on a motion to dismiss without converting the motion to dismiss into a motion for summary judgment." *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001) (quoting *Branch v. Tunnell*, 14 F.3d 449, 453 (9th Cir. 1994), *overruled on other grounds by Galbraith v. Cty. of Santa Clara*, 307 F.3d 1119 (9th Cir. 2002)). Under this "incorporation by reference" doctrine, the court may consider "documents 'whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the [plaintiff's] pleading.'" *Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005) (alteration in original) (quoting *In re Silicon Graphic Inc. Sec. Litig.*, 183 F.3d 970, 986 (9th Cir 2002)). The court may also consider documents incorporated by reference where "the plaintiff's claim depends on the contents of a document, the defendant attaches the document to its motion to dismiss, and the parties do not dispute the authenticity of the document, even though the plaintiff does not explicitly allege the

contents of that document in the complaint." *Id.* (citing *Parrino v. FHP, Inc.*, 146 F.3d 699, 706 (9th Cir. 1998)).

In this case, Plaintiff Nakai alleges the contents of the sweepstakes entry webpage in the FAC. Nakai attaches an identical, but less legible, copy of the webpage to the FAC. (*See* Ex. 9, ECF No. 14-9 at 2). The Court finds that the webpage on which Plaintiff Nakai alleges that she submitted a sweepstakes entry, attached as "Exhibit A" to the Declaration of Robert J. Herrington, is incorporated by reference to the FAC. Judicial notice of the other requested documents is unnecessary for this Order. Defendants' request that the Court take judicial notice of the first amended complaint filed in *McKee*, the unpublished minute order in *Cortez*, and the unpublished order in *Samsung* is denied. *See Asvesta v. Petroutsas*, 580 F.3d 1000, 1010 n. 12 (9th Cir. 2009) (denying request for judicial notice where judicial notice would be "unnecessary").

## IV. SECTION 1716 OF THE CALIFORNIA CIVIL CODE

Plaintiff Nakai brings a claim against Defendants for violating section 1716 of the California Civil Code by sending Nakai a false invoice. Defendants contend that Nakai fails to state a claim under section 1716 because "the Complaint's own allegations make clear that the invoice at issue was a properly issued bill seeking payment for an order placed by Nakai, not 'in fact a solicitation for an order . . . .'" (ECF No. 17-1 at 26). Nakai contends that the invoice was a solicitation for an order because she ordered a single free issue of *Food Network Magazine*, not an eleven-month subscription.

Section 1716 of the California Civil Code provides that "it is unlawful for a person to solicit payment of money by another by means of a written statement or invoice, or any writing that reasonably could be considered a bill, invoice, or statement of account due, but is in fact a solicitation for an order," unless the solicitation contains a disclaimer that the recipient is under no obligation to make a payment. Cal. Civ. Code § 1716(a). To comply with section 1716, the solicitation must include one of the following two disclaimers: 1) "THIS IS NOT A BILL. THIS IS A SOLICITATION. YOU ARE UNDER NO OBLIGATION TO PAY THE AMOUNT STATED ABOVE UNLESS YOU ACCEPT

THIS OFFER," Cal. Civ. Code. § 1716(b); or 2) "This is a solicitation for the order of goods or services, or both, and not a bill, invoice, or statement of account due. You are under no obligation to make any payments on account of this offer unless you accept this offer," 39 U.S.C. § 3001(d)(2)(A). Cal. Civ. Code § 1716(b). The disclaimer must also meet certain size, font, and color requirements. *See* Cal. Civ. Code § 1716(b)-(f).

In this case, Nakai alleges that on September 5, 2018, she entered a sweepstakes sponsored by Defendants to win a trip to the New York City Wine and Food Festival through Defendants' website. Nakai attaches the online sweepstakes entry form to the FAC. The entry form states, "Fill in the fields below to get 1 FREE issue of Food Network Magazine and be automatically entered for your chance to win. If you'd prefer to enter the sweepstakes without getting a free trial, *click here*." (Ex. 9, ECF No. 14-9 at 2; Ex. A, Herrington Decl., ECF No. 17-2 at 6). Below the offer, in smaller text, the entry form states, "If you like what you see, you'll get 1 year (for a total of 11 issues) for just $12.00 — that's 78% less than others pay on the newsstand. If not, return the bill marked 'cancel' and keep the first issue with no obligation. You'll still be eligible to win the sweepstakes." (Ex. 9, ECF No. 14-9 at 2 (emphasis omitted); Ex. A, Herrington Decl., ECF No. 17-2 at 6 (emphasis omitted)). Nakai alleges that she "submitted a sweepstakes entry, which included a request for the 'FREE' issue." (ECF No. 14 ¶ 45).

Nakai alleges that on September 8, 2018, she "received an email from Defendants purporting to be an 'INVOICE' for an 11-issue term subscription to Food Network Magazine, stating that there is now a 'Payment Due' of $12.00." (*Id.* ¶ 46). Nakai attaches a screenshot of a section of the invoice to the FAC. (*Id.* ¶ 46). The invoice states, "Thank you for subscribing to *Food Network Magazine* and entering the sweepstakes. You will be notified if you are selected as the winner. Please pay your subscription now." (*Id.*). Nakai alleges that she had "not ordered a subscription to *Food Network Magazine*." (*Id.* ¶ 47). Nakai alleges that the invoice did not contain a disclaimer that Nakai was under no obligation to pay Defendants any money. Nakai alleges that she "assumed she owed

Defendants the money that was stated as the 'Amount Due,' and Nakai paid the 'invoice' with her credit card, in the amount of $12.00." (*Id.*).

Nakai's allegation that she did not order a subscription to *Food Network Magazine* is contradicted by the sweepstakes entry form that Nakai attaches to the FAC. *See Steckman v. Hart Brewing*, 143 F.3d 1293, 1295-96 (9th Cir. 1998) ("[W]e are not required to accept as true conclusory allegations which are contradicted by documents referred to in the complaint." (citing *In re Stac Elecs. Sec. Litig.,* 89 F.3d 1399, 1403 (9th Cir. 1996))). The entry form states, "Fill in the fields below to get 1 FREE issue of Food Network Magazine . . . ." (Ex. 9, ECF No. 14-9 at 2; Ex. A, Herrington Decl., ECF No. 17-2 at 6). Below the offer, in smaller text, the entry form states, "If you like what you see, you'll get 1 year (for a total of 11 issues) for just $12.00 . . . . If not, return the bill marked 'cancel' and keep the first issue with no obligation." (Ex. 9, ECF No. 14-9 at 2; Ex. A, Herrington Decl., ECF No. 17-2 at 6). Taking as true Nakai's allegation that she submitted a request for a free issue of *Food Network* Magazine, Nakai accepted Defendants' offer for an eleven-month subscription to *Food Network Magazine*. The invoice Nakai received from Defendants three days later was a bill for the subscription Nakai ordered, not "in fact a solicitation for an order." Cal. Civ. Code § 1716(a). Nakai fails to state facts that support a reasonable inference that Defendants violated section 1716 and are uncontroverted by the exhibits attached to the FAC. Defendants' Motion to Dismiss Nakai's claim for violation of section 1716 is granted.

## V.  FALSE ADVERTSING LAW

Plaintiffs bring claims against Defendants for violations of California's False Advertising Law ("FAL"), based upon Defendants' alleged violations of California's Automatic Renewal Law. Defendants contend that Plaintiffs fail to allege facts from which the Court can infer that Defendants violated the Automatic Renewal Law. Defendants contend that Plaintiffs fail to allege the contents of Defendants' disclosures and fail to allege facts that demonstrate the disclosures did not comply with the Automatic Renewal Law's requirements. Plaintiffs contend that their allegations, when considered with the

exhibits attached to the FAC, are sufficient for each Plaintiff to state a claim against Defendants under the Automatic Renewal Law and FAL.

California's Automatic Renewal Law was enacted to "end the practice of ongoing charging of consumer credit or debit cards . . . without the consumers' explicit consent for ongoing shipments of a product or ongoing deliveries of service." Cal. Bus. & Prof. Code. § 17600. The Automatic Renewal Law applies to "any business that makes an automatic renewal offer or continuous service offer to a consumer in [California]." Cal. Bus. & Prof. Code § 17602(a). "Automatic renewal" means "a plan or arrangement in which a paid subscription or purchasing agreement is automatically renewed at the end of a definite term for a subsequent term." Cal. Bus. & Prof. Code § 17601(a). "Continuous service" means "a plan or arrangement in which a subscription or purchasing agreement continues until the consumer cancels the service." Cal. Bus. & Prof. Code § 17601(e).

Section 17602 of the Automatic Renewal Law makes it unlawful to do any of the following:

> (1) Fail to present the automatic renewal offer terms or continuous service offer terms in a clear and conspicuous manner before the subscription or purchasing agreement is fulfilled and in visual proximity . . . to the request for consent to the offer. If the offer also includes a free gift or trial, the offer shall include a clear and conspicuous explanation of the price that will be charged after the trial ends or the manner in which the subscription or purchasing agreement pricing will change upon conclusion of the trial.
>
> (2) Charge the consumer's credit or debit card . . . for an automatic renewal or continuous service without first obtaining the consumer's affirmative consent to the agreement containing the automatic renewal offer terms or continuous service offer terms, including the terms of an automatic renewal offer or continuous service offer that is made at a promotional or discounted price for a limited period of time.
>
> (3) Fail to provide an acknowledgment that includes the automatic renewal offer terms or continuous service offer terms, cancellation policy, and information regarding how to cancel in a manner that is capable of being retained by the consumer. If the automatic renewal offer or continuous service offer includes a free gift or trial, the business shall also disclose in the

> acknowledgment how to cancel, and allow the consumer to cancel, the automatic renewal or continuous service before the consumer pays for the goods or services.

Cal. Bus. & Prof. Code § 17602(a). The requirements of section 17602 "apply only prior to the completion of the initial order for the automatic renewal or continuous service." Cal. Bus. & Prof. Code § 17602(e)(1). However, the requirements of subdivision (a)(3) "may be fulfilled after completion of the initial order." *Id.*

The "automatic renewal offer terms" that a business must present in a "clear and conspicuous" manner include:

> (1) That the subscription or purchasing agreement will continue until the consumer cancels.
>
> (2) The description of the cancellation policy that applies to the offer.
>
> (3) The recurring charges that will be charged to the consumer's credit or debit card or payment account with a third party as part of the automatic renewal plan or arrangement, and that the amount of the charge may change, if that is the case, and the amount to which the charge will change, if known.
>
> (4) The length of the automatic renewal term or that the service is continuous, unless the length of the term is chosen by the consumer.
>
> (5) The minimum purchase obligation, if any.

Cal. Bus. & Prof. Code § 17601(b). "Clear and conspicuous" means "in larger type than the surrounding text, or in contrasting type, font, or color to the surrounding text of the same size, or set off from the surrounding text of the same size by symbols or other marks, in a manner that clearly calls attention to the language." Cal. Bus. & Prof. Code § 17601(c).

There is no private right of action under the Automatic Renewal Law. *Johnson v. Pluralsight, LLC*, 728 F. App'x 674, 676-77 (9th Cir. 2018). A consumer who has been harmed by a violation of the Automatic Renewal Law may bring a claim pursuant to other consumer protection statutes, including California's FAL, Unfair Competition Law, and Consumer Legal Remedies Act. *Id.*; *see* Cal. Bus. & Prof. Code § 17535 (section of the

FAL authorizing a private right of action by "any person" for violations of Chapter 1 of California's Business and Professions Code, which includes the Automatic Renewal Law).

In this case, Plaintiffs allege that Defendants violated the FAL by failing to comply with the requirements of the Automatic Renewal Law. Specifically, Plaintiffs allege that Defendants failed to disclose the terms of their automatic renewal offers in a "clear and conspicuous manner" and charged Plaintiffs' credit cards without obtaining Plaintiffs' consent to the automatic renewal offer terms. Cal. Bus. & Prof. Code § 17602(a)(1).

Plaintiff Arnold alleges that she submitted order forms for a two-year subscription to *HGTV Magazine* and one-year subscriptions to *Good Housekeeping*, *Woman's Day*, and *Oprah Magazine*. Arnold alleges that at the end of her term subscriptions, Defendants automatically renewed the subscriptions and charged Arnold's credit card for the renewal fees. Arnold relies upon the conclusory allegation that, on information and belief, the order forms "did not contain clear and conspicuous disclosure of automatic renewal offer terms as required by Bus. & Prof. Code § 17601(b) and (c) and § 17602(a)(1) and (a)(2)." (ECF No. 14 ¶¶ 28, 33, 36, 39; *see Twombly*, 550 U.S. at 555 (explaining that Rule 8 requires more than "a formulaic recitation of the elements of a cause of action")). Arnold fails to allege any fact to support her claim that the contents of the order forms she submitted to Defendants violated the Automatic Renewal Law. *See* Cal. Bus. & Prof. Code § 17602(a)(1) (the disclosures required by the Automatic Renewal Law may be presented at any time "before the subscription or purchasing agreement is fulfilled and in visual proximity . . . to the request for consent to the offer").

The Court cannot infer from the facts alleged that the order forms failed to include a disclosure that the subscriptions would continue until the consumer cancels, a description of the cancellation policy, the amount of the recurring charge, the length of the automatic renewal term, or the minimum purchase obligation. *See* Cal. Bus. & Prof. Code § 17601(b). The Court cannot infer from the facts alleged that the order forms failed to disclose the automatic renewal terms in larger or contrasting type, font, or color to the surrounding text, or set off from the surrounding text of the same size by symbols or other marks. *See* Cal.

Bus. & Prof. Code § 17601(c). Arnold attaches to the FAC a copy of a paper order form for *Good Housekeeping* and *Woman's Day* and alleges that the order form is "similar" to the order form she submitted. (ECF No. 14 ¶ 32). However, Arnold fails to allege facts from which the Court can identify any violation of the Automatic Renewal Law. Arnold does not allege any basis for her FAL claim independent of the Automatic Renewal Law. Arnold fails to state a claim for violation of the FAL.

Plaintiff Ruppert alleges that in response to a paper advertisement, she submitted an order and paid for one-year subscriptions to *Food Network Magazine* and *HGTV Magazine* through Defendants' website. Ruppert alleges that at the end of her term subscriptions, Defendants automatically renewed the subscriptions and charged Ruppert's credit card for the renewal fees. Ruppert relies on the conclusory allegation that "Defendants did not provide clear and conspicuous disclosure of automatic renewal offer terms as required by Bus. & Prof. Code § 17601(b) and (c) and § 17602(a)(1), and charged [Ruppert's] credit card without first obtaining her affirmative consent to an agreement containing clear and conspicuous disclosure of automatic renewal offer terms as required by Bus. & Prof. Code § 17602(a)(2)." (ECF No. 14 ¶ 53). Ruppert fails to allege any fact to support her claim that the contents of the webpage where she placed her order and paid for the magazine subscriptions violated the Automatic Renewal Law.

The Court cannot infer from the facts alleged that the webpage failed to include a disclosure that the subscriptions would continue until the consumer cancels, a description of the cancellation policy, the amount of the recurring charge, the length of the automatic renewal term, or the minimum purchase obligation. *See* Cal. Bus. & Prof. Code § 17601(b). The Court cannot infer from the facts alleged that the webpage failed to disclose the automatic renewal terms in larger or contrasting type, font, or color to the surrounding text, or set off from the surrounding text of the same size by symbols or other marks. *See* Cal. Bus. & Prof. Code § 17601(c). Ruppert fails to allege facts that support a reasonable inference that Defendants violated the Automatic Renewal Law. Ruppert does not allege

any basis for her FAL claim independent of the Automatic Renewal Law. Ruppert fails to state a claim for violation of the FAL.

Plaintiff Nakai alleges that she submitted a sweepstakes entry and request for a free issue of *Food Network Magazine* on Defendants' website. Nakai alleges that she received an email invoice for an eleven-month subscription to *Food Network Magazine* and paid the subscription online through Defendants' website. Nakai alleges, on information and belief, "that the *Food Network Magazine* subscription into which Defendants enrolled her is an automatic renewal subscription." (ECF No. 14 ¶ 49). Nakai relies on the conclusory allegation that "[n]either the initial promotional email (Exhibit 8) not the sweepstakes entry form (Exhibit 9) contains clear and conspicuous disclosure of automatic renewal offer terms as required by Bus. & Prof. Code § 17601(b) and (c) and § 17602(a)(1)." (*Id.*). Exhibits attached to a complaint are not a substitute for factual allegations. Nakai fails to state facts from which the Court can infer that Defendants enrolled Nakai in an automatic renewal subscription. Nakai fails to state facts that support a reasonable inference that Defendants violated the Automatic Renewal Law. Nakai does not allege any basis for her FAL claim independent of the Automatic Renewal Law. Nakai fails to state a claim for violation of the FAL. Defendants' Motion to Dismiss Plaintiffs' claims for violations of California's FAL is granted.

## VI.  CONSUMER LEGAL REMEDIES ACT

Plaintiffs bring claims against Defendants for violating California's Consumer Legal Remedies Act ("CLRA") by making false or misleading statements regarding the automatic renewal of Defendants' magazine subscriptions. Defendants contend that Plaintiffs' CLRA allegations are conclusory. Defendants contend that Plaintiffs fail to identify any representation Defendants made and fail to allege facts that support an allegation that any representation was false. Plaintiffs contend that they state facts sufficient to state claims under the CLRA.

The CLRA outlaws "unfair methods of competition and unfair or deceptive acts or practices" undertaken in the course of consumer transactions. Cal. Civ. Code § 1770(a).

15

19-cv-1969-WQH-MDD

Section 1770 provides, in relevant part, that is it unlawful for "any person in a transaction intended to result or that results in the sale or lease of goods or services to any consumer" to "[r]epresent[ ] that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have . . .," Cal. Civ. Code § 1770(a)(5); to "[a]dvertis[e] goods or services with intent not to sell them as advertised," Cal. Civ. Code § 1770(a)(9); to "[m]ak[e] false or misleading statements of fact concerning reasons for, existence of, or amounts of, price reductions," Cal. Civ. Code § 1770(a)(13); to "[r]epresent[ ] that a transaction confers or involves rights, remedies, or obligations that it does not have or involve, or that are prohibited by law," Cal. Civ. Code § 1770(a)(14); and to "[r]epresent[ ] that the consumer will receive a rebate, discount, or other economic benefit, if the earning of the benefit is contingent on an event to occur subsequent to the consummation of the transaction," Cal. Civ. Code § 1770(a)(17). Section 1770 proscribes both false or misleading omissions and false or misleading affirmative misrepresentations. *Collins v. eMachines, Inc.*, 202 Cal. App. 4th 249, 255 (2011) (citing *Outboard Marine Corp. v. Superior Court*, 52 Cal. App. 3d 30, 37 (1975); *McAdams v. Monier, Inc.*, 182 Cal. App. 4th 174, 185 (2010)).

In this case, Plaintiffs allege that Defendants offered and advertised term magazine subscriptions without adequately disclosing the automatic renewal features attached to those subscriptions. However, Plaintiffs fail to state facts that support an inference that Defendants violated section 1770. As discussed above, Plaintiffs fail to state facts that support an inference that Defendants failed to adequately disclose the terms of the automatic renewal program under the Automatic Renewal Law. Plaintiffs' allegations that Defendants failed to "present the automatic renewal offer terms or continuous service offer terms in a clear and conspicuous manner" are conclusory. (*See, e.g.*, ECF No. 14 ¶¶ 28, 33, 36, 39, 53). Plaintiffs fail to allege facts from which the Court can infer that Defendants made any representations to Plaintiffs that were false or misleading. *See Daugherty v. Am. Honda Motor Co., Inc.*, 144 Cal. App. 4th 824, 835 (2006) ("[A]lthough a claim may be stated under the CLRA in terms constituting fraudulent omissions, to be actionable the

omission must be contrary to a representation actually made by the defendant, or an omission of a fact the defendant was obliged to disclose."). Plaintiffs fail to state a claim under the CLRA. Defendants' Motion to Dismiss Plaintiffs' CLRA claims is granted.

## VII. UNFAIR COMPETITION LAW

Plaintiffs bring claims against Defendants for violating California's Unfair Competition Law ("UCL") by violating the Automatic Renewal Law, FAL, CLRA and section 1716 of the California Civil Code. Defendants contend that the Court should dismiss Plaintiffs' UCL claims because Plaintiffs' allegations "do[ ] no more than to purportedly allege violations of other laws." (ECF No. 17-1 at 30). Defendants contend that "Plaintiffs' claim that Hearst engages in unfair business practices relies on conclusory statements parroted from the UCL legal standard." (*Id.* at 31). Plaintiffs contend that they sufficiently allege UCL claims because they have stated claims for violations of the Automatic Renewal Law, FAL, CLRA and section 1716.

The UCL prohibits "any unlawful, unfair or fraudulent business practice." Cal. Bus. & Prof. Code §§ 17200, 17203. "By proscribing 'any unlawful' business practice, 'section 17200 borrows violations of other laws and treats them as unlawful practices' that the unfair competition law makes independently actionable." *Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*, 20 Cal. 4th 163, 180 (1999) (quoting *State Farm Fire & Cas. Co. v. Superior Court*, 45 Cal. App. 4th 1093, 1103 (1996)). The UCL also prohibits a broader category of "practice[s] [that] may be deemed unfair [or fraudulent] even if not specifically proscribed by some other law." *Id.* "An act or practice is unfair [under the UCL] if the consumer injury is substantial, is not outweighed by any countervailing benefit to consumers or to competition, and is not an injury the consumers themselves could reasonably have avoided." *Daugherty*, 144 Cal. App. 4th at 839.

The term "fraudulent" under the UCL "does not refer to the common law tort of fraud but only requires a showing members of the public are likely to be deceived." *Puentes v. Wells Fargo Home Mortg., Inc.*, 160 Cal. App. 4th 638, 645 (2008) (quotation omitted). "Unless the challenged conduct 'targets a particular disadvantaged or vulnerable group, it

is judged by the effect it would have on a reasonable consumer.'" *Id.* (quoting *Aron v. U-Haul Co. of Cal.*, 143 Cal. App. 4th 796, 806 (2006)). In order to state a claim under the UCL's fraudulent prong, a plaintiff must plead that the alleged misrepresentation was directly related to the plaintiff's injurious conduct and that the plaintiff actually relied on the alleged misrepresentation. *In re Tobacco II Cases*, 46 Cal. 4th at 326-27. UCL claims that are grounded in fraud must be pleaded with particularity under Rule 9(b). *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125-26 (9th Cir. 2009).

In this case, the Court has concluded that Plaintiffs fail to state claims for violations of the FAL, CLRA, and section 1716. Plaintiffs have not alleged any basis for their UCL claims other than violations of the FAL, CLRA, and section 1716. Accordingly, Plaintiffs fail to state claims under the UCL. Defendants' Motion to Dismiss Plaintiffs' UCL claims is granted.

## VIII.  EQUITABLE RELIEF

Defendants contend that Plaintiffs' requests for equitable relief under the FAL, UCL, and unjust enrichment claims should be dismissed because Plaintiffs have alleged other claims for damages. Plaintiffs contend that they are entitled to pursue claims for equitable relief because the CLRA permits damages in addition to equitable relief.

The only remaining claim for which Plaintiffs seek equitable relief is Plaintiffs' unjust enrichment claim. Plaintiffs bring an independent claim for unjust enrichment "in the alternative to relief provided under any legal claim alleged herein." (ECF No. 14 ¶ 96; *see Bruton v. Gerber Prods. Co.*, 703 F. App'x 468, 470 (9th Cir. 2017) (recognizing unjust enrichment as an independent claim under California law)). However, the Court has concluded that Plaintiffs fail to state any claim against Defendants. Defendants' Motion to Dismiss Plaintiffs' requests for equitable relief is granted.

///

///

## IX. CONCLUSION

IT IS HEREBY ORDERED that Defendants' Motion to Dismiss Plaintiffs' FAC (ECF No. 17) is granted. No later than thirty (30) days from the date of this Order, Plaintiffs may file a motion for leave to amend pursuant to Civil Local Rules 7.1 and 15.1(c). If no motion is filed, the Clerk shall close the case.

Dated: June 25, 2020

Hon. William Q. Hayes
United States District Court