GREENBERG TRAURIG, LLP
ROBERT J. HERRINGTON (SBN 234417)
HerringtonR@gtlaw.com
1840 Century Park East, Suite 1900
Los Angeles, California 90067
Tel:  (310) 586-7700; Fax:  (310) 586-7800

THE HEARST CORPORATION
OFFICE OF GENERAL COUNSEL
JONATHAN R. DONNELLAN (Admitted *Pro hac vice*)
jdonnellan@hearst.com
STEPHEN H. YUHAN (Admitted *Pro hac vice*)
syuhan@hearst.com
MATTHEW GREENFIELD (Admitted *Pro hac vice*)
matthew.greenfield@hearst.com
NINA N. SHAH (*Pro hac vice* application forthcoming)
nina.shah@hearst.com
300 West 57th St, 40th Floor
New York, New York 10019
Tel:  (212) 841-7000; Fax:  (212) 554-7000
*Attorneys for Defendants Hearst Magazine
Media, Inc. and CDS Global, Inc.*

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FENELLA ARNOLD, KELLY NAKAI, and MICHELE RUPPERT, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>HEARST MAGAZINE MEDIA, INC., a Delaware corporation; CDS GLOBAL, INC., an Iowa corporation; and DOES 1-50, inclusive,<br><br>Defendants. | CASE NO. 3:19-cv-01969-WQH-MDD<br><br>**DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT**<br><br>Date:  November 9, 2020<br>Judge:  Hon. William Q. Hayes<br><br>**NO ORAL ARGUMENT UNLESS REQUESTED BY THE COURT** |

## **TABLE OF CONTENTS**

I.      INTRODUCTION ............................................................................................ 1

II.     SUMMARY OF ALLEGATIONS AND PROCEDURAL HISTORY .................... 2

        A.      Defendants' Magazine Subscription Processes ............................. 2
        B.      Fenella Arnold's Subscriptions. ...................................................... 3
        C.      Kelly Nakai's Subscription. ............................................................. 4
        D.      Michele Ruppert's Subscriptions. ................................................... 6
        E.      The Second Amended Complaint. .................................................. 7
        F.      Procedural History .......................................................................... 7

III.    LEGAL STANDARD ...................................................................................... 8

IV.     ARGUMENT ................................................................................................. 9

        A.      Plaintiffs' ARL Claims Fail as a Matter of Law. ............................ 9

                1.      Arnold Fails to Allege the Content of the Forms She Used to
                        Order or Pay for Her Subscriptions, as Required to Plead Her §
                        17602(a)(1) or (a)(2) Claims. ................................................ 10

                2.      Ruppert's § 17602(a)(1) and (a)(2) Claims Fail Because They
                        Are Still Inadequately Pleaded, and in Any Event, the
                        Challenged Disclosures Clearly and Conspicuously Disclosed
                        the Requisite Automatic Renewal Offer Terms ....................... 20

                3.      Nakai Has Not Pleaded and Cannot Adequately Plead ARL
                        Claims. ................................................................................... 16

                        a.      Nakai's ARL Claims Fail Because She Does Not Allege that
                                She Was Subject to a "Recurring Charge." ...................... 16

                        b.      Nakai's § 17602(a)(1) and (2) Claims Are Still Inadequately
                                Pleaded, and in Any Event, the Challenged Disclosures
                                Clearly and Conspicuously Disclosed the Requisite
                                Automatic-Renewal Offer Terms .................................... 19

                4.      Plaintiffs Have Not Adequately Pleaded § 17602(a)(3) and §
                        17602(b) Claims ..................................................................... 20

        B.      Plaintiffs Fail to Plead Statutory Standing to Bring Their Statutory
                Claims .......................................................................................... 21

        C.      Plaintiffs' Claims Fail in Their Entirety ........................................ 21

V.      CONCLUSION ............................................................................................ 25

i

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Federal Cases**

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)............................................................................................. 1, 8

*Astaire v. Best Film & Video Corp.*,
    116 F.3d 1297 (9th Cir. 1997) ............................................................................ 16

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007)......................................................................................*passim*

*Beshwate v. BMW of N. Am., LLC*,
    No. 17-cv-00417, 2017 WL 4410169 (E.D. Cal. Oct. 4, 2017) ...................... 13

*Bird v. First Alert, Inc.*,
    No. C 14-3585, 2014 WL 7248734 (N.D. Cal. Dec. 19, 2014)................. 11, 16, 20, 24

*Chase v. Hobby Lobby Stores, Inc.*,
    No. 17-cv-00881, 2017 WL 4358146 (S.D. Cal. Oct. 2, 2017) ....................... 9

*Doe v. SuccessfulMatch.com*,
    70 F. Supp. 3d 1066 (N.D. Cal. 2014) ........................................................... 22

*Dvora v. General Mills, Inc.*,
    No. 11-cv-1074, 2011 WL 1897349 (C.D. Cal. May 16, 2011) ..................... 12

*Franklin v. Gwinnett Cnty. Pub. Sch.*,
    503 U.S. 60 (1992)........................................................................................... 24

*Gershman v. Bayer HealthCare LLC*,
    No. 14-CV-05332, 2015 WL 2170214 (N.D. Cal. May 8, 2015) ................... 8

*Grimm v. APN Inc.*,
    No. 8:17-cv-00356, 2017 WL 6398148 (S.D. Cal. Aug. 31, 2017) ............... 9

*Hall v. Time, Inc.*,
    No. 19-cv-1153, 2019 WL 8107879 (C.D. Cal. Sept. 24, 2019)........... 14, 15, 19, 20

*Hall v. Time, Inc.*,
    No. 19-cv-1153, 2020 WL 2303088 (C.D. Cal. Mar. 13, 2020) ................... 15

*Kearns v. Ford Motor Co.*,
   567 F.3d 1120 (9th Cir. 2009) .................................................................. 8, 9, 12

*Lopez v. YP Holdings, LLC*,
   No. CV 18-8791, 2019 WL 2895190 (C.D. Cal. Mar. 26, 2019)........................... 18, 23

*Luman v. Theismann*,
   647 F. App'x 804 (9th Cir. 2016) .................................................................. 24

*McKee v. Audible, Inc.*,
   No. 2:17-cv-01941, 2017 WL 7388530 (C.D. Cal. Oct. 26, 2017).................. 10, 11, 12

*Munning v. Gap Inc.*,
   238 F. Supp. 3d 1195 (N.D. Cal. 2017) ......................................................... 24

*Phillips v. Apple Inc.*,
   No. 15-CV-04879, 2016 WL 1579693 (N.D. Cal. Apr. 19, 2016)............................. 22

*Price v. Synapse Grp., Inc.*,
   No. 16-CV-01524, 2017 WL 3131700 (S.D. Cal. July 24, 2017).............................. 14

*Rhynes v. Stryker Corp.*,
   No. 10-5619, 2011 WL 2149095 (N.D. Cal. May 31, 2011) ...................................... 23

*Somers v. Apple, Inc.*,
   729 F.3d 953 (9th Cir. 2013) ......................................................................... 8

*Sonner v. Premier Nutrition Corp.*,
   971 F.3d 834 (9th Cir. 2020) ......................................................................... 24

*Vess v. Ciba-Geigy Corp. USA*,
   317 F.3d 1097 (9th Cir. 2003) ..................................................................... 8, 9

*Viggiano v. Hansen Nat. Corp.*,
   944 F. Supp. 2d 877 (C.D. Cal. 2013) ............................................................. 8

**State Cases**

*Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*,
   20 Cal. 4th 163 (1999) ................................................................................ 24

*Daugherty v. Am. Honda Motor Co., Inc.*,
   144 Cal. App. 4th 824 (2006) ....................................................................... 23

*Dyna-Med, Inc. v. Fair Emp. & Hous. Comm'n,*
  43 Cal. 3d 1379 (1987) ................................................................... 16

*Grieves v. Superior Court,*
  157 Cal. App. 3d 159 (1984) ........................................................... 23

*Kwikset Corp. v. Superior Ct.,*
  51 Cal. 4th 310 (2011) ............................................................ 21, 22

*Mayron v. Google LLC,*
  No. H044592, 2020 WL 5494245 (Cal. Ct. App. Sept. 11, 2020) ............... 23

*Meyer v. Sprint Spectrum, L.P.,*
  45 Cal. 4th 634 (2009) ................................................................... 21

*Schnall v. Hertz Corp.,*
  78 Cal. App. 4th 1144 (2000) ......................................................... 24

*In re Tobacco II Cases,*
  46 Cal. 4th 298 (2009) ................................................................... 21

*Woods v. Young,*
  53 Cal. 3d 315 (1991) .................................................................... 17

**Federal Statutes**

28 U.S.C. § 1332(d) ....................................................................... 7

**California Statutes**

Cal. Bus. & Prof. Code § 17200 ......................................................... 7

Cal. Bus. & Prof. Code § 17600 *et seq.* ........................................... 7, 17

Cal. Bus. & Prof. Code § 17601 ................................................. *passim*

Cal. Bus. & Prof. Code § 17602 ................................................. *passim*

Cal. Civ. Code § 1716 ..................................................................... 8

Cal. Civ. Code § 1770 ..................................................................... 7

Cal. Civ. Code § 1780(a) ................................................................ 21

Cal. Civ. Code § 3294(a)-(b) ........................................................... 23

DEFENDANTS' MEM. OF POINTS & AUTHORITIES I/S/O MOTION TO DISMISS SECOND AM. COMPLAINT
CASE NO. 3:19-CV-01969

**Other Authorities**

Fed. R. Civ. P. 8 ............................................................................................ 8, 12

Fed. R. Civ. P. 9(b) ............................................................................... 8, 9, 12, 13

# I.   **INTRODUCTION**

This is now Plaintiffs' third attempt to plead claims based on Defendants' supposed violations of California's Automatic Renewal Law ("ARL"), which requires certain disclosures in connection with offers that involve automatically recurring charges.   As explained below, in the Second Amended Complaint ("SAC" or "Complaint"), Plaintiffs still fail to allege any cognizable claims. Their continued futility makes plain that their inability to plead plausible claims is no oversight, but rather is because they cannot do so. The SAC therefore should be dismissed with prejudice, in its entirety.

Every claim in the SAC is predicated on the principal allegations that Defendants violated the ARL. These claims fail at the most basic level. The Complaint openly concedes that Arnold "does not have a copy" of any of the advertisements to which she allegedly responded, and that neither Ruppert nor Arnold have copies of the forms through which they submitted their payments. They cannot simply guess as to the content. Under *Twombly* and *Iqbal*, this failure to plead the form and substance of Defendants' offer (including any automatic-renewal disclosures) dooms their claims, and Plaintiffs' desire to use discovery to search for a factual basis for their claims is contrary to law.

Where Plaintiffs do attach the forms and communications at issue, Plaintiffs resort to blunderbuss, conclusory allegations that Defendants' disclosures are inadequate, but those allegations are belied by Plaintiffs' own exhibits ("Ex."), which show that Defendants repeatedly supplied Plaintiffs with the information required by the ARL and provided clearly marked disclosures—appearing in separate, dedicated blocks of text set off by boldface headings and contrasting colors, positioned above the required actions—that satisfy the ARL's "clear and conspicuous" requirements.

Nakai's ARL claim also fails as a matter of law because the ARL applies only to offers containing "automatic renewal offer terms," which is defined in the statute to require, *inter alia*, "recurring" charges. Nakai does not allege that she ever incurred an "automatic" or "recurring" charge as required under the ARL; instead, she alleges that every time she was charged for her subscription, it was because she initiated the payment in response to an

1

invoice she received.

In addition to these pleading defects, Plaintiffs' statutory claims fail as a matter of law because the Complaint fails to adequately allege the underlying misconduct and injury caused by the alleged misconduct, as required to have statutory standing. Plaintiffs fail to plead facts necessary to establish a causal connection between Defendants' allegedly improper conduct, on the one hand, and the payment each Plaintiff made, on the other. Without a sufficient causal link, there is no cognizable injury, and, in turn, no standing.

Plaintiffs' CLRA and UCL claims are derivative and fail for the same reasons as their ARL claims. Plaintiffs also fail to allege facts that could entitle them to equitable relief or punitive damages.

Where, as here, the Complaint fails to allege elements required to establish violations of law, it cannot survive a motion to dismiss. This motion should be granted in its entirety.

## II.    SUMMARY OF ALLEGATIONS AND PROCEDURAL HISTORY[1]

### A.    Defendants' Magazine Subscription Processes.

According to the SAC, Hearst Magazine Media, Inc. ("HMM") is one of the largest magazine publishers in the world. In the United States, HMM publishes approximately two dozen magazine titles, including *Food Network Magazine*, *HGTV Magazine*, *Cosmopolitan*, *Good Housekeeping*, *Woman's Day*, *Country Living*, and *Car & Driver*. (SAC ¶ 11.) CDS Global, Inc. ("CDS"; together with HMM, "Defendants") provides magazine fulfillment services for HMM and other publishers, and those services "may include assisting with subscriptions, billing, collection, and/or other account services." (SAC ¶ 12.)

Subscribers to HMM's magazines may order a magazine subscription through a variety of paths, such as completing and submitting hard-copy and online order forms. (*See, e.g.*, SAC Ex. 4; Ex. 10; Ex. 14.) Depending on the form used to place the order, the placement of the order does not necessarily occur contemporaneously with payment. In

---

[1] The following allegations are taken from the SAC, exhibits Plaintiffs annexed to the SAC, and documents central to or incorporated by reference into the SAC. The allegations of fact are taken as true solely for purposes of this Motion to Dismiss.

some forms, the customer is given an option to provide payment contemporaneously, or else to elect to receive a bill separately. (*See* Ex. 14.) In other forms, there is no option for the customer to submit payment simultaneously with the order, and the customer is billed afterwards. (*See* Ex. 4.) If the subscription is a "bill me later" order, the customer is sent an invoice for the magazine subscription requesting payment. (SAC ¶¶ 27, 47.) If the customer responds to that invoice by providing her payment card or third-party payment account information, only then is she charged for her subscription order. In some instances, the invoice is an email containing a link to an online payment form. (*See* ¶ 27 & Ex. 5.)

Many HMM magazine subscriptions are enrolled in HMM's Continuous Service Program. (SAC ¶ 15.) Defendants inform such subscribers at the time they place their orders as well as in subsequent communications that they "will receive uninterrupted service" unless the customer otherwise directs, and that the subscription will be "automatically renewed at the end of each subscription term, at the rate(s) then in effect." (*See, e.g.*, SAC Exs. 4, 6, 8, 11-13, 15; *see also* Exs. 14, 16-17.) Defendants' order forms and other communications state that the subscriber "authorize[s] [Defendants] to fulfill [her] subscription and charge the credit/debit card if provided." (*Id*. Exs. 4, 6, 11-13, 15-17.)

### B. <u>Fenella Arnold's Subscriptions.</u>

Arnold brings claims based on four subscriptions: a June 2017 order of *HGTV Magazine*, a November 2018 order of *Good Housekeeping* and *Woman's Day* (which she alleges was a gift for her mother) and a November 2018 order of *Oprah Magazine*. (SAC ¶¶ 46, 57, 76.) Arnold expressly concedes that she does not have a copy of any of the advertisements to which she responded. (¶¶ 46, 57, 76.) Notwithstanding that concession, Arnold attempts to allege that the form she used to place her *Good Housekeeping* and *Woman's Day* gift order is "in all material respects the same as the advertisement/order form depicted in Exhibit 10" to the SAC (¶ 58), but she does not allege how the forms are similar or different. She alleges no facts as to the verbiage used in any of the advertisements to describe the terms of her subscriptions (including any automatic-renewal aspect), or the

typeface, size, color, or placement of any such terms.[2] Arnold does not allege that she read or relied on any statement contained in any of the unidentified advertisements.

Arnold alleges that she supplied payment information to Defendants relating to her subscriptions through online forms, but she concedes she does not have screenshots or copies of the forms she used. (¶¶ 49, 67, 82.) She does not allege the content or form of any disclosures included on those forms, beyond her conclusory assertion that the forms she used were "in all material respects the same as the invoice payment form shown in Exhibit 8." (¶¶ 49, 67, 82.)

Arnold alleges that she received emails from Defendants confirming her *Good Housekeeping*, *Woman's Day*, and *Oprah* subscriptions. (¶¶ 62, 78 & Exs. 11-13.) Each of those emails included disclosures setting forth the terms of the Continuous Service Program. (Exs. 11-13.)

### C.  <u>Kelly Nakai's Subscription.</u>

Nakai alleges that, on September 5, 2018, she ordered a one-year subscription to *Food Network Magazine* by entering a sweepstakes, which included an offer for a free issue of *Food Network Magazine*. (¶ 22 & Ex. 4.) Nakai alleges she submitted that sweepstakes entry through an online order form, a copy of which was attached to the SAC as Exhibit 4.

Exhibit 4 sets forth the terms of the user's *Food Network Magazine* subscription. Among other things, the form states that the subscription includes continuous service. (Ex. 4, at 1.) Directly above the "SUBMIT" button and set off by an asterisk and the boldface heading "Continuous Service Program," the form expressly states that the user's "subscription(s) will be automatically renewed at the end of each subscription term" and that by submitting the form, the subscriber is authorizing Defendants to "charge the credit/debit card if provided, or send me a bill if not":

---

[2] Notably, the form attached as Exhibit 10 includes the phrase "Continuous Service Program" in boldface type towards the bottom of the form, followed by an express disclosure that the subscription "will continue unless you ask us to stop."

*Continuous Service Program: I understand that unless I tell you otherwise, I will receive uninterrupted service and access; my subscription(s) will be automatically renewed at the end of each subscription term, at the rate(s) then in effect. I authorize you to fulfill my subscription(s) and charge the credit/debit card if provided, or send me a bill if not. I won't be bothered with any renewal notices, instead, I will receive a clearly marked reminder notice with the then current rate(s) about 30 days prior to charging my credit/debit card or receiving a bill. I may opt out of the automatic renewal at any time by contacting customer service referenced below and receive a refund for all undelivered issues.

**SUBMIT**

(*Id*.) Nakai does not allege that she read or relied on any of the statements contained in Exhibit 4.

Nakai alleges that she received an electronic invoice, and that she paid that invoice through an online form (Ex. 8), which included a separate block of blue text, directly above the "PAY NOW" button, with the boldface heading "Continuous Service Program":

Exp. Date:    MONTH ▾    YEAR ▾

**Continuous Service Program:** I understand that unless I tell you otherwise, I will receive uninterrupted delivery service. My subscription will be automatically renewed at the end of each subscription term, at the rate then in effect, and I authorize you to charge the credit/debit card I provided. I won't be bothered with any renewal notices. Instead, I'll receive a clearly marked reminder notice with the then current rate about 30 days prior to charging my credit/debit card. I may opt out of the automatic renewal at any time by contacting customer service and receive a full refund for all umailed issues.



Nakai alleges that "the *Food Network Magazine* subscription into which Defendants enrolled her in September 2018 was created by Defendants as an automatic renewal subscription." (¶ 49.) Yet the Complaint does not allege that Nakai incurred any automatic or recurring charges in connection with any renewal; to the contrary, Nakai alleges she received an invoice seeking payment after the expiration of her initial subscription term,

and that she paid it. (¶¶ 34, 37.) The Complaint alleges she received a transaction confirmation email following her initial subscription order. (Ex. 6.)

### D. **Michele Ruppert's Subscriptions.**

Ruppert alleges that, on July 25, 2018, she submitted an order for one-year subscriptions to *Food Network Magazine* and *HGTV Magazine* by entering her order and credit card information through a website operated by Defendants. (¶¶ 98-99.[3]) Ruppert pleads no facts whatsoever as to the verbiage used in any of the advertisements to describe the terms of her subscriptions (including any automatic-renewal aspect), or the typeface, size, color, or placement of any such terms, beyond her conclusory allegation that "the offer page shown in Exhibit 15 is in all material respects the same as the offer page through which she submitted the subscription order on July 25, 2018." (¶ 99.) Exhibit 15 includes the following disclosure:



Ruppert does not plead that she read or relied on any statement contained in the online order form. Ruppert alleges that she received emails from Defendants confirming her subscriptions. (¶ 103 & Exs. 16-17.) Each of those emails expressly sets forth the terms of the Continuous Service Program.

---

[3] Ruppert's allegation that she ordered online (¶ 99) forecloses any claim predicated on Exhibit 14 (a hard-copy form), which in any event contains voluminous disclosures concerning the Continuous Service Program.

DEFENDANTS' MEM. OF POINTS & AUTHORITIES I/S/O MOTION TO DISMISS SECOND AM. COMPLAINT
CASE NO. 3:19-CV-01969

### E.  <u>The Second Amended Complaint.</u>

All three Plaintiffs purport to bring claims under the ARL, Cal. Bus. & Prof. Code § 17600 *et seq*., the Consumer Legal Remedies Act ("CLRA"), Cal. Civ. Code § 1770, and the Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200. (¶¶ 129-34, 135-47.) The gravamen of these claims is set forth in Paragraph 15:

> One aspect of Defendants' negative option model is to solicit orders for magazine subscriptions that purport to be for a fixed period of time (e.g., one year, or two years), whereas upon receipt of an order, Defendants enroll the consumer in a program under which the magazine subscription will be "automatically renewed" for subsequent periods, with corresponding charges posted to the consumer's credit card, debit card, or other payment account. Defendants enroll consumers in such "automatic renewal" subscriptions without making the clear and conspicuous disclosures required by California law.

(¶ 15.)

Plaintiffs purport to bring claims for unjust enrichment in addition to their statutory claims. (¶¶ 158-60.) Plaintiffs also seek injunctive relief in addition to restitution and damages. (¶¶ 133, 145-47, 157, 159.)

### F.  <u>Procedural History.</u>

Plaintiffs filed this action in California Superior Court on September 10, 2019. On October 10, 2019, Defendants timely removed this action to this Court under the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d). (ECF No. 1.) Defendants moved to dismiss, and Plaintiffs responded by filing the First Amended Complaint ("FAC") on December 9, 2019. (ECF No. 14.) On June 25, 2020, this Court granted Defendants' motion to dismiss the FAC (ECF No. 20 ("Dismissal Order")), holding that each Plaintiff had failed to allege facts sufficient to support a reasonable inference that Defendants had violated the ARL. (*See* Dismissal Order 14-15.) The Court went on to hold that Plaintiffs had failed to state CLRA, UCL, and equitable claims. (Dismissal Order 17-18.)

The Court granted Plaintiffs leave to file the Second Amended Complaint, noting that

1  any substantive defects in the SAC could be addressed through a motion to dismiss.[4]

## III.   LEGAL STANDARD

"Dismissal under Rule 12(b)(6) is proper when the complaint either (1) lacks a cognizable legal theory or (2) fails to allege sufficient facts to support a cognizable legal theory." *Somers v. Apple, Inc*., 729 F.3d 953, 959 (9th Cir. 2013).

As this Court has observed, Rule 8(a)(2) requires that a complaint "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)), *quoted in* Dismissal Order 6-7. "A plaintiff must provide 'more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.'" *Gershman v. Bayer HealthCare LLC*, No. 14-CV-05332, 2015 WL 2170214, at *2 (N.D. Cal. May 8, 2015) (quoting *Twombly*, 550 U.S. at 555).

As this Court noted in dismissing the FAC, "[e]xhibits attached to a complaint are not a substitute for factual allegations." (Dismissal Order 15.) Moreover, "[a] court need not accept as true allegations that contradict matters properly subject to judicial notice or by exhibit" or other materials central to or incorporated by reference into the complaint, including allegedly false advertising. *Gershman*, 2015 WL 2170214, at *2 (citation and quotation marks omitted); *Viggiano v. Hansen Nat. Corp*., 944 F. Supp. 2d 877, 882-83 (C.D. Cal. 2013) (considering allegedly false labeling).

The heightened pleading standard of Rule 9(b) requires the complaint to "state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). "Averments of fraud must be accompanied by the who, what, when, where, and how of the misconduct charged." *Kearns v. Ford Motor Co*., 567 F.3d 1120, 1124 (9th Cir. 2009) (quoting *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003)). As the Ninth Circuit has recognized, Rule 9(b) applies to claims under the CLRA, UCL, and to claims brought under

---

[4] The Court had also dismissed Nakai's "false invoice" claims predicated on a purported violation of Cal. Civ. Code § 1716. (Dismissal Order 10.) In the SAC, Plaintiffs do not attempt to allege any such violations, thereby abandoning their "false invoice" claims.

California's False Advertising Law ("FAL"), where such claims sound in fraud or are grounded in claims of allegedly misleading and false advertising. *See Kearns*, 567 F.3d at 1126; *Vess*, 317 F.3d at 1102-05; *see also Chase v. Hobby Lobby Stores, Inc*., No. 17-cv-00881, 2017 WL 4358146, at *7 (S.D. Cal. Oct. 2, 2017) ("The heightened pleading standard applies to claims under the CLRA, UCL, and FAL."); *Grimm v. APN Inc*., No. 8:17-cv-00356, 2017 WL 6398148, at *5-6 (S.D. Cal. Aug. 31, 2017) ("When a plaintiff alleges a 'unified course of fraudulent conduct and rel[ies] entirely on that course of conduct as the basis of a claim, . . . [that] claim is said to be "grounded in fraud" or to "sound in fraud," and the pleading of the claim as a whole must satisfy the particularity requirements of Rule 9(b).'") (alterations in original) (citation omitted).

Here, Plaintiffs' SAC leaves no doubt that their claims sound in fraud and are grounded in claims of Defendants' allegedly misleading and false advertising. The crux of Plaintiffs' automatic-renewal claims is that Defendants "solicit orders for magazine subscriptions ***that purport to be*** for a fixed period of time (e.g., one year, or two years), whereas upon receipt of an order, Defendants enroll the consumer in a program under which the magazine subscription will be 'automatically renewed' for subsequent periods . . . ." (SAC ¶ 15 (emphasis added); *see also* ¶¶ 56, 75, 90, 113, 114.) Plaintiffs' automatic-renewal theory is based on allegedly misleading conduct. Plaintiffs allege that Defendants failed to inform consumers that they would be subject to automatic renewal, while supposedly representing that their magazine subscriptions would terminate at the conclusion of the apparent term. The allegedly misleading nature of these practices is at the core of Plaintiffs' Complaint. (*See, e.g.*, SAC ¶¶ 130, 139, 142, 150, 151, 154.) Accordingly, Plaintiffs must plead their claims with particularity under Rule 9(b).

## IV.   ARGUMENT

### A.  Plaintiffs' ARL Claims Fail as a Matter of Law.

The ARL imposes three substantive requirements where a business "makes an automatic renewal offer or continuous service offer." Cal. Bus. & Prof. Code § 17602(a).

The ARL requires disclosure of the "automatic renewal offer terms,"[5] § 17602(a)(1), and prohibits charging the customer absent prior agreement to those terms, § 17602(a)(2). The ARL also requires the business to provide the customer with an acknowledgement that includes the "automatic renewal offer terms." § 17602(a)(3).

As set forth below, none of the Plaintiffs has adequately alleged a violation of the ARL. The SAC fails even to allege **what** offer terms Defendants disclosed in the order forms Arnold used, let alone how Defendants' disclosures were deficient in form or substance. Where the SAC does allege what Defendants disclosed, Plaintiffs' characterizations of Defendants' disclosures are contradicted by their exhibits, which show on their face that Defendants complied with the law.

### 1. <u>Arnold Fails to Allege the Content of the Forms She Used to Order or Pay for Her Subscriptions, as Required to Plead Her § 17602(a)(1) or (a)(2) Claims.</u>

As to Arnold, Plaintiffs concede that they "do[] not have a copy" of the specific advertisements/order forms Arnold returned to Defendants. (SAC ¶¶ 46, 57, 76.) Plaintiffs are thus left to speculate that Arnold may be able to state a claim after Plaintiffs "seek production" of the disclosures "through discovery." (*Id*. ¶¶ 46, 57, 76.) In *Twombly*, the Supreme Court rejected the argument that a lack of specific and plausible allegations could be offset by the hope for information in discovery. *See* 550 U.S. at 556-57. To assert a claim grounded on a violation of the ARL based on inadequate disclosures, the complaint must "sufficiently detail the content of disclosures." *McKee v. Audible, Inc*., No. 2:17-cv-01941, 2017 WL 7388530, at *21 (C.D. Cal. Oct. 26, 2017). In *McKee*, the plaintiff brought a variety of claims, including a claim "that Defendant violated [the ARL], and thus UCL, by utilizing unlawful automatic renewal payment policies and providing incomplete disclosures of the policies." *Id*. The court held that the complaint did not even satisfy

---

[5] The ARL defines "[a]utomatic renewal offer terms" to mean "clear and conspicuous" disclosure of, *inter alia*, "[t]he recurring charges that will be charged." § 17601(b)(3).

*Twombly*, because "McKee does not sufficiently detail the content of disclosures he alleges Audible includes during the sign-up process . . . ." *Id*.

In his complaint, McKee had alleged,

> Audible fails, however, to properly disclose to consumers all of the required recurring payment and cancellation policies at the point of sale (i.e., at the "Start Now" or similar button). The limited disclosures Audible does provide are not clear and conspicuous, are not placed in close visual proximity to the button consumers are asked to click, . . . and do not include the relevant cancellation terms.

(Yuhan Decl. Ex. A (First Amended Complaint in *McKee v. Audible, Inc.* ("*McKee* FAC"), No. CV 17-1941-GW(Ex) (S.D. Cal. filed Aug. 11, 2017) (ECF No. 40)) ¶ 5; *see also id*. ¶ 39.) The allegations here are even more defective than those rejected in *McKee*.

*First*, the SAC *concedes* that Arnold does not have the advertisements or order forms that she actually used to place her orders and omits *all information* about the disclosures contained therein. (SAC ¶¶ 46, 57, 76.) Tellingly, Arnold does not even attempt to allege that these order forms failed to contain the disclosures required by the ARL. Nothing more is needed to dismiss her claims.

*Second*, unlike in *McKee*, Plaintiffs here do not allege that Defendants' disclosures across the board were uniform in form or substance, or that the disclosures were all deficient in the same way. To the contrary, the SAC expressly alleges that Defendants used many different order forms to obtain subscriptions, and the presentation of Defendants' automatic-renewal disclosures varies from form to form. (*See* Exs. 4, 8, 10, 14, 15.) Plaintiffs do not save their claims by alleging that the form Arnold used to order gift subscriptions of *Good Housekeeping* and *Woman's Day* for her mother was "in all material respects the same as" Exhibit 10. This Court previously rejected Plaintiffs' attempt in the FAC to rely on Exhibit 10 to paper over the deficiencies in Arnold's claims. (*See* Dismissal Order 14.) In the FAC, Arnold had alleged that the exhibit was "similar to" the form she used; she now makes the similarly conclusory assertion that the exhibit was "in all material respects the same as" the form she used. (*Compare* SAC ¶ 58 *with* FAC ¶ 32.) Furthermore, Plaintiffs'

11

characterization of Exhibit 10 should not be credited, particularly where, as here, it is contradicted by other allegations in the SAC. Specifically, Arnold alleges that her *Good Housekeeping* and *Woman's Day* order was "***a gift subscription*** for Arnold's mother, Dorothy." (SAC ¶ 57 (emphasis added).) But on its face, Exhibit 10 provides no mechanism for a customer to designate a gift recipient, and there is nothing on that form that otherwise makes plausible the allegation that Arnold used that form or a materially identical form to order a gift subscription.

*Third*, in contrast to *McKee*, Arnold alleges that all but one of her subscription orders were ordered on a "bill me later" basis, meaning that, by her own admission, each of those transactions included an additional step (namely, payment) before she incurred any charges. Accordingly, to properly plead ARL claims for those subscriptions, Plaintiffs must allege that Defendants' order forms ***and*** its payment forms ***both*** lacked the required disclosures. Here, Arnold admits that she does not have copies of the payment forms she used to pay for her "bill me later" subscriptions.[6] (SAC ¶¶ 49, 82.)

Thus, Arnold has not remedied the pleading defects in the FAC that led this Court to hold, "Arnold fails to allege facts from which the Court can identify any violation of the Automatic Renewal Law." (Dismissal Order 14.)

Given that these pleading defects are fatal under Rule 8 and *Twombly*, they also cannot meet the heightened requirements of Rule 9(b). *See, e.g.*, *Kearns*, 567 F.3d at 1127

---

[6] Arnold's reliance on Exhibit 8 (a payment form the SAC does not allege Arnold ever saw or used) is unavailing. On its face, Exhibit 8 is addressed to Nakai, not Arnold. *See Dvora v. General Mills, Inc.*, No. 11-cv-1074, 2011 WL 1897349, at *8 (C.D. Cal. May 16, 2011) (rejecting plaintiff's attempt to state claim based on website where "[p]laintiff concedes in his opposition that he never read or relied upon such statements in making his purchase"). The only alleged nexus between Exhibit 8 and Arnold's transactions is her conclusory allegation that Exhibit 8 is "in all material respects the same as" the payment forms she used. (SAC ¶¶ 49, 82.) This Court rejected Plaintiffs' prior attempt to rely on disclosures contained in documents purportedly "similar to" those used in connection with Arnold's transactions, and Plaintiffs' attempt to plead based on "information and belief" is improper. (*See infra* pp. 13-14 n.7.) And in any event, the disclosures contained in Exhibit 8 comply with the ARL. (*See infra* Part IV.A.3.b.)

12

(affirming dismissal of nondisclosure claims because they were "couched in general pleadings" which "do not satisfy the heightened pleading requirements of Rule 9(b)"); *Beshwate v. BMW of N. Am., LLC*, No. 17-cv-00417, 2017 WL 4410169, at \*13 (E.D. Cal. Oct. 4, 2017) ("Plaintiffs' failure to identify the specific advertisements does not provide Defendant CarMax with adequate notice of the alleged violations of the CLRA. The Court finds that first amended complaint fails to meet the pleading requirements of Rule 9." (citation omitted)).

### 2. Ruppert's § 17602(a)(1) and (a)(2) Claims Fail Because They Are Still Inadequately Pleaded, and in Any Event, the Challenged Disclosures Clearly and Conspicuously Disclosed the Requisite Automatic Renewal Offer Terms.

This Court previously dismissed Ruppert's ARL claim because she "fail[ed] to allege any fact to support her claim that the contents of the webpage where she placed her order and paid for the magazine subscriptions violated the Automatic Renewal Law." (Dismissal Order 14.) This defect persists in Ruppert's latest amended allegations.

First, in the SAC, Ruppert still does not allege "the contents of the webpage where she placed her order and paid for the magazine subscriptions" (Dismissal Order 14), thereby ensuring that the SAC is plagued by the same defects as the FAC. Plaintiffs attach several new exhibits to the SAC but do not allege that any new exhibit is Ruppert's order form or her payment form. As in the FAC, Plaintiffs again attempt to paper over their defective allegations by improperly resorting to conclusory statements made purportedly "on information and belief." Ruppert, for example, alleges on information and belief that Exhibit 15 "is in all material respects the same as the offer page through which she submitted the subscription order," but she fails to allege the facts upon which that information and belief is based and concedes that there may be "differences between [it] and the offer page as it existed on July 25, 2018 when Ruppert submitted her order." (SAC ¶ 99.)

Moreover, even if Defendants alone possessed the knowledge concerning what

DEFENDANTS' MEM. OF POINTS & AUTHORITIES I/S/O MOTION TO DISMISS SECOND AM. COMPLAINT
CASE NO. 3:19-CV-01969

Ruppert saw on the relevant order form (they do not), this would not relieve Ruppert of her obligation to sufficiently allege facts at the motion-to-dismiss stage from which the Court can infer the elements of her claim. The Supreme Court has considered and rejected the argument that pleading standards should be relaxed where plaintiffs expect that discovery will yield information from which they may later be able to provide adequately plausible and specific allegations. *Twombly*, 550 U.S. at 558-59.

In any event, Exhibit 15 itself negates any inference that the automatic-renewal terms were not clearly and conspicuously disclosed to Ruppert. Ruppert alleges that Exhibit 15 is inadequate under the ARL because "(a) the type is smaller than surrounding text; (b) the type is not in contrasting type, font, or color to surrounding text of the same size; and (c) it is not set off from surrounding text of the same size by symbols or other marks in a manner that clearly calls attention to the language." (SAC ¶ 101.) Each of those characterizations is contradicted by Exhibit 15 itself.

First, the 8-line automatic-renewal disclosure in Exhibit 15 is placed such that a customer cannot complete the act of ordering a subscription without first encountering the disclosure. It appears below the required payment fields and above the "PLACE ORDER" button. Second, far from being buried in a longer block of legal boilerplate or marketing language, it is set off by itself, in its own separate block of text.

Where, as here, the disclosure at issue is set off in its own separate block of text, as an initial matter, there is no "surrounding text" to which to compare the disclosure's size, color, or other marks. That statutory term, when read in context, was intended to encompass circumstances where a mandated disclosure is buried in the middle of other verbiage. In *Price v. Synapse*, for example, the Court found that plaintiffs had plausibly alleged a violation of the ARL where, among other things, plaintiffs alleged that the automatic-renewal disclosure "terms themselves are in the middle of a paragraph in 'tiny print' that contains other information unrelated to automatic renewal." *Price v. Synapse Grp., Inc.*, No. 16-CV-01524, 2017 WL 3131700, at *6 (S.D. Cal. July 24, 2017). By contrast, in *Hall v. Time, Inc.*, No. 19-cv-1153, 2019 WL 8107879, at *3 (C.D. Cal. Sept. 24, 2019), the

14

required disclosure appeared in its own block of text and was not surrounded by other unrelated information. The court in *Hall* had no trouble concluding that "it's clear Plaintiff was adequately informed of Defendants' automatic renewal notice in plain and conspicuous terms," without comparing the size of the disclosure to "surrounding text," because there was no surrounding text at all. *Id.* This Court should reach the same conclusion here.

Alternatively, to the extent that "surrounding text" is construed to mean "the text that precedes or follows the disclosure," here, the disclosure in Exhibit 15 is ***larger*** than the immediately preceding text relating to SSL encryption. Nothing more is needed to conclude that the conspicuousness requirement is met. Adding to its conspicuousness, the disclosure begins with the bold heading "Continuous Service Program," and is further set off by a bold asterisk, and appears in a contrasting color.

Plaintiffs' claim that the disclosure is substantively deficient is similarly belied by Exhibit 15. (SAC ¶ 101.) The disclosure expressly states that the subscription will continue indefinitely until the consumer cancels (§ 17601(b)(1), (4)): "***[U]nless I tell you otherwise***, I will receive ***uninterrupted*** service and access; my subscription(s) ***will be automatically renewed*** at the end of each subscription term." (Ex. 15 (emphases added).) The disclosure also sets forth the cancellation policy, i.e., a pro rata refund at any time (§ 17601(b)(2)): "I may opt out of the automatic renewal ***at any time*** by contacting customer service referenced below and ***receive a refund for all undelivered issues.***" (Ex. 15 (emphases added).) As for the amount to be charged at renewal, the disclosure states that the renewal will be "at the rate(s) ***then in effect***," and goes on to state that the customer "will receive a clearly marked reminder notice with the ***then current rate(s)*** about 30 days prior to charging my credit/debit card or receiving a bill." (*Id.* (emphases added).) The ARL expressly contemplates and permits this type of offer. *See Hall v. Time, Inc.*, No. 19-cv-1153, 2020 WL 2303088, at *4 (C.D. Cal. Mar. 13, 2020) (observing that ARL "plainly anticipates that business may not know how much their reoccurring rates will change before the second term of an offer"); Cal. Bus. & Prof. Code § 17601(b)(3).

Ruppert has not pleaded—and cannot plead—that the order form she used to place

15

and pay for her order failed to comply with the ARL, and her claims should be dismissed.[7]

### 3.  Nakai Has Not Pleaded and Cannot Adequately Plead ARL Claims.

Nakai's claims should be dismissed for several independent reasons. *First*, Nakai still does not allege—because she cannot—that Defendants' offer to her was an automatic-renewal offer subject to the ARL. *Second*, she does not adequately allege the contents of the challenged disclosures or how they violate the ARL. *Third*, Nakai's allegations are belied by the exhibits she attaches to the SAC, which demonstrate Defendants' compliance with the ARL.

### a.  Nakai's ARL Claims Fail Because She Does Not Allege that She Was Subject to a "Recurring Charge."

By its terms, the ARL's substantive requirements apply only where a business "makes an automatic renewal offer or continuous service offer." Cal. Bus. & Prof. Code § 17602(a). The term "automatic renewal" is defined to mean "a plan or arrangement in which a paid subscription or purchasing agreement is automatically renewed at the end of a definite term for a subsequent term." *Id*. § 17601(a). Though that definition does not explicitly refer to automatic, recurring charges to payment cards or accounts, when read in context with the rest of the ARL, there can be no doubt that the statute applies only to transactions with automatic, recurring charges. *See, e.g.*, *Astaire v. Best Film & Video Corp*., 116 F.3d 1297, 1300 (9th Cir. 1997) ("The words of the statute must be construed in context, keeping in mind the statutory purpose, and statutes or statutory sections relating to the same subject must be harmonized, both internally and with each other, to the extent possible.") (quoting *Dyna-Med, Inc. v. Fair Emp. & Hous. Comm'n*, 43 Cal. 3d 1379, 1387 (1987)).

Each of the ARL's three substantive requirements, located in subsections to Section 17602(a), is centered around the concept of "automatic renewal offer terms":

---

[7] Ruppert expressly alleges that she did not use Exhibit 14 (a paper form) to order her subscriptions. (¶ 99; *see also* Dismissal Order 14.) Accordingly, any purported defects in the disclosures contained on Exhibit 14 cannot be the basis for her claims. In addition, the five-paragraph disclosure in Exhibit 14 describing the Continuous Service Program in detail forecloses her claim that she did not receive an acknowledgement as required by the ARL.

16

- Subsection (a)(1) makes it unlawful to "[f]ail to present the ***automatic renewal offer terms*** or continuous service offer terms in a clear and conspicuous manner";
- Subsection (a)(2) prohibits charging the consumer for an automatic renewal or continuous service "without first obtaining the consumer's affirmative consent to the agreement containing the ***automatic renewal offer terms*** or continuous service offer terms"; and
- Subsection (a)(3) requires "an acknowledgment that includes the ***automatic renewal*** offer terms or continuous service ***offer terms***."

Cal. Bus. & Prof. Code § 17602(a) (emphases added). The ARL specifically defines the term "automatic renewal offer terms" to mean several items, including the "***recurring charges*** that will be charged to the consumer's credit or debit card or payment account with a third party." *Id*. § 17601(b)(3) (emphasis added). Section 17600, which expresses the legislative intent behind the ARL, similarly refers to "***ongoing charging*** of consumer credit or debit cards or third party payment accounts without the consumers' explicit consent . . . ." *Id*. § 17600 (emphasis added).

In other words, the text, structure, and purpose of the ARL make plain that a transaction is covered under Section 17602(a) only if the transaction involves "recurring charges" to a payment account. (*See* Minute Order Granting Summary Judgment in *Cortez v. McClatchy* ("*McClatchy* Order"), No. 34-2014-00169700-CU-BT-GDS (Cal. Super. Sacramento Cty. filed Aug. 16, 2018) (Dkt. No. 241), at 9, 10 (Yuhan Decl. Ex. B).) Absent recurring charges, the ARL does not apply and cannot be violated. A contrary interpretation—imposing liability on a business for omitting to ***disclose*** "recurring charges" where no such charges are even ***contemplated***—is nonsensical and would be contrary to long-accepted principles of statutory interpretation. *See, e.g.*, *Woods v. Young*, 53 Cal. 3d 315, 323 (1991) ("Interpretations that lead to absurd results or render words surplusage are to be avoided.").

State and federal courts have found, as a matter of law, that the ARL is not violated where there is no automatic, recurring charge to a card or payment account. In *Cortez v. McClatchy*, the court granted summary judgment dismissal of certain plaintiffs' UCL claims

17

because the court found, as a matter of law, that "[t]he ARL . . . does not apply here, where the Plaintiffs were not charged to a credit or debit card or consumer account with a third party." (*McClatchy* Order (Yuhan Decl. Ex. B), at 9.) Noting that the definition of "automatic renewal offer terms" necessarily contemplated "recurring charges," the court specifically rejected plaintiffs' argument that "payment by debit or credit card is not a requirement of the ARL." (*Id.* at 9.) And in *Lopez v. YP Holdings, LLC*, No. CV 18-8791, 2019 WL 2895190 (C.D. Cal. Mar. 26, 2019), the court stressed that no ***automatic charge*** had been alleged. *Id.* at *4 ("Plaintiff has also failed to allege that she was ***automatically charged*** a fee to any of her accounts and instead noted that on February 16, 2018, she 'mailed a check payable to Defendants for $100.00 as a result of Defendants automatically renewing the contract.'") (emphasis added).

This Court previously dismissed Nakai's ARL claims on the basis that, among other flaws, Nakai failed to plead facts from which the Court could infer "that Defendants enrolled Nakai in an automatic renewal subscription" governed by the ARL. (Dismissal Order 15.) The SAC does not cure this defect. While Nakai has deleted the words "inform[ation] and belie[f]" from her allegation that she was enrolled in an automatic-renewal subscription, she ***still*** does not allege any fact tending to show that a recurring charge has ever actually taken place in connection with her subscription. (*Compare* FAC ¶ 49 *with* SAC ¶ 38.) The SAC makes apparent that no such automatic, recurring charge took place. As a "bill me later" order, the terms of Nakai's transaction do not even contemplate that the customer will automatically incur a recurring payment card charge. Indeed, Nakai alleges she received an invoice in December 2019 ***and paid it***. (SAC ¶ 34.) Where, as here, every charge to her credit card was not made automatically by Defendants, but instead was initiated by Nakai in response to an invoice, there can be no claim for a violation of the ARL. *See Lopez*, 2019 WL 2895190, at *4; *McClatchy* Order (Yuhan Decl. Ex. B), at 9, 10.

This alone suffices to dismiss Nakai's claims.

**b.  Nakai's § 17602(a)(1) and (2) Claims Are Still Inadequately Pleaded, and in Any Event, the Challenged Disclosures Clearly and Conspicuously Disclosed the Requisite Automatic-Renewal Offer Terms.**

Even if this Court were to hold that the ARL applied to Nakai's transaction, her claim should still be dismissed. Nakai's own exhibits contradict her allegation that Defendants violated the ARL. According to the SAC's own allegations, she was presented with clear and conspicuous disclosures of Defendants' automatic-renewal offer terms *twice*, first when she placed her order (Ex. 4), and then again when she submitted payment (Ex. 8).

Both the order form and the payment form set forth each of the terms required under the ARL. Both state that the subscription service will be automatically renewed indefinitely until the consumer cancels. § 17601(b)(1), (4). Both include the cancellation policy, namely that the customer may cancel at any time and receive a pro rata refund. § 17601(b)(2). And both state that prior to receiving a bill or incurring a credit/debit charge, the consumer will receive a reminder notice informing them of the then current rate(s) they will be charged for the automatic renewal. § 17601(b)(3).

Furthermore, the disclosures are clear and conspicuous in both forms. The disclosure is set off in its own block of text and is not buried in a larger block of verbiage, and is placed above the required action button; accordingly, as in *Hall*, there is no "surrounding text" for purposes of comparing the disclosure's size or other characteristics. *See supra* Part A.2. But in any event, the disclosures are sufficiently conspicuous. For example, on the payment form, the disclosure is larger than the immediately preceding text (the drop-down box for "MONTH" and "YEAR"), is in blue, and is further set off by the boldface heading "Continuous Service Program." (Ex. 8.) The order form's disclosure is also in a contrasting color and is larger than much of the other text on the page, such as the block of text appearing below the "SUBMIT" button that begins, "NO PURCHASE NECESSARY TO ENTER OR WIN." (Ex. 4.)

Accordingly, like *Hall*, Nakai was presented with conspicuous disclosures of the

required automatic-renewal terms not once (which would have sufficed to satisfy the ARL) but *twice*. Having twice agreed to those terms, she cannot now bring an ARL claim. *See Hall*, 2019 WL 8107879, at *3 (finding affirmative consent where consumer "clicked through two separate pages containing the automatic renewal agreement before deciding to purchase her People magazine subscription").

### 4.   Plaintiffs Have Not Adequately Pleaded § 17602(a)(3) and § 17602(b) Claims.

As a pleading matter, all three Plaintiffs' claims under § 17602(a)(3) and § 17602(b)—which requires an "acknowledgement that includes the automatic renewal offer terms or continuous service offer terms, cancellation policy, and information regarding how to cancel in a manner that is capable of being retained by the consumer"—are defective for substantially the same reasons.

*First*, each Plaintiff's claim is based on the same flawed argument: each Plaintiff attaches certain email communications—transaction confirmations—that she alleges she received close in time to placing her subscription orders, and then argues that those transaction confirmations do not qualify as the acknowledgements required under the ARL. (*See* SAC ¶¶ 29, 41, 62, 72, 78, 87, 103, 110 & Exs. 6, 11-13, 16-17.) But this is hardly sufficient to plead a violation of § 17602(a)(3) or (b). At most, all these allegations could suggest is that those specific transaction confirmations do not satisfy the ARL's acknowledgment requirement. Crucially, however, nothing in the ARL requires that the acknowledgement take the form of a transaction confirmation, or that it be provided close in time to the placing of the initial order. To the contrary, the ARL expressly provides, "[t]he requirement in paragraph (3) of subdivision (a) may be fulfilled *after completion of the initial order*," § 17602(e)(1) (emphasis added), and the ARL does not set a deadline for providing the acknowledgement or prescribe the form that it must take, except that it must be "in a manner that is capable of being retained by the consumer," § 17602(a)(3).

Here, Plaintiffs have done little more than arbitrarily cherry-pick specific emails. But notably absent from the SAC is any allegation that could support an inference that

Defendants **never** sent Plaintiffs any **other** communications that would satisfy the ARL's acknowledgement requirement. Plaintiffs' failure to do so here is particularly glaring because the transaction confirmations themselves refer to subsequent communications that will be sent to the customer prior to renewal. (*See* Exs. 6, 11-13, 16-17.)

In any event, the transaction confirmations are sufficient to satisfy the "acknowledgement" requirement. For example, Exhibit 13 includes a disclosure that sets forth all of the information required to qualify as an "acknowledgement." The disclosure states that the subscription will be renewed, continuously, unless the customer cancels (§ 17601(b)(1), (4)), that the customer may cancel at any time and receive a pro rata refund (§ 17601(b)(2)), and that the renewal will be at the then-current rate, which will be communicated to the customer prior to renewal (§ 17601(b)(3)). Furthermore, the emails set forth an address[8] and include a link to an online Customer Service page, through which the customer can cancel the subscription. § 17602(b). The Continuous Service Program disclosures appear in their own block of text, set off from other matters, with a boldface heading. The other transaction confirmation emails attached to the SAC satisfy the ARL for the same reasons. (*See* Exs. 6, 11-12, 16-17.)

### B. <u>Plaintiffs Fail to Plead Statutory Standing to Bring Their Statutory Claims.</u>

To have statutory standing under the FAL, CLRA, or the UCL, a plaintiff must allege an injury in fact and reliance on the allegedly misleading conduct. *See Kwikset Corp. v. Superior Ct.*, 51 Cal. 4th 310, 326-27 (2011); *In re Tobacco II Cases*, 46 Cal. 4th 298, 326 (2009); Cal. Civ. Code § 1780(a); *Meyer v. Sprint Spectrum, L.P.*, 45 Cal. 4th 634, 641 (2009). Here, all three Plaintiffs fail to allege facts showing statutory standing.

---

[8] Plaintiffs claim that the address listed in the confirmation emails—300 West 57th Street, New York, New York 10019—"is not the postal address for cancellation of magazines," but the mere fact that Defendants also maintain a P.O. Box for customer service certainly does not, without more, support an inference that that P.O. Box is the **only** postal address that a customer may use to communicate a cancellation. Plaintiffs do not, for example, claim that they sent a communication addressed to 300 West 57th Street attempting to cancel, and that they were unable to do so.

As for Arnold and Ruppert, any argument that they have alleged statutory standing is foreclosed by their failure to allege what Defendants disclosed to them when they submitted their orders, or how those disclosures were misleading or deficient. Additionally, Nakai fails to allege statutory standing because she does not adequately allege a recurring charge. Having failed to plead the underlying violation, they cannot plead causation.

As for Arnold's *Good Housekeeping*, *Woman's Day*, and *Oprah* subscriptions, she still cannot plausibly allege reliance, causation, or injury. By the time Arnold was charged for the renewal of those subscriptions on September 20, 2019 and October 11, 2019, she had already initiated this lawsuit, and she cannot claim she was unaware of HMM's Continuous Service Program. *See Phillips v. Apple Inc.*, No. 15-CV-04879, 2016 WL 1579693, at *5 (N.D. Cal. Apr. 19, 2016) ("[T]he UCL and the FAL require a plaintiff to establish actual reliance on the alleged misrepresentation or omission to establish statutory standing."); *Doe v. SuccessfulMatch.com*, 70 F. Supp. 3d 1066, 1082 (N.D. Cal. 2014) ("If Plaintiffs purchased or continued to purchase Defendant's services after discovering Defendant's allegedly fraudulent conduct, then Plaintiffs may have no claim under either the UCL or the CLRA."). Having failed to plausibly plead causation, there is no cognizable injury or standing. *See Kwikset*, 51 Cal. 4th at 326-27.

## C. **Plaintiffs' Claims Fail in Their Entirety.**

In light of the fatal defects in Plaintiffs' ARL claims, and for other additional reasons, Plaintiffs' remaining claims should be dismissed as well:

***CLRA Claims.*** Plaintiffs fail to support their CLRA claims with adequate factual allegations, largely for the same reasons the ARL claims are defective. Plaintiffs' CLRA claims rely entirely on the allegation that Defendants failed to adequately disclose the automatic-renewal offer terms. Underscoring Plaintiffs' reliance on this premise, the SAC purports to allege five ways in which Plaintiffs violated the CLRA, but each of them repeats verbatim the assertion that Defendants marketed the subscriptions "for a set price and for a limited term," which Plaintiffs view as deceptive in light of the automatic-renewal terms. (SAC ¶¶ 139-43.)

22

The Court's basis for dismissing the CLRA claim in the FAC still applies: In the Dismissal Order, the Court dismissed the CLRA because the FAC had "fail[ed] to allege facts from which the Court can infer that Defendants made any representations to Plaintiffs that were false or misleading." (Dismissal Order 16 (citing *Daugherty v. Am. Honda Motor Co., Inc.*, 144 Cal. App. 4th 824, 835 (2006)).) The SAC does not add any false or misleading representations, instead repeating five more times the "set price" and "limited term" allegations that were already insufficient in the FAC. Remarkably, the specific factual allegations contain no reference to a set price or limited term, and the order forms attached to the SAC cannot reasonably be interpreted as "purport[ing] to be for a set price and for a limited term," contrary to Plaintiffs' conclusory recitation. (SAC ¶ 141.)

Moreover, Plaintiffs are not entitled to claim punitive damages. California law permits imposition of punitive damages on a corporate defendant only for oppressive, fraudulent, or malicious conduct authorized or ratified by an "officer, director, or managing agent" of the company. Cal. Civ. Code § 3294(a)-(b). Here, Plaintiffs do not allege any oppression, fraud, or malice; nor do they even attempt to identify an "officer, director, or managing agent" of either Defendant who supposedly authorized or ratified the unspecific conduct. *See, e.g.*, *Grieves v. Superior Court*, 157 Cal. App. 3d 159, 167-68 (1984); *Rhynes v. Stryker Corp.*, No. 10-5619, 2011 WL 2149095, at *6 (N.D. Cal. May 31, 2011).

***UCL Claims.*** Plaintiffs' UCL claims are entirely derivative of their other failed claims. The SAC sets forth two different numbered lists of the allegations on which Plaintiffs rely for their UCL claims, but each item in those lists does no more than recapitulate alleged violations of the ARL (SAC ¶ 150) or of the CLRA (SAC ¶ 151) already alleged elsewhere. *See Lopez*, 2019 WL 2895190, at *4 (holding plaintiffs' "UCL claim fail[ed] to the extent it [was] predicated on her claim for violation of the ARL"); *see also Mayron v. Google LLC*, No. H044592, 2020 WL 5494245, at *5 (Cal. Ct. App. Sept. 11, 2020) (violation of ARL does not confer standing for UCL claim without independent showing of causation).

Plaintiffs' UCL claims fail for other reasons, too. Plaintiffs' claim that Defendants

23

engage in unfair business practices relies solely on conclusory statements. (*Compare* SAC ¶ 152 *with Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*, 20 Cal. 4th 163, 184 (1999) ("unfair business practice" defined as one that "offends an established public policy or when the practice is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers") (citation omitted)); *compare* SAC ¶ 153 *with Schnall v. Hertz Corp.*, 78 Cal. App. 4th 1144, 1161 (2000) ("reasonably available alternatives" UCL standard).)

**Equitable Relief.** Finally, Plaintiffs' claims for equitable relief—through the ARL, the UCL, and their unjust enrichment claims—fail where, as here, Plaintiffs have alleged a range of other claims for damages. *See, e.g.*, *Bird v. First Alert, Inc.*, No. C 14-3585, 2014 WL 7248734, at *6 (N.D. Cal. Dec. 19, 2014). The Ninth Circuit recently confirmed this point, "hold[ing] that the traditional principles governing equitable remedies in federal courts, ***including the requisite inadequacy of legal remedies***, apply when a party requests restitution under the UCL and CLRA in a diversity action." *Sonner v. Premier Nutrition Corp.*, 971 F.3d 834, 844 (9th Cir. 2020) (emphasis added); *see also Franklin v. Gwinnett Cnty. Pub. Sch.*, 503 U.S. 60, 75-76 (1992) (holding that restitution is available only to a plaintiff who has no adequate remedy at law); *Munning v. Gap Inc.*, 238 F. Supp. 3d 1195, 1203 (N.D. Cal. 2017) (collecting cases holding that equitable relief under California consumer protection statutes is unavailable "where plaintiffs have alleged other claims presenting an adequate remedy at law").

Plaintiffs' request for injunctive relief also should be denied because Plaintiffs do not allege any ongoing conduct or ongoing harm. In this circumstance, an injunction would not provide any redress to Plaintiffs. Each Plaintiff alleges that "[i]f [she] had known that Defendants were going to enroll her in an automatically renewing magazine subscription program, [she] would not have submitted the order." (SAC ¶¶ 43, 55, 74, 89, 112.) Accordingly, Plaintiffs cannot plausibly allege any risk of another injury. *See, e.g.*, *Luman v. Theismann*, 647 F. App'x 804, 807 (9th Cir. 2016). Nor can Plaintiffs claim that they lack an "adequate remedy at law," as required to maintain a claim for equitable relief, in view of their claims for monetary damages. (*See, e.g.*, SAC ¶¶ 145-46.)

## V.   <u>CONCLUSION</u>

For the foregoing reasons, Defendants respectfully request that this Court dismiss the Second Amended Complaint in its entirety with prejudice pursuant to Rules 12(b)(6) and 9(b) of the Federal Rules of Civil Procedure, and grant such other relief as the Court deems just and proper.

Dated:  October 2, 2020

GREENBERG TRAURIG, LLP

By: _/s/ Robert J. Herrington_

Robert J. Herrington (SBN 234417)
HerringtonR@gtlaw.com
1840 Century Park East, Suite 1900
Los Angeles, California 90067
Tel:  (310) 586-7700
Fax:  (310) 586-7800

Respectfully submitted,

THE HEARST CORPORATION
OFFICE OF GENERAL COUNSEL

By: _/s/ Jonathan R. Donnellan_

Jonathan R. Donnellan
jdonnellan@hearst.com
Stephen H. Yuhan
syuhan@hearst.com
Matthew Greenfield
matthew.greenfield@hearst.com
Nina N. Shah
  (*pro hac vice* application forthcoming)
nina.shah@hearst.com
300 West 57th St, 40th Floor
New York, New York 10019
Tel:  (212) 841-7000
Fax:  (212) 554-7000

*Attorneys for Defendants Hearst Magazine Media, Inc. and CDS Global, Inc.*