UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FENELLA ARNOLD, KELLY NAKAI, and MICHELE RUPPERT, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>HEARST MAGAZINE MEDIA, INC., a Delaware corporation; CDS GLOBAL, INC., an Iowa corporation; and DOES 1-50, inclusive,<br><br>Defendants. | Case No.: 19-cv-1969-WQH-MDD<br><br>**ORDER** |

HAYES, Judge:

The matter before the Court is the Motion to Dismiss Plaintiffs' Second Amended Complaint filed by Defendants Hearst Magazine Media, Inc., and CDS Global, Inc. (ECF No. 26).

**I.   PROCEDURAL BACKGROUND**

On September 10, 2019, Plaintiffs Fenella Arnold and Kelly Nakai filed a Class Action Complaint against Defendants Hearst Magazine Media, Inc. ("Hearst"), CDS

1

Global, Inc. ("CDS"), and Does 1 through 50 in the Superior Court for the State of California, County of San Diego. (ECF No. 1-2). On October 10, 2019, Defendants Hearst and CDS (hereinafter, "Defendants") removed the action to this Court. (ECF No. 1).

On December 9, 2019, Plaintiffs Fenella Arnold, Kelly Nakai, and Michele Ruppert filed a First Amended Complaint ("FAC"). (ECF No. 14). On June 25, 2020, the Court issued an Order granting Defendants' Motion to Dismiss the FAC and dismissing the FAC without prejudice for failure to state a claim upon which relief can be granted. (ECF No. 20).

On September 18, 2020, Plaintiffs filed a Second Amended Complaint ("SAC"), bringing individual and class claims arising from Defendants' alleged violations of California's Automatic Purchase Renewals Statute ("Automatic Renewal Law" or "ARL"), Cal. Bus. & Prof. Code §§ 17600, *et seq.* (ECF No. 25).

On October 2, 2020, Defendants filed a Motion to Dismiss the SAC. (ECF No. 26). Defendants move to dismiss the SAC pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim upon which can be granted. On October 26, 2020, Plaintiffs filed an Opposition to the Motion to Dismiss. (ECF No. 28). On November 2, 2020, Defendants filed a Reply. (ECF No. 30).

## II. ALLEGATIONS IN THE SAC

Defendant Hearst is "one of the largest magazine publishers in the world." (ECF No. 25 ¶ 11). Hearst publishes approximately two dozen magazines in the United States, including *Food Network Magazine*, *Cosmopolitan*, *Good Housekeeping*, *Woman's Day*, *Country Living*, *HGTV Magazine*, and *Car & Driver*. Defendant CDS is "the largest magazine fulfillment house in the United States." (*Id.* ¶ 12). CDS is a wholly-owned subsidiary of Hearst that provides services to Hearst, including "assisting with subscriptions, billing, collection, and/or other account services." (*Id.*).

Defendants have "implemented a negative option model" for the renewal of magazine subscriptions. (*Id.* ¶ 14). Under this model, Defendants "solicit orders for magazine subscriptions that purport to be fixed for a period of time (e.g., one year, or two

years)" and then "enroll the consumer in a program under which the magazine subscription will be 'automatically renewed' for subsequent periods, with corresponding charges posted to the consumer's credit card, debit card, or other payment account." (*Id.* ¶ 15).

On September 5, 2018, Plaintiff Kelly Nakai received an email from Defendants promoting a sweepstakes to win a trip to the New York City Wine and Food Festival. A link in the email took Nakai to Defendants' webpage, which directed Nakai to "[f]ill in the fields below to get 1 FREE issue of Food Network Magazine and be automatically entered for your chance to win . . . If you like what you see, you'll get 1 year (for a total of 11 issues) for just $12.00 . . . ." (*Id.* ¶ 22 (emphasis omitted); Ex. 4, ECF No. 25-5 at 3). A disclosure appeared above the "SUBMIT" button that stated:

> ***Continuous Service Program:** I understand that unless I tell you otherwise, I will receive uninterrupted service and access; my subscription(s) will be automatically renewed at the end of each subscription term, at the rate(s) then in effect. I authorize you to fulfill my subscription(s) and charge the credit/debit card if provided, or send me a bill if not. I won't be bothered with any renewal notices, instead, I will receive a clearly marked reminder notice with the then current rate(s) about 30 days prior to charging my credit/debit card or receiving a bill. I may opt out of the automatic renewal at any time by contacting customer service referenced below and receive a refund for all undelivered issues.

(the "CSP Disclosure")[1] (ECF No. 25 ¶ 23; *see* Ex. 4, ECF No. 25-5 at 3). The CSP Disclosure was in a type smaller than the surrounding text.

Nakai submitted the sweepstakes entry and received an "Order Confirmation" email for a $12.00, 1-year subscription to *Food Network Magazine*. (ECF No. 25 ¶ 29). The CSP Disclosure appeared at the bottom of the confirmation email in a type smaller than the surrounding text. (*Id.* ¶ 29; *see* Ex. 6, ECF No. 25-7 at 2).

---

[1] The Court refers to all continuous service disclosures that contain the same material terms as the "CSP Disclosure" for clarity and brevity. The wording of the CSP Disclosures referenced in this Order differs slightly depending on whether the CSP Disclosure appeared in an advertisement, webpage, or email.

On September 8, 2018, Nakai received an email "INVOICE" from Defendants "for an 11-issue term subscription to *Food Network Magazine*, stating an amount due of $12.00." (ECF No. 25 ¶ 27; *see* Ex. 5, ECF No. 25-6 at 2). The invoice "d[id] not contain any disclosure that a subscription is to be automatically renewed." (ECF No. 25 ¶ 27). Nakai paid the invoice with her credit card through the "PAY YOUR INVOICE" link in the email. (*Id.* ¶ 28).

In December 2019, "the invoice payment form for Nakai's account on Defendants' website reflected that there was a 'Payment Due' on December 15, 2019 in the amount of $19.97." (*Id.* ¶ 34). The CSP Disclosure appeared above the "PAY NOW" button in a type smaller than the surrounding text. (*Id.*; *see* Ex. 8, ECF No. 25-9 at 2). The 2018 invoice payment form that Nakai had previously used "was in all material aspects the same as the invoice payment form" from December 2019. (ECF No. 25 ¶ 37).

In June 2017, Plaintiff Fenella Arnold completed and returned a paper order form for a two-year subscription to *HGTV Magazine*. Arnold received a $22.00 email invoice for the subscription and paid the invoice on July 3, 2017, by entering her credit card information in an invoice payment form for her account through Defendants' website. (*See* Ex. 9, ECF No. 25-10 at 2). The invoice payment form "was in all material aspects the same as the invoice payment form" from Nakai's December 2019 transaction and contained the CSP Disclosure in a type smaller than the surrounding text. (ECF No. 25 ¶ 49).

Arnold subsequently submitted a paper order form for one-year subscriptions to *Good Housekeeping* and *Woman's Day* for $5.00 each. The following disclosure appeared at the bottom of the paper form in a type smaller than the surrounding text:

> **Continuous Service Program:** Your subscription will continue unless you ask us to stop. Each year you'll receive a reminder notice followed by an invoice for the low renewal rate than in effect. You can cancel at any time at service.womansday.com and receive a refund on all unmailed issues.

("Paper Form CSP Disclosure") (*Id.* ¶ 59; *see* Ex. 10, ECF No. 25-11 at 2).

On November 11, 2018, Arnold received "Order Confirmation" emails from Defendants for the one-year subscriptions for *Good Housekeeping* and *Woman's Day*. The CSP Disclosure appeared at the bottom of the emails in a type smaller than the surrounding text. (*See* ECF No. 25 ¶ 62; Ex. 11, ECF No. 25-12 at 3; Ex. 12, ECF No. 25-13 at 3).

On November 12, 2018, Arnold paid the $5.00 subscriptions by entering her credit card information in an invoice payment form for her account through Defendants' website. The invoice payment form "was in all material aspects the same as the invoice payment form" from Nakai's December 2019 transaction and contained the CSP Disclosure in a type smaller than the surrounding text. (ECF No. 25 ¶ 67).

In November 2018, Arnold submitted a paper order form for a one-year subscription to *Oprah Magazine* for $5.00. On November 11, 2018, Arnold received an "Order Confirmation" email from Defendants for the one-year subscription for *Oprah Magazine*. The CSP Disclosure appeared at the bottom of the email in a type smaller than the surrounding text. (*Id.* ¶ 78; *see* Ex. 13, ECF No. 25-14 at 3).

On November 12, 2018, Arnold paid the $5.00 subscription by entering her credit card information in an invoice payment form for her account through Defendants' website. The invoice payment form "was in all material aspects the same as the invoice payment form" from Nakai's December 2019 transaction and contained the CSP Disclosure in a type smaller than the surrounding text. (ECF No. 25 ¶ 82).

On June 28, 2019, "Defendants posted a charge of $34.97 to Arnold's credit card, purportedly for renewal of *HGTV Magazine*." (*Id.* ¶ 56). On September 20, 2019, "Defendants posted charges of $19.97 and $14.97 to Arnold's credit card, purportedly for renewal of *Good Housekeeping* and *Woman's Day*, respectively." (*Id.* ¶ 75). On October 11, 2019, "Defendants posted a charge of $34.97 to Arnold's credit card, purportedly for renewal of *Oprah Magazine*." (*Id.* ¶ 90).

In July 2018, Plaintiff Michele Ruppert received a paper advertisement from Defendants for a one-year subscription to *Food Network Magazine* for $9.99 and a one-year subscription to *HGTV Magazine* for $2.00. The Paper Form CSP Disclosure appeared

on the advertisement in a type smaller than the surrounding text. (*Id.* ¶ 92; *see* Ex. 14, ECF No. 25-15 at 2). On July 25, 2018, Ruppert accessed the "credit.foodnetworkmag.com" website listed on the paper advertisement, entered her credit card information, and submitted a subscription for both magazines. (ECF No. 25 ¶ 98). The CSP Disclosure appeared above the "PLACE ORDER" button in a type smaller than the surrounding text. (*Id.* ¶ 100; *see* Ex. 15, ECF No. 25-16 at 2).

On July 25, 2018, Ruppert received "Order Confirmation" emails from Defendants for the one-year *Food Network Magazine* and *HGTV Magazine* subscriptions. (ECF No. 25 ¶ 103). The CSP Disclosure appeared at the bottom of the emails in a type smaller than the surrounding text. (*Id.* ¶ 104; *see* Ex. 16, ECF No. 25-17 at 3; Ex. 17, ECF No. 25-18 at 3).

On April 5, 2019, "Defendants posted a charge of $34.97 to Ruppert's credit card, purportedly for renewal of *HGTV Magazine*." (ECF No. 25 ¶ 113). On May 17, 2019, "Defendants posted a charge of $29.97 to Ruppert's credit card, purportedly for renewal of *Food Network Magazine*." (*Id.* ¶ 114).

Plaintiffs have been victimized by Defendants' negative option model. Defendants' disclosures of the automatic renewal terms of their magazine subscriptions were in a smaller type than the surrounding text, failed to state that the subscriptions will continue until the consumer cancels, failed to describe a cancellation policy, failed to state the amount of the recurring charges, and failed to state the length of the automatic renewal term. When Plaintiffs purchased Defendants' magazines, they were not aware that Defendants were going to enroll them in an automatic renewal program. If Plaintiffs knew that Defendants were going to enroll them in an automatic renewal program, they would not have submitted orders to Defendants or paid Defendants any money.

Other consumers have also been victimized by Defendants' negative option model. Plaintiffs seek to represent a class of "[a]ll individuals in California who, within the applicable limitations period, were enrolled by Defendants in an automatic renewal

program or a continuous service program and had a credit card, debit card, and/or a third-party payment account charged by Defendants as part of such program." (*Id.* ¶ 121).

Plaintiffs allege that Defendants violated the Automatic Renewal Law. Based on Defendants' alleged violation of the Automatic Renewal Law, Plaintiffs bring the following individual and class claims against Defendants: 1) violation of California's False Advertising Law ("FAL"), Cal. Bus. & Prof. Code § 17535; 2) violation of California's Consumer Legal Remedies Act ("CLRA"), Cal. Civ. Code §§ 1750, *et seq.*[2]; 3) violation of California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200, *et seq.*; and 4) unjust enrichment. Plaintiffs seek damages, including punitive damages, restitution, injunctive relief, attorneys' fees, and costs.

## III.   LEGAL STANDARD

Rule 12(b)(6) of the Federal Rules of Civil Procedure permits dismissal for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In order to state a claim for relief, a pleading "must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Dismissal under Rule 12(b)(6) "is proper only where there is no cognizable legal theory or an absence of sufficient facts alleged to support a cognizable legal theory." *Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010) (citation omitted).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citation omitted). However, "a plaintiff's obligation to provide the 'grounds'

---

[2] Plaintiffs "do not oppose the motion to dismiss the CLRA claim." (ECF No. 28 at 9). The Motion to Dismiss the second claim for violation of the CLRA is granted.

of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (alteration in original) (quoting Fed. R. Civ. P. 8(a)). A court is not "required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001). "In sum, for a complaint to survive a motion to dismiss, the non-conclusory factual content, and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009) (citation omitted).

Claims sounding in fraud or mistake must additionally comply with the heightened pleading requirements of Rule 9(b) of the Federal Rules of Civil Procedure, which requires that a complaint "must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). The pleader must "identify the who, what, when, where, and how of the misconduct charged, as well as what is false misleading about the purportedly fraudulent statement, and why it is false." *Davidson v. Kimberly-Clark Corp.*, 873 F.3d 1103, 1110 (9th Cir. 2017) (quoting *Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1055 (9th Cir. 2011)), *as corrected* (Mar. 12, 2018). "To comply with Rule 9(b), allegations of fraud must be specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong." *Bly-Magee v. California*, 236 F.3d 1014, 1019 (9th Cir. 2001) (citation omitted).

### IV. AUTOMATIC RENEWAL LAW & FALSE ADVERTISING CLAIM (Claim 1)

Defendants contend that Plaintiffs fail to state a claim for violation of the FAL because Plaintiffs fail to allege any violation of the ARL. Defendants contend that the heightened pleading standard of Rule 9(b) of the Federal Rules of Civil Procedure applies because "Plaintiff's automatic renewal theory is based on allegedly misleading conduct." (ECF No. 26-1 at 15). Defendants contend that Plaintiffs fail to sufficiently detail the

content of Defendants' disclosures. Defendants contend that the exhibits attached to the SAC "negate[ ] any inference that the automatic-renewal terms were not clearly and conspicuously disclosed . . . ." (*Id.* at 20). Defendants contend that Plaintiff Nakai fails to allege that she was subject to any recurring charge. Defendants further contend that all Plaintiffs fail to allege facts sufficient to confer statutory standing.

Plaintiffs contend that Rule 9(b) does not apply because Plaintiffs do not allege that Defendants knowingly made misrepresentations. Plaintiffs contend that they sufficiently allege violations of the ARL and FAL under Rule 8 and Rule 9(b). Plaintiffs contend that the facts alleged support an inference that Defendants failed to disclose all required automatic renewal terms and failed to disclose the terms in a clear and conspicuous manner. Plaintiffs contend that Nakai is not required to allege a subsequent charge to state a claim for violation of the ARL. Plaintiffs further contend that they allege reliance and injury to confer statutory standing.[3]

The ARL was enacted to "end the practice of ongoing charging of consumer credit or debit cards . . . without the consumers' explicit consent for ongoing shipments of a product or ongoing deliveries of service." Cal. Bus. & Prof. Code. § 17600. The ARL requires "a consumer's affirmative consent to any subscription agreement automatically renewed for a new term when the initial term ends," a "'clear and conspicuous' disclosure of the offer terms, and an 'easy-to-use mechanism for cancellation.'" *Mayron v. Google LLC*, 54 Cal. App. 5th 566, 570 (2020) (quoting Cal. Bus. & Prof. Code § 17602(a)(1), (b)) (citing Cal. Bus. & Prof. Code § 1702(a)(2)).

---

[3] Defendants request that the Court take judicial notice of 1) the first amended complaint filed in *McKee v. Audible, Inc.*, No. CV 17-19741-GW(Ex) (ECF No. 40) (S.D. Cal. Aug. 11, 2017); and 2) the unpublished minute order of the Superior Court for State of California, County of Sacramento, in *Cortez v. McClatchy*, No. 34-2014-00169700- CU-BT-GDS (ECF No. 241) (Cal. Super. Ct. Aug. 16, 2018). (ECF No. 26-2). Plaintiffs request that the Court take judicial notice of "Exhibit B" to the first amended complaint filed in *Hall v. Time, Inc.*, No. 8:19-cv-01153-CJC-ADS (ECF No. 26 at 33-39) (C.D. Cal. Oct. 14, 2019). (ECF No. 28-3). Judicial notice of the requested documents is unnecessary for this Order. The parties' requests for judicial notice are denied. *See Asvesta v. Petroutsas*, 580 F.3d 1000, 1010 n.12 (9th Cir. 2009) (denying request for judicial notice where judicial notice would be "unnecessary").

The ARL applies to "any business that makes an automatic renewal offer or continuous service offer to a consumer in [California]." Cal. Bus. & Prof. Code § 17602(a). "Automatic renewal" means "a plan or arrangement in which a paid subscription or purchasing agreement is automatically renewed at the end of a definite term for a subsequent term." *Id.* § 17601(a). "Continuous service" means "a plan or arrangement in which a subscription or purchasing agreement continues until the consumer cancels the service." *Id.* § 17601(e).

The ARL makes it unlawful to do any of the following:

(1) Fail to present the automatic renewal offer terms or continuous service offer terms in a clear and conspicuous manner before the subscription or purchasing agreement is fulfilled and in visual proximity . . . to the request for consent to the offer. If the offer also includes a free gift or trial, the offer shall include a clear and conspicuous explanation of the price that will be charged after the trial ends or the manner in which the subscription or purchasing agreement pricing will change upon conclusion of the trial.

(2) Charge the consumer's credit or debit card . . . for an automatic renewal or continuous service without first obtaining the consumer's affirmative consent to the agreement containing the automatic renewal offer terms or continuous service offer terms, including the terms of an automatic renewal offer or continuous service offer that is made at a promotional or discounted price for a limited period of time.

(3) Fail to provide an acknowledgment that includes the automatic renewal offer terms or continuous service offer terms, cancellation policy, and information regarding how to cancel in a manner that is capable of being retained by the consumer. If the automatic renewal offer or continuous service offer includes a free gift or trial, the business shall also disclose in the acknowledgment how to cancel, and allow the consumer to cancel, the automatic renewal or continuous service before the consumer pays for the goods or services.

*Id.* § 17602(a). The requirements of subdivisions (a)(1) and (a)(2) of section 17602 "apply only prior to the completion of the initial order for the automatic renewal or continuous service." *Id.* § 17602(e)(1). The requirements of subdivision (a)(3) "may be fulfilled after completion of the initial order." *Id.*

The "automatic renewal offer terms" that must presented in a "clear and conspicuous" manner include:

> (1) That the subscription or purchasing agreement will continue until the consumer cancels.
>
> (2) The description of the cancellation policy that applies to the offer.
>
> (3) The recurring charges that will be charged to the consumer's credit or debit card or payment account with a third party as part of the automatic renewal plan or arrangement, and that the amount of the charge may change, if that is the case, and the amount to which the charge will change, if known.
>
> (4) The length of the automatic renewal term or that the service is continuous, unless the length of the term is chosen by the consumer.
>
> (5) The minimum purchase obligation, if any.

*Id.* § 17601(b). "Clear and conspicuous" means "in larger type than the surrounding text, or in contrasting type, font, or color to the surrounding text of the same size, or set off from the surrounding text of the same size by symbols or other marks, in a manner that clearly calls attention to the language." *Id.* § 17601(c).

There is no private right of action under the ARL. *See id.* at 573-74; *Johnson v. Pluralsight, LLC*, 728 F. App'x 674, 676-77 (9th Cir. 2018). A consumer who has been harmed by a violation of the ARL may bring a claim pursuant to other consumer protection statutes, including the FAL, CLRA, and UCL. *See Johnson*, 728 F. App'x at 676-77; *see also* Cal. Bus. & Prof. Code § 17535 (section of the FAL authorizing a private right of action by "any person" for violations of Chapter 1 of California's Business and Professions Code, which includes the ARL).

In this case, Plaintiffs allege that Defendants violated the ARL by failing to disclose all of the required automatic renewal offer terms, failing to disclose the automatic renewal offer terms in a clear and conspicuous manner, and charging Plaintiffs' credit cards for magazine subscriptions without obtaining Plaintiffs' consent to the automatic renewal offer terms. Plaintiffs allege that Defendants advertised free issues of their magazines or one- or

two-year term subscriptions to their magazines. Plaintiffs allege that they submitted paper or electronic order forms to Defendants for the term magazine subscriptions. Plaintiffs allege that they subsequently received order confirmation emails and invoices for the term magazine subscriptions. Plaintiffs allege that they paid the invoices by entering their credit card information on Defendants' website.

Plaintiffs allege that at each step of their purchases of the magazine subscriptions, Defendants' forms, emails, and webpages either did not contain any disclosure that the subscriptions would be automatically renewed or contained a disclosure that omitted required terms and that was in a type smaller text than the surrounding text. Plaintiffs allege that they did not know that Defendants were going to enroll them in continuous service programs. Plaintiffs allege that if they knew they were going to be enrolled in continuous service programs, they would not have subscribed to Defendants' magazines or paid Defendants any money.

Plaintiffs identify the allegedly deceptive terms on specific advertisements, emails, and webpages, as well as the dates when Plaintiffs received the advertisements and emails or viewed the webpages. Plaintiffs attach copies of Defendants' paper forms, emails, and webpages in their possession to the Complaint, which support Plaintiffs' allegations that the terms of the continuous service program were not presented at all or were presented in text smaller than the surrounding text. The Court concludes that viewing the facts in the light most favorable to Plaintiffs, Plaintiffs plausibly allege that Defendants failed to adequately present the terms of the continuous service program under the ARL.

The Court further concludes that Plaintiffs' allegations that they paid Defendants for term magazine subscriptions and would not have paid Defendants any money if they knew they were going to be enrolled in automatic subscription programs are sufficient to satisfy the standing requirements of the FAL. *See Johnson*, 728 F. App'x at 676 (the plaintiff "claims that by violating Cal. Bus. & Prof. Code § 17602's requirements, including failing to provide information on cancellation policies prior to charging his credit card, [defendant] . . . was not entitled to charge customers such as [plaintiff] for the service. [Plaintiff] has

thus alleged a concrete economic injury . . . sufficient to satisfy Article III's injury-in-fact requirements" (citation omitted)). The Motion to Dismiss the first claim for false advertising is denied.

### V. UNFAIR COMPETITON CLAIM (Claim 3)

Defendants contend that Plaintiffs' UCL claim is "entirely derivative of their other failed claims," and Plaintiffs' factual allegations are conclusory. (ECF No. 26-1 at 29). Defendants contend that Plaintiffs fail to allege independent causation sufficient to confer standing under the UCL. Plaintiffs contend that they sufficiently allege a UCL claim because they state a claim for violation of the ARL and allege that if they were aware that they were going to be enrolled in an automatic subscription program, they would not have purchased Defendants' magazines.

The UCL prohibits "any unlawful, unfair or fraudulent business practice." Cal. Bus. & Prof. Code §§ 17200, 17203. "By proscribing 'any unlawful' business practice, 'section 17200 borrows violations of other laws and treats them as unlawful practices' that the unfair competition law makes independently actionable." *Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*, 20 Cal. 4th 163, 180 (1999) (quoting *State Farm Fire & Cas. Co. v. Superior Court*, 45 Cal. App. 4th 1093, 1103 (1996)). The UCL also prohibits a broader category of "practice[s] [that] may be deemed unfair [or fraudulent] even if not specifically proscribed by some other law." *Id.* UCL claims that are grounded in fraud must be pleaded with particularity under Rule 9(b). *Kearns*, 567 F.3d at 1125-26.

In this case, Plaintiffs' UCL claim is based on the same facts underlying Plaintiffs' claims for violation of the FAL. the Court has concluded that Plaintiffs sufficiently state a claim for violation of the FAL. This alleged violation is "independently actionable" under the UCL. *Cel-Tech Commc'ns*, 20 Cal. 4th at 180 (quoting *State Farm Fire & Cas. Co.*, 45 Cal. App. 4th at 1103). Plaintiffs' allegations are sufficient to confer statutory standing under the UCL. *See Mayron*, 54 Cal. App. 5th at 574 (explaining that to allege a causal link sufficient to establish standing under the UCL, the plaintiff would "need to allege that

he ordered increased Google Drive storage but would not have done so had the disclosures been provided"). The Motion to Dismiss the third claim for violation of the UCL is denied.

## VI. EQUITABLE & INJUNCTIVE RELIEF & UNJUST ENRICHMENT CLAIM (Claim 4)

Defendants contend that Plaintiffs' request for equitable relief under the FAL and UCL and Plaintiffs' unjust enrichment claim should be dismissed because Plaintiffs have alleged other claims for damages. Defendants further contend that Plaintiffs fail to allege ongoing harm sufficient to assert a claim for injunctive relief. Plaintiffs do not address Defendants' assertions. (*See* ECF No. 28 at 31 ("[T]he motion to dismiss the false advertising and UCL claims should be denied.")).

In general, a plaintiff may only seek equitable relief for past harm if he has no adequate legal remedy at law. *See Sonner v. Premier Nutrition Corp.*, 971 F.3d 834, 844 (9th Cir. 2020). However, no controlling authority prevents a plaintiff from asserting alternative legal remedies at the pleading stage. *See Eason v. Roman Catholic Bishop of San Diego*, 414 F. Supp. 1276, 1282 (S.D. Cal. 2019) (collecting cases); *see also Sonner*, 971 F.3d at 844-45 (affirming dismissal of claim for equitable relief because the operative complaint, newly amended "on the eve of trial," failed to allege the plaintiff had no adequate remedy at law). In addition, discovery may reveal that the claims providing legal remedies are inadequate.

However, Plaintiffs do not allege that they intend to purchase Defendants' magazines in the future, and they cannot demonstrate a likelihood of future injury. Plaintiffs fail to allege "a sufficient likelihood that they will be injured by [Defendants] again in a similar way and that the future injury can be redressed by injunctive relief." *Luman v. Theismann*, 647 F. App'x 804, 807 (9th Cir. 2016) (citing *Bates v. United Parcel Serv., Inc.*, 511 F.3d 974, 985 (9th Cir. 2007)). The Motion to Dismiss Plaintiffs' request for equitable relief and Plaintiffs' unjust enrichment claim is denied. The Motion to Dismiss Plaintiffs' request for injunctive relief is granted.

///

## VII. CONCLUSION

IT IS HEREBY ORDERED that the Motion to Dismiss the SAC (ECF No. 26) is granted in part and denied in part. The Motion to Dismiss the SAC is granted as to the second claim for violation of the CLRA and as to the request for injunctive relief and is otherwise denied. No later than thirty (30) days from the date of this Order, Plaintiffs may file any motion for leave to amend pursuant to Civil Local Rules 7.1 and 15.1(c).

Dated: February 10, 2021

*[signature]*
Hon. William Q. Hayes
United States District Court